**E-Filed 7/16/2007**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE ATMEL CORPORATION DERIVATIVE LITIGATION | Case Number C 06-4592 JF (HRL) |
| | ORDER[1] (1) GRANTING WITH LEAVE TO AMEND MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM; (2) DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE DEMAND |
| | [re: docket nos. 52, 53, 54, 58] |

**I.  BACKGROUND**

**1.      Procedural Background**

On July 27, 2006, Plaintiff James Juengling filed a shareholder derivative complaint against a number of the directors and officers of nominal defendant Atmel Corporation ("Atmel" or "the Company"), which designs, develops, manufactures and sells a wide variety of integrated circuit products, including microcontrollers, advanced logic, mixed-signal, non-volatile memory, and radio frequency components.  The complaint alleged improper backdating of stock options

---

[1] This disposition is not designated for publication and may not be cited.

1  and asserted three claims: (1) breach of fiduciary duty; (2) violation of Section 10(b) of the

2  Securities Exchange Act and Rule 10b-5 promulgated thereunder; and (3) restitution/unjust

3  enrichment.  On October 4, 2006, the Court consolidated the Juengling action with two other

4  derivative actions[2] and appointed a leadership structure for the consolidated action ("the

5  Consolidated Plaintiffs").

6  　　　On November 3, 2006, the instant consolidated complaint ("the Complaint") was filed.

7  The Complaint names eighteen individual defendants ("the Individual Defendants") who served

8  as officers or directors of Atmel.  The Complaint separates those eighteen defendants into two

9  categories: the "Option Recipient Defendants" (Gust Perlegos, Tsung-Ching Wu ("Wu"), Kris

10  Chellam ("Chellam"), Jack Peckham ("Peckham"), Donald Colvin ("Colvin"), Mike Sisois

11  ("Sisois"), B. Jeffrey Katz ("Katz"), Francis Barton ("Barton"), Graham Turner ("Turner"),

12  Bernard Pruniaux ("Pruniaux"), and Steven Schumann ("Schumann")) and the "Director

13  Defendants" (George Perlegos, T. Peter Thomas ("Thomas"), Chaiho Kim ("Kim"), Pierre

14  Fougere ("Fougere"), Norman Hall ("Hall"), David Sugishita ("Sugishita"), and Steven Laub

15  ("Laub")).  It asserts eleven claims: (1) violation of §10(b) and Rule 10b-5 of the Securities

16  Exchange Act;[3] (2) violation of §14(a) of the Securities Exchange Act; (3) violation of §20(a) of

17  the Securities Exchange Act (against Chellam, Barton, Wu and the Director Defendants); (4)

18  accounting; (5) breach of fiduciary duty and/or aiding and abetting; (6) unjust enrichment

19  (against the Option Recipient Defendants); (7) rescission (against the Option Recipient

20  Defendants); (8) constructive fraud; (9) corporate waste; (10) breach of contract (against the

21

22  　　　[2]  The plaintiff in *Noble v. Perlegos, et al.*, Case No. C 06-4973 JF brought claims for: (1)
23  violation of Section 14(a) of the Exchange Act; (2) breach of fiduciary duty; (3) gross
    mismanagement; (4) waste of corporate assets; and (5) unjust enrichment and breach of the duty
24  of loyalty.
    　　　The plaintiff in *Kelley v. Perlegos, et al.*, Case No. C 06-4680 JF brought claims for: (1)
25  breach of fiduciary duty; (2) violation of Section 10(b) of the Securities Exchange Act and Rule
26  10b-5 promulgated thereunder; and (3) restitution/unjust enrichment.

27  　　　[3]  Those claims without notation as to specific defendants are asserted against all the
    Individual Defendants.
28

2

1    Option Recipient Defendants); and (11) violation of California Corporation Code § 25402

2    (against the Individual Defendants, with the exception of Barton, Fougere, Kim, Laub and

3    Sugishita).  No demand has been made upon Atmel's Board of Directors ("the Board").  The

4    Consolidated Plaintiffs allege that such demand would be a futile and useless act because the

5    Board is incapable of making an independent and disinterested decision to institute and

6    vigorously prosecute this action.  Complaint ¶ 153.

7        On January 29, 2007, three motions to dismiss were filed.  Fifteen of the Individual

8    Defendants moved to dismiss for failure to state a claim upon which relief may be granted ("the

9    Barton Motion").  Defendants Gust Perlegos and George Perlegos also moved to dismiss, joining

10   the Barton Motion with limited exceptions.  Atmel moved to dismiss for failure to make demand.

11   On January 30, 2007, defendant Sisois moved to dismiss, joining the Barton Motion with limited

12   exceptions.  The Consolidated Plaintiffs have filed an omnibus opposition to the four motions to

13   dismiss.  The Court heard oral argument on April 27, 2007.

14   **2.    Factual Allegations**

15       The Complaint alleges that the Individual Defendants had the following relationships

16   with Atmel:

| Defendant | Role with Atmel |
|---|---|
| George Perlegos | President, CEO,[4] & director from Atmel's inception in 1984 to August 2006. |
| Gust Perlegos | Executive VP Office of the President, 2001 to August 2006.<br>Director, January 1985 to August 2006.<br>Executive VP & GM, January 1996 to 2001.<br>VP, GM, January 1985 to January 1996. |
| Wu | Executive VP, Office of the President since 2001.<br>Director since 1985.<br>Executive VP & GM, January 1996 to 2001.<br>VP, Technology, January 1986 to January 1996. |

27   [4] CEO refers to Chief Executive Officer, VP refers to Vice President, and GM refers to
     General Manager.

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING WITH LEAVE TO AMEND MOTIONS TO DISMISS FOR FAILURE TO STATE A
CLAIM; (2) DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE DEMAND
(JFLC1)

| Thomas | Director since December 1987.<br>Member of the Compensation Committee & the Audit Committee since at least 1996. |
|---|---|
| Hall | Director from August 1992 until in or about 2005.  Member of the Compensation Committee from 1997 to 2004, & member of the Audit Committee from 1997 to 2003. |
| Fougere | Director, member of the Audit Committee, & member of the Compensation Committee since February 2001. |
| Kim | Director & member of the Audit Committee since September 2002.  Member of the Compensation Committee from September 2002 through 2003. |
| Sugishita | Director, Chairman of Audit Committee, & Chairman of Corporate Governance & Nominating Committee, February 2004 to present. |
| Laub | Director since February 10, 2006.<br>Appointed President & CEO in August 2006. |
| Chellam | Chief Financial Officer & VP, Finance & Administration, September 1991 to July 1998. |
| Peckham | GM, ASIC Operations, January 1992 to 1998.<br>VP, Sales, January 1986 to January 1992.<br>Director of Sales, June 1985 to January 1986. |
| Colvin | Chief Financial Officer, & VP, Finance, March 1998 to January 2003.  Chief Financial Officer, Atmel Rousset S.A. 1995 to 1998. |
| Sisois | VP, Planning & Information Systems, 1986 to August 2006.  Director of Information Systems, February 1985 to 1986. |
| Katz | VP, Marketing, November 1998 to about 2005. |
| Barton | Executive VP & Chief Financial Officer, May 2003 to July 2005. |
| Turner | VP and GM, Microcontroller Segment since October 2001.  Joined the Company in 1989. |
| Pruniaux | VP and GM, ASIC Segment since November 2001.<br>CEO of Atmel Rousset S.A., May 1995 to November 2001. |
| Schumann | VP and GM, Non-Volatile Memory Segment since January 2002.<br>Joined the Company in 1985. |

Complaint ¶¶ 22-76.

As summarized below, the Complaint alleges that the Option Recipient Defendants received twenty-one backdated option grants on eleven dates.

//

4

| Recipient | Purported Grant Date | Shares | Share Price |
|---|---|---|---|
| Turner | February 4, 1994 | 160,000*[5] | $2.29 |
| Schumann | February 22, 1994 | 192,000* | $3.8516 |
| Gust Perlegos | April 11, 1997 | 40,000 | $6.0938 |
| Wu | April 11, 1997 | 40,000 | $6.0938 |
| Chellam | April 11, 1997 | 40,000 | $6.0938 |
| Peckham | April 11, 1997 | 40,000 | $6.0938 |
| Turner | October 9, 1998 | 100,000* | $1.9844 |
| Pruniaux | October 9, 1998 | 200,000* | $1.9844 |
| Schumann | October 9, 1998 | 192,000* | $1.9844 |
| Colvin | February 12, 1999 | 20,000 | $3.6719 |
| Sisois | June 11, 1999 | 40,000 | $5.9063 |
| Colvin | July 16, 1999 | 40,000 | $7.8281 |
| Katz | July 16, 1999 | 10,000 | $7.8281 |
| Turner | July 16, 1999 | 40,000* | $7.8281 |
| Colvin | November 17, 2000 | 40,000 | $12.125 |
| Colvin | September 17, 2001 | 100,000 | $7.12 |
| Gust Perlegos | November 14, 2002 | 50,000 | $2.11 |
| Wu | November 14, 2002 | 100,000 | $2.11 |
| Colvin | November 14, 2002 | 50,000 | $2.11 |
| Sisois | November 14, 2002 | 40,000 | $2.11 |
| Barton | April 30, 2003 | 500,000 | $1.81 |

Complaint ¶¶ 24-62, 103.

The Complaint alleges the following: The Company's stock option plans require that the exercise price of an option be no less than the fair market value on the date of the grant. Complaint ¶ 91. However, in "a striking pattern that could not have been the result of chance," all the grants listed above purportedly were granted at some of the lowest prices of the year in which they fell. Complaint ¶ 109. The purported grant dates were not the actual grant dates.

---

[5] An asterisk indicates that the option grant was "At least" the number stated here.

5

1   Complaint ¶ 110.  "Rather, at the behest of the Option Recipient Defendants, the Director

2   Defendants improperly backdated the stock option grants to make it appear as though the grants

3   were made on dates when the market price of Atmel stock was lower than the market price on the

4   actual grant dates." *Id.*  "From 1994 to 2003, the Compensation Committee granted . . .

5   backdated Atmel stock options to the Option Recipient Defendants . . . ."  Complaint ¶ 103.

6   After the Sarbanes-Oxley Act became effective, the Compensation Committee granted

7   backdated options to Gust Perlegos, Wu, Colvin, Sisois, and Barton.  Complaint ¶¶ 114-15.

8   "From 1998 to 2003, the Company, with the knowledge, approval and participation of each of

9   the Individual Defendants, for the purpose and with the effect of concealing the improper option

10  backdating, disseminated to shareholders and filed with the SEC annual proxy statements that

11  falsely reported the dates of stock option grants to the Option Recipient Defendants . . . ."

12  Complaint ¶ 126.

13      The Complaint alleges the following with respect to Atmel's announced discovery of

14  backdating:  On July 25, 2006, Atmel issued a press release announcing that the Audit

15  Committee was reviewing the Company's practices relating to its stock options grants with the

16  assistance of independent legal counsel and independent accountants.  Complaint ¶ 96.  The

17  Company failed to file a timely Form 10-Q for the quarter ending June 30, 2006.  Complaint ¶

18  97.  On August 15, 2006, the Company announced that it had received a request for information

19  from the SEC relating to its past stock option grants.  *Id.*  On August 17, 2006, Atmel issued a

20  press release announcing that its investigation was ongoing and that it was still unable to provide

21  financial information for the quarter ending June 30, 2006.  Complaint ¶ 98.  On October 30,

22  2006, the Company issued a press release reporting the Audit Committee's preliminary

23  conclusion that "the actual measurement dates for certain stock options differed from the

24  recorded measurement dates for such stock options."  Complaint ¶ 99.  The release stated that the

25  Company's prior financial statements could not be relied upon.  *Id.*  As of the filing of the

26  Complaint, the Company had yet to issue its Form 10-Q for the quarter ending June 30, 2006,

27  and faced possible delisting by NASDAQ.  Complaint ¶ 101.

28

6

1    The Complaint also alleges the following:  On August 6, 2006, Laub, Fougere, Thomas,

2   Kim, and Sugishita elected Sugishita as Chairman and canceled the stockholders' meeting

3   George Perlegos had called for the day before, which had sought their removal.  Complaint ¶ 92.

4   The Board then fired George and Gust Perlegos, as well as two other executives, citing misuse of

5   corporate travel funds.  *Id.*  On August 25, 2006, George Perlegos submitted a letter of

6   resignation to the Board.  Complaint ¶ 95.  On August 28, 2006, the Company announced that it

7   had received a notice from NASDAQ that it was not in compliance with the director

8   independence listing requirement, but that it had come back into compliance with the

9   requirement after the resignation of George Perlegos.  *Id.*

10                                        **II.  LEGAL STANDARD**

11   **1.      Motion to Dismiss**

12          For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the

13   Court must construe the complaint in the light most favorable to the plaintiff.  *Jenkins v.*

14   *McKeithen*, 395 U.S. 411, 421 (1969).  Leave to amend must be granted unless it is clear that the

15   complaint's deficiencies cannot be cured by amendment.  *Lucas v. Department of Corrections*,

16   66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be

17   ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).  On a motion to

18   dismiss, the Court's review is limited to the face of the complaint and matters judicially

19   noticeable.  *North Star International v. Arizona Corporation Commission*, 720 F.2d 578, 581

20   (9th Cir. 1983); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Beliveau*

21   *v. Caras*, 873 F.Supp. 1393, 1395 (C.D. Cal. 1995).  However, under the "incorporation by

22   reference" doctrine, the Court also may consider documents that are referenced extensively in the

23   complaint and are accepted by all parties as authentic, even though the documents are not

24   physically attached to the complaint.  *In re Silicon Graphics, Inc. Securities Litigation*, 183 F.3d

25   970 (9th Cir. 1999).

26   **2.      Demand Requirement**

27          A derivative complaint must "allege with particularity the efforts, if any, made by the

28

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING WITH LEAVE TO AMEND MOTIONS TO DISMISS FOR FAILURE TO STATE A
CLAIM; (2) DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE DEMAND
(JFLC1)

1    plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and,

2    if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to

3    obtain the action or for not making the effort." Fed. R. Civ. P. 23.1.  The existence and

4    satisfaction of a demand requirement is a substantive issue governed by state law. *See Kamen v.*

5    *Kemper Financial Services, Inc.*, 500 U.S. 90, 96-97 (1991).[6]  When the challenged decision is

6    that of the board in place at the time of the filing of the complaint, failure to make demand may

7    be excused if a plaintiff can raise a reason to doubt that a majority of the board is disinterested or

8    independent or that the challenged acts were the product of the board's valid exercise of business

9    judgment. *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984); *see also Ryan v. Gifford*, 918 A.2d

10   341, 352 (Del. Ch. 2007) (discussing *Aronson*).  However, "[w]here there is no conscious

11   decision by the corporate board of directors to act or refrain from acting, the business judgment

12   rule has no application." *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993); *see also Ryan*, 918

13   A.2d at 352 (discussing *Rales*).  In such a situation, demand may be excused only if a plaintiff

14   "can create a reasonable doubt that, as of the time the complaint is filed, the board of directors

15   could have properly exercised its independent and disinterested business judgment in responding

16   to a demand." *Id.* at 353 (citing *Rales*, 634 A.3d 933-34).

17                                    **III.  DISCUSSION**

18   **1.      The Barton Motion to Dismiss for Failure to State a Claim**

19           a.      Claim One: Violation of Section 10(b) and Rule 10b-5

20                   i.      Sufficiency of the Allegations

21           The Consolidated Plaintiffs allege securities fraud in violation of Section 10(b) of the

22   Securities Exchange Act and Rule 10b-5 promulgated thereunder.  Section 10(b) makes it

23   unlawful

24           [t]o use or employ, in connection with the purchase or sale of any security
             registered on a national securities exchange or any security not so registered . . .
25           any manipulative or deceptive device or contrivance in contravention of such rules

26   ────────────────────

27           [6] The parties agree that Delaware law applies to the instant action because Ditech is
     incorporated in Delaware.

28

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING WITH LEAVE TO AMEND MOTIONS TO DISMISS FOR FAILURE TO STATE A
CLAIM; (2) DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE DEMAND
(JFLC1)

and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).  Rule 10b-5 makes it unlawful for any person to use interstate commerce

(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  In cases involving publicly-traded securities and purchases or sales in public securities markets, the elements of an action under Section 10(b) and Rule 10b-5 are:  (1) a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation.  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

The Consolidated Plaintiffs must meet two heightened pleading standards.  Fed. R. Civ. P. 9(b) requires that "the circumstances constituting fraud . . . be stated with particularity."  The Ninth Circuit has explained that a "plaintiff must include statements regarding the time, place, and nature of the alleged fraudulent activities, and that mere conclusory allegations of fraud are insufficient."  *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994).  A plaintiff asserting fraud "must set forth an explanation as to why the statement or omission complained of was false or misleading."  *Id.*  (internal quotation marks omitted); *see also Yourish v. California Amplifier*, 191 F.3d 983, 992-93 (9th Cir. 1999).  The Private Securities Litigation Reform Act ("PSLRA") raises the pleading standard further:

(1) Misleading statements and omissions
In any private action arising under this chapter in which the plaintiff alleges that the defendant–
(A) made an untrue statement of a material fact; or
(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

(2) Required state of mind
In any private action arising under this chapter in which the plaintiff may recover

9

money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4b(1)-(2).

The Consolidated Plaintiffs allege the following with respect to the Section 10(B) claim:

159.  Throughout the relevant period, the Individual Defendants individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, intentionally or recklessly employed devices, schemes and artifices to defraud and engaged in acts, practices and a course of business which operated as a fraud and deceit upon the Company.

160.  The Individual Defendants, as top executive officers and/or directors of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as officers and/or directors in the Company, each of the Individual Defendants was able to and did control the conduct complained of herein.

161.  The Individual Defendants acted with scienter in that they either had actual knowledge of the fraud set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them.  The Individual Defendants were among the senior management and/or directors of the Company and were therefore directly responsible for the fraud alleged herein.

162.  The Company relied upon the Individual Defendants' fraud in granting the Option Recipient Defendants options to purchase shares of the Company's common stock, as alleged herein.

163.  As a direct and proximate result of the Individual Defendants' fraud, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company will be required to incur, the costs associated with the Company's internal investigation, the loss of funds paid to the Company upon the exercise of stock options, costs and expenses incurred in connection with the Company's restatement of historical financial results, and costs and expenses incurred in connection with the SEC investigation of the Company.

Complaint ¶¶ 159-163.

These allegations do not satisfy the specificity requirement of Rule 9(b) or of the PSLRA. They neither identify what roles each defendant played in the alleged back-dating scheme nor allege facts giving rise to a strong inference of scienter on the part of each defendant.  In light of the public statement by Atmel, it appears almost certain that some of the options at issue here were backdated.  However, that apparent fact does not permit the Consolidated Plaintiffs to name any number of individual defendants without providing adequate detail regarding their role and

10

1    knowledge of the alleged backdating.[7]    This is not a case in which requiring further detailed

2    allegations of the roles played by individual defendants would lead to an unreasonably

3    cumbersome complaint.  *See In re Washington Public Power Supply System Securities*

4    *Litigation*, 623 F.Supp. 1466, 1472 (W.D.Wash. 1985).  Accordingly, this claim will be

5    dismissed with leave to amend to the extent that it is not time-barred.

6                ii.    Statute of Limitations

7        [A] private right of action that involves a claim of fraud, deceit, manipulation, or
        contrivance in contravention of a regulatory requirement concerning the securities
8        laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15
        U.S.C. § 78c(a)(47)), may be brought not later than the earlier of –
9            (1) 2 years after the discovery of the facts constituting the
            violation; or
10            (2) 5 years after such violation.

11    28 U.S.C. § 1658(b); *see e.g. In re Heritage Bond Litig.*, 289 F.Supp.2d 1132, 1147-48 (C.D.Cal.

12    2003).  This statute of limitations is not subject to equitable tolling.  *Durning v. Citibank, Int'l*,

13    990 F.2d 1133, 1136-37 (9th Cir. 1993).

14        The parties agree that the five-year period of repose[8] applies to the first claim for

15    _____

16        [7] Nor are the Consolidated Plaintiffs relieved of the requirement that they allege facts
17    raising an inference that a particular option grant was backdated.  While the Court need not
    decide the sufficiency of such allegations in the instant complaint, it notes that other courts
18    within this district have considered the presence or absence of a pattern of backdating, primarily
    in the context of the demand futility requirement.  *See e.g. In re Zoran Corp. Deriv. Litig.*, 2007
19    WL 1650948 (N.D.Cal. June 5, 2007); *In re Openwave Systems Inc. Deriv. Litig.*, 2007 WL
    1456039 (N.D.Cal., May 17, 2007); *In re CNET Networks, Inc. Deriv. Litig.*, 483 F.Supp.2d 947
20    (N.D.Cal. 2007); *In re Linear Tech. Corp. Deriv. Litig.*, 2006 WL 3533024 (N.D.Cal. Dec. 7,
21    2006).  This Court also has provided a non-exclusive list of facts that, if alleged, would
    strengthen allegations that a grant was backdated.  *See* Order Re Motions to Dismiss 11-12, *In re*
22    *Ditech Derivative Litigation*, Case No. C 06-5157 JF (listing the following factors: "the degree to
    which the options were granted at the discretion of the compensation committee or the board,
23    versus at fixed, preestablished times; the actual grant dates of the options and the appropriate
24    price of the options; the date that the options were exercised; whether required performance goals
    were met before the options were granted; the presence or absence of other major corporate
25    events, such as an acquisition, at the time of the grants; and the results of any requests by
26    Plaintiff for information.").

27        [8] "A statute of repose is a fixed, statutory cutoff date, usually independent of any
28    variable, such as claimant's awareness of a violation."  *Munoz v. Ashcroft*, 339 F.3d 950, 957

                                                            11

1   violations of Section 10(b) and Rule 10b-5 of the Securities and Exchange Act.  The

2   Consolidated Plaintiffs argue that their claims fall within the five-year period of repose.  While

3   only a limited number of the alleged stock grant dates fall within this period, the Consolidated

4   Plaintiffs do allege a series of false financial statements within the five-year period and argue that

5   the period of repose begins no earlier than the latest such financial statement, which was filed on

6   March 15, 2003.  This argument raises the question as to whether such subsequent false financial

7   statements preserve claims for options manipulation that occurred outside the five-year period of

8   repose.  The Court concludes that in light of the statute's focus on the "violation," the Court must

9   consider the statute of limitations in terms of the specific violations alleged.  To the extent that

10  the claim is based upon the backdating itself, the period of repose starts on the date that the

11  option grant was made.  *See Durning*, 990 F.2d at 1136 (noting that the federal rule is that a

12  cause of action accrues at the completion of the sale of the instrument); *Falkowski v. Imation

13  Corp.*, 309 F.3d 1123, 1130 (9th Cir. 2002) (describing the grant of an option as "a purchase or

14  sale" under the Securities Litigation Uniform Standards Act).  The Consolidated Plaintiffs may

15  be able to state a claim under Section 10(b) and Rule 10(b)(5) for dissemination of fraudulent

16  financial statements, but such statements must fall within the five-year period of repose.[9]  The

17  Consolidated Plaintiffs may not avoid the effect of the statute of limitations by combining

18  allegations of recent financial statements and time-barred option back-dating.  Because the first

19  claim, as currently pled, depends upon such a combination, it will be dismissed.  The Court will

20  grant leave to amend so that the Consolidated Plaintiffs may allege independent wrongful acts

21  that occurred on or after July 27, 2001.

22

23  _____

24  (9th Cir. 2003) (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350,
    363 (1991)).

25      [9]  The Court is skeptical of a continuing wrong theory that would create liability under

26  Section 10(b) upon the issuance of a financial statement that merely fails to correct a prior false
    statement.  Such a theory appears to approximate the effects of the fraudulent concealment

27  doctrine in relation to equitable tolling, a doctrine that does not apply in the Section 10(b)
    context.

28

1

   b.  <u>Claim Two: Violation of Section 14(a)</u>

2

   Rule 14a-9 provides:

3

   No solicitation subject to this regulation shall be made by means of any proxy
   statement, form of proxy, notice of meeting or other communication, written or
4    oral, containing any statement which, at the time and in the light of the
   circumstances under which it is made, is false or misleading with respect to any
5    material fact, or which omits to state any material fact necessary in order to make
   the statements therein not false or misleading or necessary to correct any
6    statement in any earlier communication with respect to the solicitation of a proxy
   for the same meeting or subject matter which has become false or misleading.

7

17 C.F.R. § 240.14a-9(a).  To state a claim under Rule 14a-9 and Section 14(a), a plaintiff must

8

allege a false or misleading statement or omission of material fact; that the misstatement or

9

omission was made with the requisite level of culpability; and that it was an essential link in the

10

accomplishment of the transaction.  *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir.

11

2000).

12

   The Individual Defendants argue that the Section 14(a) claim is time-barred because it

13

must be filed within one year after discovery of the facts constituting the violation, and in no

14

event more than three years following publication of the proxy statement.  Barton Motion 23.

15

The Consolidated Plaintiffs argue that Section 14(a) claims fall within the two-year/five-year

16

scheme that applies to a Section 10(b) claim.  *See* Opposition 18.  The Court concludes that the

17

one-year/three-year scheme applies to the Section 14(a) claim because such a claim does not

18

sound in fraud.  *See In re Exxon Mobil Corp. Sec. Litig.*, 387 F.Supp.2d 407, 424 (D.N.J. 2005);

19

*In re Global Crossing, Ltd. Sec. Litig.*, 313 F.Supp.2d 189, 196-97 (S.D.N.Y. 2003); *In re Zoran*

20

*Corp. Derivative Litig.*, 2007 WL 1650948 * 24.  As currently pled, the Section 14(a) claim

21

alleges false statements made more than three years prior to the filing of this action.

22

Accordingly, the claim will be dismissed with leave to amend.  Any amended claim must allege

23

wrongful acts that occurred on or after July 27, 2003 and not later than one year after discovery

24

of the violation.

25

   In light of the foregoing discussion, the Court need not reach the challenges to the

26

sufficiency of the allegations.  However, assuming without deciding that the PSLRA also applies

27

to Section 14(a) claims, *see e.g. In re Textainer Partnership Securities Litig.*, 2005 WL 3801596

28

1   (N.D.Cal. March 8, 2005), *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F.Supp.2d 1248, 1267

2   (N.D.Cal. 2000)., greater specificity likely would strengthen this claim considerably.[10]

3        c.     <u>Claim Three: Violation of Section 20(a)</u>

4        Section 20(a) provides:

5           Every person who, directly or indirectly, controls any person liable under any
        provision of this chapter or of any rule or regulation thereunder shall also be liable
6           jointly and severally with and to the same extent as such controlled person to any
        person to whom such controlled person is liable, unless the controlling person
7           acted in good faith and did not directly or indirectly induce the act or acts
        constituting the violation or cause of action.

8

9   15 U.S.C. § 78t(a).  "To establish 'controlling person' liability, the plaintiff must show that a

10   primary violation was committed and that the defendant 'directly or indirectly' controlled the

11   violator."  *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir.

12   1996).  As discussed above, the Consolidated Plaintiffs have failed to state a claim for a primary

13   violation of the securities laws.  However, it is possible that they may be able to do so in an

14   amended pleading.  Accordingly, the Section 20(A) claim will be dismissed with leave to

15   amend.[11]

16        d.     <u>Claims Four to Eleven: The State Law Claims</u>

17             i.     <u>Claims Under Delaware Law (Claims Four to Eleven)</u>

18                  (1)     Statute of Limitations

19        The parties agree that a three-year statute of limitations applies to each claim under

20   Delaware law.  *See* 10 Del. C. § 8106 (2006).  The Consolidated Plaintiffs contend that the

21

22       [10]  This Court has held in another action that the PSLRA has foreclosed the application of
the "group published pleading" doctrine, which provides that when false or misleading
23   information is conveyed in group published statements, it is reasonable to presume that the
statements are the result of the collective actions of the company's officers.  *In re Nextcard, Inc.*
24   *Sec. Litig.*, 2006 WL 708663 *2-3 (N.D.Cal. March 20, 2006).  This holding likely will be
relevant to the sufficiency of an amended claim under Section 14(a).
25

26       [11]  The parties agree that the statute of limitations analysis for claim three is the same as
for claim one.  *See also In re Heritage Bond Litigation*, 289 F.Supp.2d at 1148.  Accordingly,
27   amendment of claim three should comply with the limitations articulated in the Court's analysis
of claim one.

28

14

1  statute was tolled in the instant case "based upon the doctrines of inherently unknowable injuries

2  and fraudulent concealment."  Opposition 20.  "Fraudulent concealment requires an affirmative

3  act of concealment by a defendant-an actual artifice that prevents a plaintiff from gaining

4  knowledge of the facts or some misrepresentation that is intended to put a plaintiff off the trail of

5  inquiry." *Ryan*, 2007 WL 1018208 *13 (quotation marks omitted). "Inaccurate public

6  representations as to whether directors are in compliance with shareholder-approved stock option

7  plans constitute fraudulent concealment of wrongdoing sufficient to toll the statute of

8  limitations."  *Id.*  Because the Consolidated Plaintiffs allege such inaccurate public

9  representations, *see* Complaint ¶ 126, the three-year statute of limitations is tolled as to the

10  Delaware state law claims.

11  (2)      Claim Five: Breach of Fiduciary Duty

12        The Consolidated Plaintiffs allege the following:

13      179.  As alleged in detail herein, each of the Individual Defendants had a fiduciary
    duty to, among other things, refrain from unduly benefiting themselves and other

14      Company insiders at the expense of the Company.
    180.  As alleged in detail herein, the Individual Defendants breached their

15      fiduciary duties by, among other things, engaging in a scheme to grant backdated
    stock options to themselves and/or certain other officers and directors of the

16      Company and cover up their misconduct.
    181.  In breach of their fiduciary duties of loyalty and good faith, the Individual

17      Defendants agreed to and did participate with and/or aided and abetted one
    another in a deliberate course of action designed to divert corporate assets to

18      themselves and/or other Company insiders.
    182.  The Individual Defendants' foregoing misconduct was not, and could not

19      have been, an exercise of good faith business judgment.  Rather, it was intended
    to and did, unduly benefit the Option Recipient Defendants at the expense of the

20      Company.

21  Complaint ¶¶179-82.

22        The Individual Defendants argue that their actions are protected by the business judgment

23  rule.  However, where a defendant acts in bad faith and commits a breach of loyalty, the business

24  judgment rule does not apply.  *See Ryan*, 2007 WL 1018208 *11.  The Individual Defendants

25  also argue that the fiduciary duty claim is not stated with sufficient particularity.  This argument

26  is well taken, as the Complaint does not put the Individual Defendants, and particularly the non-

27  officer defendants, on notice as to how they are alleged to have violated their fiduciary duties.

28

15

1    *See York Linings v. Roach*, 1999 WL 608850 *2 (Del. Ch. July 28, 1999) (unpublished).  The

2    Consolidated Plaintiffs refer to detailed allegations elsewhere in the Complaint, but, as discussed

3    above, necessary detail is largely absent.  Accordingly, this claim will be dismissed with leave to

4    amend.

5                          (3)      Claim Six: Unjust Enrichment

6          The Individual Defendants move to dismiss the unjust enrichment claim on a number of

7    bases.  The Consolidated Plaintiffs respond by citing to *Ryan*, 2007 WL 1018208 *14, in which

8    the Delaware Chancery indicated that an unjust enrichment claim may be viable in the context of

9    options backdating.  The Court need not resolve the legal challenges to this claim, as amendment

10   of the complaint is required on other bases.  The Court notes that more detailed allegations of

11   options backdating will strengthen any claim that the recipients of such options were unjustly

12   enriched.

13                         (4)      Claims Four and Seven: Remedies Pled as Claims

14         The Individual Defendants move to dismiss the claims for accounting and rescission on

15   the basis that accounting and rescission are remedies, not separate claims for relief.  The

16   Consolidated Plaintiffs effectively concede as much, but argue that it is inconsequential whether

17   accounting and rescission are pled as remedies or claims for relief.  Opposition 48.  The Court

18   concludes that the Consolidated Plaintiffs should include accounting and rescission as remedies

19   sought in any amended complaint.

20                         (5)      Claims Eight and Nine: Constructive Fraud and Corporate Waste

21         The Individual Defendants argue that constructive fraud and corporate waste are merely

22   types of breaches of fiduciary duty, not separate torts.  Barton Motion 17 n.10.  The Consolidated

23   Plaintiffs do not respond to this specific argument, which is well taken as to the constructive

24   fraud claim.  The Court will dismiss that claim, which should be restated in any amended

25   complaint as a "straightforward fiduciary duty claim[]."  *See Parfi Holding AB v. Mirror Image

26   Internet, Inc.*, 794 A.2d 1211, 1236 (Del. Ch. 2001) ("[Plaintiff] should amend the complaint to

27   transform its derivative constructive fraud counts into straightforward breach of fiduciary duty

28

                                             16

counts.").

The corporate waste claim also will be dismissed.  "To support a claim [for corporate waste], a shareholder must demonstrate that the transaction in question either served no purpose or was so completely bereft of consideration that the transfer is in effect a gift." *Lewis v. Vogelstein*, Del. Ch., 699 A.2d 327, 336 (1997).  A plaintiff must allege facts that, if true, establish that the defendant directors "authorize[d] an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Glazer v. Zapata Corp.*, Del. Ch., 658 A.2d 176, 183 (1993).  The Consolidated Plaintiffs have not alleged such facts here; instead, they have alleged a grant of equity-compensation.  As the Individual Defendants assert, these grants may well have been in consideration for the recipients remaining in Atmel's employ.  Accordingly, the claim will be dismissed with leave to amend.

(6)     Claim Ten: Breach of Contract

The Individual Defendants move to dismiss the breach of contract claim on the grounds that it is not pled with sufficient particularity, that no employment agreements existed between Atmel and the "option recipient defendants," that the Consolidated Plaintiffs have not alleged any act of breach, and that the directors ratified any breach.  The Consolidated Plaintiffs respond briefly that "[t]he terms of the Atmel stock option plans were blatantly violated when the Director Defendants approved backdated stock option grants."  Opposition 47.  However, the Consolidated Plaintiffs have not alleged which, if any, of the defendants entered into a binding contract that incorporates the terms of an option plan.  Accordingly, this claim will be dismissed with leave to amend.

ii.     Claim Eleven: Insider Trading Under California Law

(1)     Statute of Limitations

A Section 25402 claim must be brought "before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire."  Cal. Corp. Code §

17

25506(b).  While the Consolidated Plaintiffs argue that this period should be equitably tolled, the

Court concludes that the five-year period since the violation is a strict limit that may not be

tolled.  *See SEC v. Seaboard Corp.*, 677 F.2d 1301, 1308 (9th Cir. 1982) (concluding that the

four-year bar under an earlier version of the statute was a strict limit).  The insider trading

allegations refer to sales as early as 1997.  Accordingly, portions of the claim are barred as

currently pled.  Any amended claim should allege violations that occurred on or after July 27,

2001 and discovery of which occurred on or after July 27, 2004.

(2)       Sufficiency of the Allegations

Cal. Corp. Code § 25402 provides that

> [i]t is unlawful for an issuer or any person who is an officer, director or
> controlling person of an issuer or any other person whose relationship to the issuer
> gives him access, directly or indirectly, to material information about the issuer
> not generally available to the public, to purchase or sell any security of the issuer
> in this state at a time when he knows material information about the issuer gained
> from such relationship which would significantly affect the market price of that
> security and which is not generally available to the public, and which he knows is
> not intended to be so available, unless he has reason to believe that the person
> selling to or buying from him is also in possession of the information.

A claim under Section 25402 must be pled with particularity under Rule 9(b).  *In re RasterOps*

*Corp. Sec. Litig.*, 1993 WL 476651 *5 (N.D.Cal. Sep. 10, 1993).

The Consolidated Plaintiffs allege the following:

> 202.  At the time that the Insider Selling Defendants sold their Atmel common
> stock as set forth herein at ¶¶ 135-49, by reason of their high executive and/or
> directorial positions with Atmel, the Insider Selling Defendants had access to
> highly material information regarding the Company, including the information set
> forth herein regarding the true adverse facts of Atmel's option backdating,
> improper accounting, and false financial statements.
> 203.  At the time of such sales, that information was not generally available to the
> public of the securities markets.  Had such information been generally available, it
> would have significantly reduced the market price of Atmel shares at the time.
> 204.  The Insider Selling Defendants had actual knowledge of material, adverse
> non-public information and thus sold their Atmel common stock in California in
> violation of California Corporations Code §25402.

Complaint  ¶¶ 202-04.  The Court concludes that like the other claims, the insider trading claim

is not pled with sufficient particularity and should be dismissed with leave to amend.  An

amended claim should allege facts specific to each of the Individual Defendants.

18

1    e.  Motions to Dismiss Joining in the Barton Motion

2    The Court has reviewed the two additional motions to dismiss that join in the Barton

3 Motion.  The Court concludes that the dismissal of the claims on the basis of the arguments made

4 in the Barton Motion renders it unnecessary to address the separate arguments asserted in the

5 Sisois and Perlegos motions.

6 **2.**  **The Atmel Motion to Dismiss for Failure to Make Demand**

7    The Delaware Court of Chancery[12] recently explained:

8  [I]n an effort to balance the interest of preventing strike suits motivated by the
  hope of creating settlement leverage through the prospect of expensive and
9  time-consuming litigation discovery [with the interest of encouraging] suits
  reflecting a reasonable apprehension of actionable director malfeasance that the
10  sitting board cannot be expected to objectively pursue on the corporation's behalf,
  Delaware law recognizes two instances where a plaintiff is excused from making
11  demand.  Failure to make demand may be excused if a plaintiff can raise a reason
  to doubt that: (1) a majority of the board is disinterested or independent or (2) the
12  challenged acts were the product of the board's valid exercise of business
  judgment.
13  The analysis differs, however, where the challenged decision is not a decision of
  the board in place at the time the complaint is filed. In *Rales v. Blasband*[, 634
14  A.2d 927 (Del. 1993)], the Supreme Court of Delaware held that [w]here there is
  no conscious decision by the corporate board of directors to act or refrain from
15  acting, the business judgment rule has no application.  Stated differently, the
  absence of board action . . .  makes it impossible to perform the essential inquiry
16  contemplated by *Aronson [v. Lewis,* 473 A.2d 805, 812 (Del. 1984)].
  Accordingly, where the challenged transaction was not a decision of the board
17  upon which plaintiff must seek demand, plaintiff must create a reasonable doubt
  that, as of the time the complaint is filed, the board of directors could have
18  properly exercised its independent and disinterested business judgment in
  responding to a demand.
19  . . . .
  Where at least one half or more of the board in place at the time the complaint
20  was filed approved the underlying challenged transactions, which approval may be
  imputed to the entire board for purposes of proving demand futility, the *Aronson*
21  test applies.

22 *Ryan v. Gifford*, 918 A.2d 341, 352-53(Del. Ch. 2007) (citations and quotation marks omitted).

23

24

25   [12]   The parties agree that Delaware law governs the instant dispute.  Because California
 courts follow Delaware law in demand futility cases, this is true even if California law applies
26 due to Atmel's asserted prior incorporation in California.  *See Oakland Raiders v. National*
 *Football League*, 93 Cal.App.4th 572, 586 n.5 (2001) ("The parties agree that we may properly
27 rely on corporate law developed in the State of Delaware given that it is identical to California
 corporate law for all practical purposes.").

28

1    The parties dispute whether the Court should consider the eight-member Board that was

2    in place at the time that the initial complaint was filed[13] or the six-member Board that was in

3    place at the time that the Complaint was filed.[14]

> [W]hen an amended derivative complaint is filed, the existence of a new
> independent board of directors is relevant to a Rule 23.1 demand inquiry only as
> to derivative claims in the amended complaint that are not already validly in
> litigation.  Three circumstances must exist to excuse a plaintiff from making
> demand under Rule 23.1 when a complaint is amended after a new board of
> directors is in place: first, the original complaint was well pleaded as a derivative
> action; second, the original complaint satisfied the legal test for demand excusal;
> and third, the act or transaction complained of in the amendment is essentially the
> same as the act or transaction challenged in the original complaint.

*Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006); *see also Harris v. Carter*, 582 A.2d

222, 228 (Del. Ch. 1990) ("Demand futility is assessed as of the time that the original complaint

was filed, not as of the filing of an amended complaint containing further factual allegations in

support of the same claims.").   However, Delaware courts have not explained whether the three

circumstances for excuse of a new demand requirement apply to a *consolidated* complaint.

In light of the dismissal for failure to state a claim, the Court concludes that it is

premature to resolve this question, or the subsequent questions as to whether *Aronson* or *Rales*

applies, and what result the appropriate test dictates.  Accordingly, the motion to dismiss for

failure to make demand will be deferred.

## IV.  ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the motions to dismiss

for failure to state a claim are GRANTED with leave to amend and that the motion to dismiss for

failure to make demand is DEFERRED.

DATED: July 16, 2007.

_____
JEREMY FOGEL
United States District Judge

---

[13]   George & Gust Perlegos, Wu, Fougere, Thomas, Kim, Laub, and Sugishita.

[14]   The original eight-person Board, less George and Gust Perlegos.

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING WITH LEAVE TO AMEND MOTIONS TO DISMISS FOR FAILURE TO STATE A
CLAIM; (2) DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE DEMAND
(JFLC1)

1   This Order has been served upon the following persons:

2   Todd L. Burlingame          burlingame@mofo.com, rsexton@mofo.com

3   John L. Cooper              jcooper@fbm.com, brestivo@fbm.com; calendar@fbm.com

4   Lawrence Timothy Fisher     ltfisher@bramsonplutzik.com, moldenberg@bramsonplutzik.com

5   Tara Puhua Kao             tkao@sbtklaw.com, der_filings@sbtklaw.com

6   Brian Lawrence Levine       BLevine@mofo.com, sdevol@mofo.com

7   Marisa C. Livesay          livesay@whafh.com

8   Betsy C. Manifold          manifold@whafh.com

9   Jessica Koren Nall         jnall@fbm.com, bheuss@fbm.com; calendar@fbm.com

10  James Lawrence Pagano      paganolaw@aol.com

11  Alan R Plutzik             aplutzik@bramsonplutzik.com

12  Darryl P. Rains            drains@mofo.com, dgillis@mofo.com

13  Rachele R. Rickert         rickert@whafh.com

14  Kathryn A. Schofield       kschofield@bramsonplutzik.com,
                               moldenberg@bramsonplutzik.com

15
    Emanuel Shachmurove        mshachmurove@sbtklaw.com
16
    Eric L. Zagar              ezagar@sbclasslaw.com, rwinchester@sbtklaw.com;
17                             der_filings@sbtklaw.com; kpopovich@sbtklaw.com

18

19

20

21

22

23

24

25

26

27

28

21

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING WITH LEAVE TO AMEND MOTIONS TO DISMISS FOR FAILURE TO STATE A
CLAIM; (2) DEFERRING MOTION TO DISMISS FOR FAILURE TO MAKE DEMAND
(JFLC1)