**E-Filed 6/25/2008**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE ATMEL CORPORATION DERIVATIVE LITIGATION | Case Number C 06-4592 JF (HRL) |
| | ORDER[1] GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FOR (1)FAILURE TO COMPLY WITH FED. R. CIV. PRO. 23.1; AND (2) FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED |
| | [re: docket nos. 90, 92, 96, 125] |

**I.  BACKGROUND**

**1.     Procedural Background**

On July 27, 2006, Plaintiff James Juengling ("Juengling") filed a shareholder derivative

complaint against a number of the directors and officers of nominal Defendant Atmel

Corporation ("Atmel").  The complaint alleged improper backdating of stock options and

asserted claims for: (1) breach of fiduciary duty; (2) violation of Section 10(b) of the Securities

_____

[1] This disposition is not designated for publication and may not be cited.

1   Exchange Act and Rule 10b-5 promulgated thereunder; and (3) restitution/unjust enrichment.  On

2   October 4, 2006, the Court consolidated the Juengling action with two other derivative actions[2]

3   and appointed a leadership structure for the consolidated action ("Plaintiffs").

4       On November 3, 2006, Plaintiffs filed a consolidated complaint which named eighteen

5   individual defendants ("the Individual Defendants") who served as officers or directors of Atmel.

6   The consolidated complaint separated the Individual Defendants into two categories: the "Option

7   Recipient Defendants" (Gust Perlegos, Tsung-Ching Wu ("Wu"), Kris Chellalm ("Chellam"),

8   Jack Peckham ("Peckham"), Donald Colvin ("Colvin"), Mike Sisois ("Sisois"), B. Jeffrey Katz

9   ("Katz"), Francis Barton ("Barton"), Graham Turner ("Turner"), Bernard Pruniaux ("Pruniaux"),

10  and Steven Schumann ("Schumann")) and the "Director Defendants" (George Perlegos, T. Peter

11  Thomas ("Thomas"), Chaiho Kim ("Kim"), Pierre Fougere ("Fougere"), Norman Hall ("Hall"),

12  David Sugishita ("Sugishita"), and Steven Laub ("Laub")).  The consolidated complaint asserted

13  eleven claims: (1) violation of §10(b) and Rule 10b-5 of the Securities and Exchange Act

14  (against the Individual Defendants); (2) violations of §14(a) of the Securities Exchange Act

15  (against the Individual Defendants); (3) violations of §20(a) of the Securities Exchange Act

16  (against Chellam, Barton, Wu and the Director Defendants); (4) accounting (against the

17  Individual Defendants); (5) breach of fiduciary duty and/or aiding and abetting (against the

18  Individual Defendants); (6) unjust enrichment (against the Option Recipient Defendants); (7)

19  rescission (against the Option Recipient Defendants); (8) constructive fraud (against the

20  Individual Defendants); (9) corporate waste (against the Individual Defendants); (10) breach of

21  contract (against the Option Recipient Defendants); and (11) violation of California Corporations

22

23      [2] The plaintiff in *Noble v. Perlegos, et al.*, Case No. C 06-4973 JF brought claims for: (1)

24  violation of Section 14(a) of the Exchange Act; (2) breach of fiduciary duty; (3) gross
    mismanagement; (4) waste of corporate assets; and (5) unjust enrichment and breach of the duty

25  of loyalty.

26      The plaintiff in *Kelley v. Perlegos, et al.*, Case No. C 06-4680 JF brought claims for: (1)
    breach of fiduciary duty; (2) violation of Section 10(b) of the Securities Exchange Act and Rule

27  10b-5 promulgated thereunder; and (3) restitution/unjust enrichment.

28
    Case No. C 06-4592 JF (HRL)
    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FOR (1) FAILURE TO STATE
    A CLAIM UPON WHICH RELIEF MAY BE GRANTED; AND (2) FAILURE TO COMPLY WITH FED. R. CIV.
    PRO. 23.1
    (JFLC1)(JFEX2)

1    Code § 25402 (against the Individual Defendants, with the exception of Barton, Fougere, Kim,

2    Laub and Sugishita).  No demand was made upon Atmel's Board of Directors (the Board")

3    pursuant to Fed. R. Civ. Pro. 23.1.  Plaintiffs alleged that such a demand would be futile.

4           On January 29, 2007, fifteen of the Individual Defendants filed a joint motion to dismiss

5    for failure to state a claim upon which relief may be granted ("the Barton Motion").  Defendants

6    Gust Perlegos and George Perlegos moved separately to dismiss and joined the Barton Motion

7    with a limited exception ("Perlegos Motion").  Atmel also moved to dismiss for failure to make a

8    demand ("Atmel Motion").  On January 30, 2007, Defendant Sisois moved to dismiss, joining

9    the Barton Motion with limited exceptions ("Sisois Motion").  Plaintiffs filed an omnibus

10   opposition to the four motions to dismiss.

11          On July 16, 2007, the Court dismissed the consolidated complaint with leave to amend.

12   The Court concluded that: Plaintiffs had not pled section 10(b) and Rule 10b-5 violations with

13   the particularity required under Rule 9(b) and the Private Securities Litigation Reform Act

14   ("PSLRA").  Specifically, it concluded that the consolidated complaint did not identify the roles

15   each defendant played in the alleged backdating scheme, nor did it allege facts giving rise to a

16   strong inference of scienter on the part of each defendant.

17          The Court also concluded that Plaintiffs' section 14(a) claim was untimely because it was

18   based on alleged false statements made more than three years prior to the filing of the original

19   action.  Accordingly, it held that any amended Section 14(a) claim must allege wrongful acts that

20   occurred on or after July 27, 2003 and not later than one year after discovery of the violation.  It

21   advised Plaintiffs that greater specificity likely would strengthen the Section 14(a) claim

22   considerably.  Plaintiffs' Section 20(a) claim was dismissed for failure to state a predicate

23   violation.

24          The Court concluded that Plaintiffs did not plead their fifth claim for breach of fiduciary

25   duty with sufficient particularity, and that Plaintiffs' pleadings did not put the Individual

26   Defendants, particularly the non-officer defendants, on notice as to how they were alleged to

27   have violated their fiduciary duties.  With respect to Plaintiffs' fourth and seventh claims, the

28

3

Court held that Plaintiffs should identify accounting and rescission as remedies rather than as claims for relief, and dismissed Plaintiffs' constructive fraud claim, directing that the claim be restated as part of Plaintiffs' claim for breach of fiduciary duty. The Court also dismissed Plaintiffs' corporate waste claim, finding that Plaintiffs had failed to allege that the transaction at issue either served no purpose or was so completely bereft of consideration that it amounted to aa gift of corporate funds. It dismissed Plaintiffs' claim for breach of contract because Plaintiffs failed to allege which, if any, of the defendants entered into a binding contract that incorporated the terms of an option plan. Finally, the Court concluded that those portions of Plaintiffs' insider trading claims based on alleged sales prior to July 27, 2001 were time-barred and that none of the insider trading claims was pled with sufficient particularity. The Court held that all other state law claims were timely. Having thus dismissed all of the substantive claims in the consolidated complaint, the Court did not reach the issue of demand.

On August 21, 2007, Plaintiffs filed an Amended Consolidated Shareholder Derivative Complaint ("Amended Complaint"). The Amended Complaint, which contains more than 200 paragraphs of amended allegations, asserts claims against all of the Individual Defendants named in the consolidated complaint with the exception of Laub and Sugishita, who no longer are named. The Amended Complaint also adds one new Defendant, J. Michael Ross ("Ross"). The Amended Complaint asserts nine claims: (1) violation of §10(b) and Rule 10b-5 of the Securities and Exchange Act (against George Perlegos, Gust Perlegos, Chellam, Ross, Hall, Thomas, Fougere, and Kim); (2) violations of §14(a) of the Securities Exchange Act (against George Perlegos, Gust Perlegos, Chellam, Hall, Thomas, Fougere and Kim); (3) violations of §20(a) of the Securities Exchange Act (against George Perlegos, Gust Perlegos, Chellam, Hall, Thomas, Fougere and Kim); (4) breach of fiduciary duty and/or aiding and abetting (against George Perlegos, Gust Perlegos, Ross, Chellam, Hall, Thomas, Fougere and Kim); (5) unjust enrichment (against Gust Perlegos, Wu, Chellam, Peckham, Covlin, Sisois, Katz, Barton, Turner, Pruniaux and Schumann); (6) constructive fraud (against George Perlegos, Gust Perlegos, Ross, Chellam, Hall, Thomas, Fougere and Kim); (7) corporate waste (against all Individual Defendants); (8)

Case No. C 06-4592 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FOR (1) FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED; AND (2) FAILURE TO COMPLY WITH FED. R. CIV. PRO. 23.1
(JFLC1)(JFEX2)

1  breach of contract (against Gust Perlegos, Wu, Chellam, Peckham, Colvin, Sisois, Katz, Barton,

2  Turner, Pruniaux and Schumann); and (9) violation of California Corporation Code § 25402

3  (against Chellam, Hall, Gust Perlegos, George Perlegos and Thomas).

4       Defendants have filed four new motions to dismiss: (1) George and Gust Perlegos move

5  to dismiss for failure to state a claim upon which relief may be granted ("Perlegos' Motion"); (2)

6  Individual Defendant Mike Sisois moves to dismiss for failure to state a claim upon which relief

7  may be granted ("Sisois Motion"); (3) Individual Defendant J. Michael Ross moves to dismiss

8  the amended complaint for failure to state a claim upon which relief may be granted ("Ross

9  Motion"); and (4) Atmel moves to dismiss for failure to comply with the demand requirement

10 pursuant to Fed. R. Civ. Pro. 23.1 ("Atmel Motion").

11 **2.    Factual Background**

12      The Amended Complaint alleges that the Individual Defendants had the following

13 relationships with Atmel:

| Defendant | Role with Atmel |
|-----------|-----------------|
| George Perlegos | President, CEO,[3] & director from Atmel's inception in 1984 to August 2006. |
| Gust Perlegos | Executive VP Office of the President, 2001 to August 2006. Director, January 1985 to August 2006. Executive VP & GM, January 1996 to 2001. VP, GM January 1985 to January 1996. |
| Thomas | Director since December 1987. Member of the Compensation Committee & the Audit Committee since at least 1996. |
| Kim | Director & member of the Audit Committee since September 2002. Member of the Compensation Committee from September 2002 through 2003. |
| Fougere | Director, member of the Audit Committee, & member of the Compensation Committee since February 2001. |

---

[3]CEO refers to Chief Executive Officer, CFO refers to Chief Financial Officer, VP refers to Vice President, and GM refers to General Manager.

Case No. C 06-4592 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FOR (1) FAILURE TO STATE
A CLAIM UPON WHICH RELIEF MAY BE GRANTED; AND (2) FAILURE TO COMPLY WITH FED. R. CIV.
PRO. 23.1
(JFLC1)(JFEX2)

| Hall | Director from August 1992 until in or about 2005. Member of the Compensation Committee from 1997 to 2004, & member of the Audit Committee from 1997 to 2003. |
| --- | --- |
| Wu | Executive VP, Office of the President since 2001. Director since 1985. Executive VP & GM, January 1996 to 2001. VP, Technology, January 1986 to January 1996. |
| Chellam | VP, Finance Administration, & CFO, September 1991 to July 1998. |
| Peckham | GM, ASIC Operations, January 1992 to 1998. VP, Sales, January 1986 to January 1992. Director of Sales, June 1985 to January 1986. |
| Colvin | VP, Finance, & CFO March 1998 to January 2003. CFO, Atmel Rousset S.A. 1995 to 1998. |
| Sisois | VP, Planning & Information Systems, 1986 to August 2006. Director of Information Systems, February 1985 to 1986. |
| Katz | VP, Marketing, November 1998 to about 2005. |
| Barton | Executive VP & CFO, May 2003 to July 2005. |
| Turner | VP and GM, Microcontroller Segment since October 2001. Served in various positions since he joined the Company in 1989, including VP of European Operations from 1993 to October 2001. |
| Pruniaux | VP and GM, ASIC Segment since November 2001. CEO of Atmel Rousset S.A., May 1995 to November 2001. |
| Schumann | VP and GM, Non-Volatile Memory Segment since January 2002. Served in various positions since he joined the Company in 1985, including VP of Non-Volatile Memory Products from February 1996 to January 2002. |
| Ross | General Counsel from 1989 to August 2006. VP, General Counsel and Assistant Secretary until August 2006. |

As summarized below, the Amended Complaint alleges that the Individual Defendants received thirty backdated option grants on fourteen separate dates:

| Recipient | Purported Grant Date | Shares | Share Price |
| --- | --- | --- | --- |
| Gust Perlegos | February 22, 1995<br>April 11, 1997<br>February 14, 2002<br>November 14, 2002 | 320,000<br>40,000<br>100,000<br>50,000 | $3.8516<br>$6.0938<br>$7.69<br>$2.11 |

Case No. C 06-4592 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FOR (1) FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED; AND (2) FAILURE TO COMPLY WITH FED. R. CIV. PRO. 23.1
(JFLC1)(JFEX2)

| | | | |
|---|---|---|---|
| Wu | February 22, 1995<br>April 11, 1997<br>February 14, 2002<br>November 14, 2002 | 320,000<br>40,000<br>100,000<br>100,000 | $3.8516<br>$6.0938<br>$7.69<br>$2.11 |
| Chellam | February 4, 1994<br>February 22, 1995<br>April 11, 1997 | 128,000<br>80,000<br>40,000 | $2.29<br>$3.8516<br>$6.0938 |
| Peckham | February 4, 1994<br>February 22, 1995<br>April 11, 1997 | 160,000<br>80,000<br>40,000 | $2.29<br>$3.8516<br>$6.0938 |
| Colvin | February 12, 1999<br>July 16, 1999<br>November 17, 2000<br>September 17, 2001<br>November 14, 2002 | 20,000<br>40,000<br>40,000<br>100,000<br>50,000 | $3.6719<br>$7.8281<br>$12.125<br>$7.12<br>$2.11 |
| Sisois | June 11, 1999<br>July 11, 2002<br>November 14, 2002 | 40,000<br>30,000<br>40,000 | $5.9063<br>$5.13<br>$2.11 |
| Katz | July 16, 1999 | 10,000 | $7.8281 |
| Barton | April 30, 2003 | 500,000 | $1.81 |
| Turner | February 4, 1994<br>October 9, 1998<br>July 16, 1999 | 160,000<br>100,000<br>40,000 | $2.29<br>$1.9844<br>$7.8281 |
| Pruniaux | October 9, 1998 | 200,000 | $1.9844 |
| Schumann | February 22, 1994<br>October 9, 1998 | 192,000<br>192,000 | $3.8516<br>$1.9844 |

The Amended Complaint also alleges the following.  Between 1994 and 2006, Atmel adopted three stock option plans that were in effect at separate times - the 1986 Incentive Stock Option Plan, the 1996 Stock Plan and the 2005 Stock Plan (collectively, "the Plans").   The Individual Defendants violated the terms of the Plans by knowingly and deliberately backdating grants of stock options, making it appear as though the grants were made on dates when the market price of Atmel stock was lower than the market price on the actual grant date.  The Individual Defendants also represented in proxy statements that the stock option grants carried an exercise price that was equal to the fair market value on the date of the grant.

On October 30, 2006, Atmel issued a press release reporting the preliminary conclusions

7

of an Audit Committee responsible for investigating suspicions of backdating.  The press release

stated that "the actual measurement dates for certain stock options differed from the recorded

measurement dates for such stock options" and that consequently, Atmel's prior financial

statements were not reliable.  On April 30, 2007, the Audit Committee issued a second press

release reporting further findings of the investigation.  The Audit Committee found that 93 of

112 stock option grants during the period from January 1, 1997 through August 3, 2006 included

some options that were not issued on the date set forth in the company's stock option records.

On May 1, 2007, Atmel announced that "[a]s a result of the measurement date errors identified in

the Audit Committee's investigation, [Atmel] has determined that material stock-based

compensation adjustments are required for measurement date errors in the period beginning in

1993 and continuing through January 2004."  On June 8, 2007, Atmel filed its fiscal 2006

financial statements, stating that "[u]pon completion of that investigation, [Atmel] recorded

additional aggregate non-cash stock-based compensation expenses for the period from 1993

through 2005, excluding payroll and income tax adjustments, of approximately $116 million."

## II. DISCUSSION

### 1. Demand Futility

A derivative complaint must "allege with particularity the efforts, if any, made by the

plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and,

if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to

obtain the action or for not making the effort."  Fed. R. Civ. P. 23.1.  The existence and

satisfaction of a demand requirement is a substantive issue governed by state law.[4]  *See Kamen*

*v. Kemper Fin. Servs, Inc.*, 500 U.S. 90, 96-97 (1991).  When the challenged decision is that of

the board in place at the time of the filing of the complaint, failure to make demand may be

---

[4]  The parties agree that Delaware law applies to the instant action because Ditech is
incorporated in Delaware.

Case No. C 06-4592 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FOR (1) FAILURE TO STATE
A CLAIM UPON WHICH RELIEF MAY BE GRANTED; AND (2) FAILURE TO COMPLY WITH FED. R. CIV.
PRO. 23.1
(JFLC1)(JFEX2)

excused if a plaintiff can raise a reason to doubt that a majority of the board is disinterested or independent or that the challenged acts were the product of the board's valid exercise of business judgment. *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984); *see also Ryan v. Gifford*, 918 A.2d 341, 352 (Del. Ch. 2007) (discussing *Aronson*). However, "[w]here there is no conscious decision by the corporate board of directors to act or refrain from acting, the business judgment rule has no application." *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993); *see also Ryan*, 918 A.2d at 352 (discussing *Rales*). In such a situation, demand may be excused only if a plaintiff "can create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.* at 353 (citing *Rales*, 634 A.3d 933-34).

The parties dispute which board of directors should be examined for the purpose of determining demand futility. Atmel argues that Plaintiffs must establish a reasonable doubt that the board of directors in place on August 21, 2007, the filing date of the Amended Complaint, could have satisfied the *Rales* standard. Plaintiffs, on the other hand, argue that the *Rales* inquiry should be directed at the board that existed on July 27, 2006, when the original complaint in this action was filed. Under Delaware law, plaintiffs generally are not required to make demand or re-plead futility after an action has commenced:

> When claims have been properly laid before the court and are in litigation, neither Rule 23.1 nor the policy it implements requires that a court decline to permit further litigation of those claims upon the replacement of the interested board with a disinterested one . . . . Such a change in control does not require a derivative plaintiff to present a demand to the new board, or to allege facts that would excuse demand as of the time a plaintiff elects to amend his pleadings.

*Harris v. Carter*, 582 A.2d 222, 231 (Del. Ch. 1990). However, in *Braddock v. Zimmerman*, 906 A.2d 776 (Del. 2006), the Supreme Court of Delaware recognized the following exception:

> [W]hen an amended derivative complaint is filed, the existence of a new independent board of directors is relevant to a Rule 23.1 demand inquiry only as to derivative claims in the amended complaint that are not already validly in litigation. Three circumstances must exist to excuse a plaintiff form making demand under Rule 23.1 when a complaint is amended after a new board of directors is in place: first the original complaint was well pleaded as a derivative action; second, the original complaint satisfied the legal test for demand excusal; and third, the act or transaction complained of in the amendment is essentially the

Case No. C 06-4592 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FOR (1) FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED; AND (2) FAILURE TO COMPLY WITH FED. R. CIV. PRO. 23.1
(JFLC1)(JFEX2)

1

> same as the act or transaction challenged in the original complaint. . . .

2
3
4

> A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint. It constitutes a judicial determination that the original complaint was either not well pleaded as a derivative action or did not satisfied the legal test for demand excusal. Following such a dismissal, for purposes of a Rule 23.1 demand inquiry, the complaint is not validly in litigation.

5  *Id*. at 786.

6      Plaintiffs seek to distinguish *Braddock* on the basis that the original complaint in that

7  case was dismissed for failure to make demand, while in the instant case the Court dismissed

8  Plaintiff's original complaint for failure to state a claim and deferred the issue of demand futility.

9  The thrust of Plaintiff's argument is that a claim is not "validly in litigation" under *Braddock*'s

10  first exception *only* if it was not well pleaded *as a derivative* claim, meaning a claim that

11  otherwise is insufficiently pleaded remains validly in litigation. This is consistent with language

12  in *Braddock* recognizing that it is not necessary to make demand or re-plead futility when a

13  complaint is amended to add new facts relating to the acts or transactions alleged in the original

14  pleading. *Id*. at 785 ( "[A]n amendment or supplement to a complaint that elaborates upon facts

15  relating to acts or transactions alleged in the original pleading, or asserts new legal theories of

16  recovery based upon the acts or transactions that formed the substance of the original pleading,

17  would not . . . constitute a matter that would require a derivative plaintiff to bring any part of an

18  amended or supplemental complaint to the board prior to filing."). Accordingly, the Court will

19  evaluate the futility of making demand on the board in place at the time the initial complaint was

20  filed. That board consisted of eight members: George and Gust Perlegos, Wu, Fougere, Thomas,

21  Kim, Sugishita and Laub.

22      Under Delaware law, courts may base a finding of reasonable doubt regarding

23  disinterestedness on two types of allegations. First, "[d]irector interest exists whenever divided

24  loyalties are present, or a director either has received, or is entitled to receive, a personal financial

25  benefit from the challenged transaction which is not equally share by the stockholders."

26  *Pogostin v. Rice*, 480 A.2d 619, 624 (Del. 1984) (citing *Aronson*, 473 A.2d at 812). Second, a

27  plaintiff may plead specific facts showing that "the directors face a 'substantial likelihood' of

28

10

1  personal liability, [so that] their ability to consider a demand impartially is compromised."

2  *Ratter v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323 at *12 (Del. Ch. Oct. 7, 2003).

3  Plaintiffs assert that Gust Perlegos and Wu are interested because they received backdated

4  options.   The Delaware Chancery Court has held that a director's receipt of allegedly backdated

5  options adequately raises a reasonable doubt as to a director's disinterestedness because such

6  directors "have a strong financial incentive to maintain the status quo by not authorizing any

7  corrective action that would devalue their current holding or cause them to disgorge improperly

8  obtained profits.  This creates an unacceptable conflict that restricts them from evaluating the

9  litigation properly."  *Conrad v. Blank*, No. 2611-VCL, 2007 Del. Ch. LEXIS 130 at *24 (Del.

10  Ch. Ct. Aug. 2, 2007).  Plaintiffs have alleged that Gust Perlegos and Wu received 510,000 and

11  560,000 backdated stock options respectively, which provided them with a benefit that was not

12  equally shared with Atmel shareholders.  These allegations are sufficient to raise a reasonable

13  doubt as to their disinteretedness.

14  Plaintiffs contend further that Thomas, Kim and Fougere face a substantial likelihood of

15  liability for approving backdated options.  The Amended Complaint alleges that as members of

16  the compensation committee, Thomas, Kim and Fougere were responsible for backdating

17  because they "had the sole authority to choose the date and, in fact, did choose the date on which

18  these stock options were granted,"  Amended Complaint ¶ 136, and further, that these defendants

19  knew that the Plans required options to be priced at fair market value and intentionally violated

20  those plans by approving backdated options.  *Id*. at ¶¶ 100, 136-84.   In *Ryan*, the Delaware

21  Chancery Court considered the question of whether, for the purpose of determining demand

22  futility, these same allegations were sufficient to establish that the defendants knowingly

23  participated in a backdating scheme.  The court found that these allegations established a

24  substantial likelihood of liability.  The court explained:

25  It is difficult to understand how a plaintiff can allege that directors backdated
   options without simultaneously alleging that such directors knew that the options
26  were being backdated.  After all, any grant of options had to have been approved
   by the compensation committee, and that compensation committee can be
27  reasonably expected to know that date of the options as well as the date on which

28

11

1    they actually approve the grant.

2    *Ryan*, 918 A.2d at 335.  In *Conrad*, the court applied this reasoning to similar allegations and

3    concluded that "for the purpose of the *Rales* analysis, the allegations of the complaint are

4    sufficient to excuse demand on the members of the compensation committee, since they raise . . .

5    a reasonable inference the compensation committee members acted knowingly in awarding

6    options priced at dates other than the actual dates of the grant."  *Conrad*, 2007 Del. Ch. LEXIS

7    130 at * 30.

8        Atmel urges this Court to follow *Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. Ct.

9    2007).  The court in *Desimone* posited several scenarios regarding a hypothetical compensation

10   committee's approval of stock options, including a scenario in which a compensation committee

11   approved a backdated option but did not know that doing so violated the terms of the applicable

12   stock option plan.  In contrast to its counterparts in *Ryan* and *Conrad,* the court in *Desimone*

13   concluded that exclusive authority coupled with knowledge of the terms of the option agreement

14   was not necessarily sufficient to establish liability.  Instead, the court concluded only that this

15   scenario presented "interesting questions about the culpability the compensation committee

16   members have for harm caused to the corporation by the option grants."  *Id.* at 933.

17       Atmel argues that *Desimone* precludes a finding that Plaintiffs have satisfied the demand

18   futility pleading requirement.  However, *Desimone* does not go so far as to hold that the

19   allegations plead in *Ryan* are insufficient to establish demand futility.  *Desimone* involved

20   allegations distinguishable from those involved in *Ryan* and in the present case.  As the court

21   observed:

> This case presents a different question than those involved in *Ryan* . . . which is
> whether corporate officials breached their fiduciary duties when they, despite
> having a express permission under stockholder-approved option plan to grant
> below-market options, represent to shareholders, markets and regulatory
> authorities that they are granting fair-market-value options when in fact they are
> secretly manipulating the exercise price of the option.

25   *Id*. at 908.  Having considered all of the relevant authorities, this Court is satisfied that Plaintiffs

26   have raised a reasonable doubt as to whether Thomas, Kim and Fougere were disinterested.

28                                          12

1

2. **Motions to Dismiss**

2

3        For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the

4 Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v.*

5 *McKeithen*, 395 U.S. 411, 421 (1969).  Leave to amend must be granted unless it is clear that the

6 complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections*,

66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be

7 ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).  On a motion to

8 dismiss, the Court's review is limited to the face of the complaint and matters judicially

9 noticeable. *North Star International v. Arizona Corporation Commission*, 720 F.2d 578, 581

10 (9th Cir. 1983); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Beliveau*

11 *v. Caras*, 873 F. Supp. 1393, 1395 (C.D. Cal. 1995).  However, under the "incorporation by

12 reference" doctrine, the Court also may consider documents that are referenced extensively in the

13 complaint and are accepted by all parties as authentic, even though the documents are not

14 physically attached to the complaint. *In re Silicon Graphics, Inc. Securities Litigation*, 183 F.3d

15 970 (9th Cir. 1999).

16        a.        **Claim One: Violation of Section 10(b) and Rule 10b-5**

17        Section 10(b) makes it unlawful

18        [t]o use or employ, in connection with the purchase or sale of any security
         registered on a national securities exchange or any security not so registered . . .
19        any manipulative or deceptive device or contrivance in contravention of such rules
         and regulations as the Commission may prescribe as necessary or appropriate in
20        the public interest or for the protection of investors.

21 15 U.S.C. § 78j(b).  Rule 10b-5 makes it unlawful for any person to use interstate commerce

22        (a) To employ any device, scheme, or artifice to defraud,
         (b) To make any untrue statement of a material fact or to omit to state a material
23        fact necessary in order to make the statements made, in the light of the
         circumstances under which they were made, not misleading, or
24        (c) To engage in any act, practice, or course of business which operates or would
         operate as a fraud or deceit upon any person, in connection with the purchase or
25        sale of any security.

26 17 C.F.R. § 240.10b-5.  In cases involving publicly-traded securities and purchases or sales in

27 public securities markets, the elements of an action under Section 10(b) and Rule 10b-5 are:  (1)

28
                                                    13

a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale

of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Dura Pharmaceuticals, Inc.*

*v. Broudo*, 544 U.S. 336, 341-42 (2005).

Plaintiffs must meet two heightened pleading standards. Fed. R. Civ. P. 9(b) requires that

"the circumstances constituting fraud . . . be stated with particularity." The Ninth Circuit has

explained that a "plaintiff must include statements regarding the time, place, and nature of the

alleged fraudulent activities, and that mere conclusory allegations of fraud are insufficient." *In

re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). A plaintiff asserting fraud

"must set forth an explanation as to why the statement or omission complained of was false or

misleading." *Id.* (internal quotation marks omitted); *see also Yourish v. California Amplifier*,

191 F.3d 983, 992-93 (9th Cir. 1999). The Private Securities Litigation Reform Act ("PSLRA")

raises the pleading standard further:

> (1) Misleading statements and omissions
> In any private action arising under this chapter in which the plaintiff alleges that
> the defendant–
> (A) made an untrue statement of a material fact; or
> (B) omitted to state a material fact necessary in order to make the statements
> made, in the light of the circumstances in which they were made, not misleading;
> the complaint shall specify each statement alleged to have been misleading, the
> reason or reasons why the statement is misleading, and, if an allegation regarding
> the statement or omission is made on information and belief, the complaint shall
> state with particularity all facts on which that belief is formed.
>
> (2) Required state of mind
> In any private action arising under this chapter in which the plaintiff may recover
> money damages only on proof that the defendant acted with a particular state of
> mind, the complaint shall, with respect to each act or omission alleged to violate
> this chapter, state with particularity facts giving rise to a strong inference that the
> defendant acted with the required state of mind.

15 U.S.C. § 78u-4b(1)-(2).

### i.   Compensation Committee Members

"[T]he pleading standard [that applies to a motion to dismiss] does not reach so high a bar

as Rule 23.1." *Ryan*, 918 A.2d at 357. Accordingly, courts have held that where a plaintiff has

alleged facts sufficient to prove demand futility they have also satisfied the burden under Rule

12(b)(6). *Id.* ("[W]here plaintiff alleges particularized facts sufficient to prove demand futility . .

14

1    . that plaintiff *a fortiori* rebuts the business judgment rule for the purpose of surviving a motion

2    to dismiss pursuant to Rule 12(b)(6).").  For the reasons set forth above, the Court concludes that

3    Plaintiffs sufficiently have alleged demand futility with respect to the members of the

4    Compensation Committee named in this claim.  Plaintiffs base their claim against the

5    Compensation Committee on specific statements, and Plaintiffs have identified the time and

6    place of the alleged violations.

7                      **ii.**    **George and Gust Perlegos**

8         Plaintiffs allege that George Perlegos established a policy of backdating at Atmel and also

9    that he attended all of the Compensation Committee meetings between 1994 and 2003, at which

10   stock options were granted and that he participated in the backdating of those options**.**  Plaintiffs

11   also allege that Atmel has admitted in its own press release that George Perlegos "was aware of,

12   and often directed, the backdating of stock option grants."  According to the complaint,

13   "evidence [of backdating] included handwritten notations from George Perlegos expressly

14   directing stock administration employees to use prior Board meeting dates for many employees'

15   stock option grants."  Amended Complaint ¶ 198.  These allegations meet the requirements of

16   Rule 9(b) and the PSLRA.

17         Plaintiffs base their claim that Gust Perlegos participated in the alleged backdating

18   scheme on the allegation that, as VP of Atmel with "broad knowledge" of the company, as well

19   as and a recipient of backdated stock options, he must have known of the scheme and permitted it

20   to occur.  *See* Amended Complaint ¶¶ 138, 150.  These allegations are insufficient to establish

21   that Gust Perlegos knowingly received backdated options or that he played an active role in the

22   alleged scheme.  Accordingly, the Section 10(b) claim against Gust Perlegos will be dismissed

23   with leave to amend.

24                   **iii.**    **Ross**

25         Plaintiffs base many of their allegations against Ross on Atmel's press release dated April

26   30, 2007, which stated that Ross "handled communications with the Board of Directors regarding

27   stock options and, during certain periods, supervised Atmel's stock administration department,"

28

Case No. C 06-4592 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FOR (1) FAILURE TO STATE
A CLAIM UPON WHICH RELIEF MAY BE GRANTED; AND (2) FAILURE TO COMPLY WITH FED. R. CIV.
PRO. 23.1
(JFLC1)(JFEX2)

1   Amended Complaint ¶¶ 17-18, and also concluded that Ross was aware of and participated in

2   the backdating scheme and actually "directed stock administration employees to issue backdated

3   stock option grants to employees and directed or permitted other actions to be taken contrary to

4   the terms of Atmel's stock option plans." *Id*. at ¶¶ 21-22.  According to the Amended

5   Complaint, the Audit Committee also found that Ross was well aware that the practice of

6   backdating was a violation of the option plans and that the grant date should be set at the date of

7   board approval.  The Audit Committee concluded that "the evidence indicated that Mike Ross

8   lacked management integrity with respect to the stock option process." *Id*. at ¶ 55.  Based on

9   these statements and on Ross's position as general counsel at Atmel, Plaintiffs claim that Ross

10  was aware of, and in several instances knowingly approved and participated in, the backdating of

11  stock option grants.  They further allege that he was involved in the dissemination of false and

12  misleading financial statements.

13      While the basis of a Rule 10b-5 claim typically is either a false statement or material

14  omission, 17 C.F.R § 240.10b-5(b), the United States Supreme Court recently held that "conduct

15  itself can be deceptive."  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761,

16  769(2008).  Plaintiffs allege that Ross exhibited deceptive conduct.  Plaintiffs allege that Ross

17  not only knew that the Board was falsifying the grant date of stock options in contravention of

18  the company's shareholder-approved stock option plans but also personally directed the

19  backdating in many instances, although this scheme had the purpose and effect of defrauding

20  Atmel and its shareholders.

21      The requisite state of mind for a section 10(b) claim is one of "deliberate recklessness."

22  *In re Silicon Graphics, Inc. Sec. Litigation*, 183 F.3d 970, 975 (9th Cir. 1999).  Recklessness

23  satisfies the scienter requirement under section 10(b) if it reflects some degree of intentional or

24  conscious misconduct.  *Id*. at 977.  Plaintiffs have alleged sufficiently that Ross acted with

25  scienter.  The Amended Complaint alleges that Ross assisted in the backdating scheme by

26  directing the widespread and intentional backdating of stock option grants, colluding with other

27  defendants to carry out a policy of backdating options, and receiving backdated options.  The

28

16

Amended Complaint also alleges that in order to conceal this misconduct, Ross caused Atmel to disseminate false financial statements and false proxy statements.

### b.      Claim Three: Violation of Section 20(a)

Section 20(a) provides that:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).  "To establish 'controlling person' liability, the plaintiff must show that a primary violation was committed and that the defendant 'directly or indirectly' controlled the violator."  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996). As discussed above, Plaintiffs adequately have pled a claim for primary violation of the securities laws against George Perlegos, Chellam, Hall, Thomas, Fougere and Kim.

Relying on PSLRA cases, Plaintiffs argue that to establish liability under Section 20(a) for exercising "control" over a primary violator they need only allege that each defendant had the status of control person.  Post-PSLRA cases are clear that simply alleging a defendant's position within the company is insufficient.  *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 99-00109, 2000 WL 1727405 at *16 (N.D. Cal. Sept.  29, 2000) ("The mere fact that an individual is a director of a firm is not sufficient to show he is a control person of the firm.").  Under the PSLRA, plaintiffs are required to "plead the circumstances of the control relationship with particularity."  *Id.* at * 15.  Because Plaintiffs have not met this pleading standard the third claim will be dismissed with leave to amend.

### c.      Claim Four: Breach of Fiduciary Duty and/or Aiding and Abetting

Plaintiffs allege that the Individual Defendants have breached their fiduciary duties by: (1) colluding with each other to backdate stock options; (2) colluding with each other to violate GAAP and section 162(m); (3) colluding with each other to produce and disseminate false financial statements to Atmel shareholders and the market that improperly recorded and

17

1  accounted for backdated options grants and concealed the improper backdating of stock options;

2  and (4) colluding with each other to file false proxy statements, false financial statements, and

3  false Form 4's in order to conceal the improper backdating of stock options.  Because Plaintiffs'

4  claim sounds in fraud, it must be alleged with particularity pursuant to Fed. R. Civ. Pro. 9(b).  *In*

5  *re Ditech Networks, Inc. Deriv. Litig.*, No. C 06-5157 JF, at 17 (N.D. Cal. July 16, 2007); *see*

6  *also In re Atmel Corp.*, 2007 WL 2070299, at *9; *Perretta v. Prometheus Development Co., Inc.*,

7  No. C05-02987 WHA, 2005 WL 3445627, at *5 (N.D. Cal. Dec. 15, 2005) (applying Rule 9(b)

8  to breach of fiduciary duty claim because "all of plaintiffs' claims sound in fraud").  Under

9  Delaware law, "[t]he elements of a breach of fiduciary duty that must be proven by a

10  preponderance of evidence by the plaintiff are: (I) that a fiduciary duty exists; and (ii) that a

11  fiduciary breached that duty."  *Heller v. Kiernam*, No. 1483, 2002 Del. Ch. LEXIS 17, at *9 (Del.

12  Ch. Feb. 27, 2002).

13  Plaintiffs assert that they are not required to meet the heightened pleading standard of

14  Rule 9(b).  Relying on cases such as *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity*

15  *Fraud*, 624 A.2d 1199, 1207 (Del. 1993), Plaintiffs contend that a claim for breach of fiduciary

16  duty that is pled "along side" a fraud claim need only meet the requirements of Rule 8.  Here,

17  however, the facts of Plaintiffs' claim for breach of fiduciary duty do sound in fraud.  *See Zoran*,

18  2007 U.S. Dist. LEXIS 43402 at *74-75 ("Backdating is a form of fraud.").  Accordingly, the

19  claim must be pled to satisfy 9(b) which requires that Plaintiffs plead the "who what when and

20  how" of the fraudulent conduct.

21              **i.      George and Gust Perlegos and Members of the Compensation**

22                       **Committee**

23  Again relying on *Desimone*, Defendants argue that Plaintiffs have not met the pleading

24  requirement because Plaintiffs have not alleged adequately that Defendants knew that the options

25  violated Atmel's stock option plans.  For the reasons already set forth in its discussion of demand

26  futility, the Court concludes that *Desimone* is not controlling here.  Accordingly, the claim for

27  breach of fiduciary duty asserted against George Perlegos, Gust Perlegos, Chellam, Hall,

28

Case No. C 06-4592 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FOR (1) FAILURE TO STATE
A CLAIM UPON WHICH RELIEF MAY BE GRANTED; AND (2) FAILURE TO COMPLY WITH FED. R. CIV.
PRO. 23.1
(JFLC1)(JFEX2)

1   Thomas, Fougere and Kim will not be dismissed.

2      **ii.** **Ross**

3     The parties do not dispute that as General Counsel and Assistant Secretary of Atmel,

4   Ross owed its shareholders a fiduciary duty.  Plaintiffs allege that Ross breached his duty of

5   loyalty to the company by knowingly approving of and participating in the backdating of several

6   grant options to insiders, including himself, and by approving of and participating in the

7   dissemination of false financial statements.  Under Delaware law, allegations that suggest

8   knowledge of backdating by an officer defendant who "also kept silent and concealed his

9   knowledge in order to escape detection" constitute a "deception [which] is disloyal conduct in

10  breach of his duty as a fiduciary." *Ryan v. Gifford*, 935 A.2d 258, 272 (Del. Ch. 2007).  Here,

11  Ross is alleged to have done more than merely keep silent: he allegedly approved of and

12  participated in the backdating and assisted in causing the dissemination of false financial

13  statements.  Plaintiffs allege that Ross intended to and did unduly benefit Defendants at the

14  expense of Atmel.  As the *Ryan* court held: "[t]he intentional violation of a shareholder approved

15  stock option plan, coupled with fraudulent disclosures regarding the directors' purported

16  compliance with that plan, constitute conduct that is disloyal to the corporation and is therefore

17  an act in bad faith." *Ryan v. Gifford*, 918 A.2d 341, 358 (Del. Ch. 2007).

18    **d.** **Claim Five: Unjust Enrichment**

19    "The elements of a claim for unjust enrichment are: (1) an enrichment, (2) an

20  impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence

21  of justification, and (5) the absence of a remedy provided by law." *Zoran Corp. Derivative*

22  *Litig.*, 511 F. Supp. 2d 986, 1018 (N.D. Cal. 2007).  None of the moving Defendants asserts that

23  these requirement have not been met.  Instead, Defendants argue that Plaintiffs cannot plead an

24  unjust enrichment claim simply by asserting that individuals received backdated options; they

25  must also plead, with specific supporting facts, that the recipients *knew* that they were not

26  entitled to the options exercise price they received.  However, Defendants cite no authority for

27

28            19

1    this argument.[5]

2         **e.    Claim Six: Constructive Fraud**

3         In its order dated July 16, 2007, the Court instructed Plaintiffs to restate their constructive

4    fraud claim as a claim for breach of fiduciary duty.  Plaintiffs have ignored this portion of the

5    Court's order.  For the reasons set forth in the Court's previous order, Plaintiffs' sixth claim for

6    constructive fraud will be dismissed without leave to amend.

7         **f.    Claim Seven: Corporate Waste**

8         "The judicial standard for determination of corporate waste is well developed.  Roughly,

9    a waste entails an exchange of corporate assets for consideration so disproportionately small as to

10   lie beyond the range at which any reasonable person might be willing to trade . . . .  Such a

11   transfer is in effect a gift."  *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. Ct. 1997).  A

12   plaintiff must allege facts that, if true, establish that the defendant directors "authorized an

13   exchange that is so one sided that no business person of ordinary, sound judgment could

14   conclude that the corporation has received adequate consideration."  *Glazer v. Zapata Corp.*, Del.

15   Ch. 658 A.2d 176, 183 (1993).

16             **i.    Director Defendants**

17        Plaintiffs have alleged sufficiently that the directors and officers of Atmel – George

18   Perlegos, Gust Perlegos, Chellam, Ross, Hall, Thomas, Fougere, and Kim – authorized a one-

19   sided exchange.  The Amended Complaint contains allegations of conduct that inured to the

20   benefit of few and the detriment of many.  Morever, Plaintiffs allege that certain directors and

21   officers were unjustly enriched in the form of unjustified salaries, benefits, bonuses, stock option

22   grants, and other emoluments of office.   These enrichments came at the expense of Atmel, which

23   rather than receiving any benefit from these payments suffered damages as a result.  The

24   Amended Complaint thus states a claim for corporate waste.

25

26        [5] Defendants cite an unpublished New York opinion, *In re Comverse Tech., Inc.*, No.
27   601272/06 (N.Y. Aug. 14, 2007), as well as *Vredenburgh v. Jones*, 349 A.2d 22, 44 (Del. Ch.
     1975).  Neither of these cases involves a claim for unjust enrichment.

28
                                                    20

1

### ii.    Option Recipient Defendants

2      While Plaintiffs have alleged that the option recipients – Gust Perlegos, Wu, Chellam,

3  Peckham, Colvin, Sisois, Katz, Barton, Turner, Pruiaux, and Schumann – received the benefits of

4  the one-sided exchange, they fail to cite any authority that as mere recipients these Defendants

5  are liable for corporate waste.  Accordingly, the claim against the option recipients will be

6  dismissed with leave to amend.

7

### g.    Claim Eight: Breach of Contact

8      "In order to successfully plead a breach of contract, . . . the aggrieved party must allege

9  the making of the contract, the obligation thereby assumed, and the breach."  *Goodrich v. E.F.*

10  *Hutton Group, Inc.*, 542 A.2d 1200, 1203-04 (Del. Ch. 1988).  "Merely pleading that a breach of

11  contract occurred, without alleging the existence of a contract, is not sufficient to state a valid

12  claim."  *Id*. at 1204.

13      Plaintiffs have alleged that when Defendants Gust Perlegos, Wu, Chellam, Peckham,

14  Colvin, Sisois, Katz, Barton, Turner, Pruniaux and Schumann received backdated stock opinions

15  these Defendants entered into invalid contracts with Atmel.  Plaintiffs also state that because the

16  options were backdated, they contained incorrect grant dates and improper exercise prices, which

17  violated the terms of the Plans.  These allegations are sufficient to state a claim for breach of

18  contract.

19

### h.    Claim Nine: Violation of California Corporation Code Section 25402

20      The Court held previously that Plaintiffs' insider trading claim lacked the particularity

21  required under Rule 9(b).  To state a valid claim, Plaintiffs are required to "explain which true

22  adverse facts each of the selling defendants knew, when each knew those facts, how they

23  acquired the knowledge, or which sales were made when defendants were in possession of the

24  information."  *In re Verisign*, No, 06-4165, 2007 WL 2705221 at *45 (N.D. Cal. Sept 14, 2007).

25  Plaintiffs have not amended their insider trading claim to address this deficiency.

26      Additionally, California Corporations Code section 25402 contains a five-year statute of

27  limitations, and the Court concluded previously that no insider trading claim may be asserted

28

Case No. C 06-4592 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FOR (1) FAILURE TO STATE
A CLAIM UPON WHICH RELIEF MAY BE GRANTED; AND (2) FAILURE TO COMPLY WITH FED. R. CIV.
PRO. 23.1
(JFLC1)(JFEX2)

under this provision for trades made prior to July 27, 2001.  Three of the individuals against whom this claim is asserted are Chellam, Hall and Thomas.  The latest that any of these Defendants is alleged to have held stock is August 31, 2000, more than six years prior to the filing of Plaintiffs' complaint.  Amended Complaint ¶¶ 346-47, 350.  Accordingly, the insider trading claims will be dismissed as to these Defendants without leave to amend.  The insider trading claim against George and Gust Perlegos will be dismissed with leave to amend.

### i.    Statute of Limitations

In its order dated July 16, 2007, the Court explained that Plaintiffs' § 10(b), and 20(a) claims were subject to a two year/five year period of repose and their § 14(a) claim was subject to a one year/three year scheme.  The Court instructed Plaintiffs to omit from any Amended Complaint allegations that were time barred.  Plaintiffs did not make such omissions.  On its own motion, the Court will strike those portions of Plaintiffs' § 10(b) and § 20(a) claims based on options granted or Form 10-Ks issued before July 21, 2001, and those portions of Plaintiffs' § 14(a) claims based on proxy statements other than the March 30, 2004 statement.

## IV. ORDER

For the reasons stated above, IT IS HEREBY ORDERED that the motion to dismiss for failure to make demand is DENIED.  The motions to dismiss for failure to state a claim are GRANTED in part and DENIED in part as set forth above.  Any amended complaint must be filed within thirty (30) days of the date of this order.

DATED: June 25, 2008

_____
JEREMY FOGEL
United States District Judge

Case No. C 06-4592 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FOR (1) FAILURE TO STATE
A CLAIM UPON WHICH RELIEF MAY BE GRANTED; AND (2) FAILURE TO COMPLY WITH FED. R. CIV.
PRO. 23.1
(JFLC1)(JFEX2)

1   This Order has been served upon the following persons:

2

3   Alan R Plutzik   aplutzik@bramsonplutzik.com

4   Betsy Carol Mnifold   manifold@whafh.com

5   Emanuel Schachmurove   mshachmurove@sbtklaw.com

6   Eric L. Zagar   ezagar@sbtklaw.com

7   Francis M. Gregorek   gregorek@whafh.com

8   Kathryn Anne Schofield       kschofield@bramsonplutzik.com

9   Lawrence Timothy Fisher       ltfisher@bramsonplutzik.com

10  Marisa C. Livesay   livesay@whafh.com

11  Nichole T. Browning   nbrowning@stklaw.com

12  Rachele R. Rickert   rickert@whafh.com

13  Tara Puhua Kao   tkao@sbtklaw.com

14  Jessica oren Nall   jnall@fbm.com

15  John L. Cooper   jcooper@fbm.com

16  Brian Lawrence levine       Blevine@mofo.com

17  Darryl Paul Rains   drains@mofo.com

18  Todd L. Burlingame   burlingame@mofo.com

19  James Lawrence Pagano       paganolaw@aol.com

20  Erin l. Bansal   ebansal@orrick.com

21  Karen Julie Stambaugh       kstambaugh@orrick.com

22  Michael David Torpey       mtorpey@orrick.com

23  W. Reece Bader   wrbader@orrick.com

24

25

26

27

28

Case No. C 06-4592 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FOR (1) FAILURE TO STATE
A CLAIM UPON WHICH RELIEF MAY BE GRANTED; AND (2) FAILURE TO COMPLY WITH FED. R. CIV.
PRO. 23.1
(JFLC1)(JFEX2)