NICHOLE BROWNING (251937)
nbrowning@btkmc.com
BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
580 California Street, Suite 1750
San Francisco, CA 94104
Telephone: 415/400-3000
Facsimile: 415/400-3001

FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239 4599
Facsimile: 619/234 4599

*Co-Lead Counsel for Federal Plaintiffs*

(Additional counsel listed on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ATMEL CORPORATION DERIVATIVE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Master File No. 06-4592 JF (HRL)<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE: December 18, 2009<br>TIME: 9:00 a.m.<br>COURTROOM: 3<br>JUDGE: Hon. Jeremy Fogel |

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT……………………………………………………… ……….1

II. INTRODUCTION AND BACKGROUND OF THE ACTIONS………………………………..1

    A. The Federal Action ..................................................................................................2

    B. State Actions............................................................................................................4

    C. Audit Committee Investigation and Findings...........................................................5

    D. Discovery in Federal Action.....................................................................................5

    E. Settlement Discussions ............................................................................................5

III. THE SETTLEMENT TERMS………………………………………………………………..6

IV. THE PROCEDURE FOR PRELIMINARY APPROVAL OF A DERIVATIVE ACTION IN FEDERAL COURT IS WELL ESTABLISHED…………………………………………….. 10

V. THE STANDARDS FOR JUDICIAL APPROVAL OF DERIVATIVE SETTLEMENTS…...11

    A. The Law Favors Settlement...................................................................................11

    B. The Role of the Court in Approval of a Derivative Settlement...............................11

VI. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND FINALLY APPROVED AFTER NOTICE TO ATMEL SHAREHOLDERS………………………...……12

VII. PROPOSED SCHEDULE OF EVENTS…………………………………………..………13

VIII. CONCLUSION ………………………………………………………………………...…14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................................................. 13

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ............................................................................................. 12

*In re NVIDIA Corp. Derivative Litig.*,
   No. C 06-6110-SBA (JCS), slip op. (N.D. Cal. Dec. 22, 2008) ........................................... 13

*In re Warner Comm'ns Sec. Litig.*,
   798 F.2d 35 (2d Cir. 1986) ................................................................................................... 12

*M. Berenson Co, Inc. v. Faneuil Hall Marketplace, Inc.*,
   671 F. Supp. 819 (D. Mass. 1987) ....................................................................................... 12

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ............................................................................................... 12

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ............................................................................................. 12

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co., Inc.*,
   797 F.2d 799 (9th Cir. 1986) ............................................................................................... 12

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ......................................................................................... 12, 13

*Torrisi v. Tuscon Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................................................. 12

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910) ............................................................................................................. 12

*Zimmerman v. Bell*,
   800 F.2d 386 (4th Cir. 1986) ............................................................................................... 12

**STATUTES**

Fed. R. Civ. P. 23.1 ...................................................................................................................... 5

Fed. R. Civ. P. 26(a)(1) ............................................................................................................ 6, 8

Fed. R. Civ. P. 26(f) ..................................................................................................................... 6

TO:   ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 18, 2009 at 9:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Jeremy Fogel, United States District Court for the Northern District of California, Courtroom 3, Fifth Floor, 280 South First Street, San Jose, California, James Juengling, Kenneth Kelley, Anthony Noble, Patrick McWeeny and Randel Smith ("Federal Plaintiffs") will move for an order granting preliminary approval of the settlement set forth in the Settlement Agreement dated December 9, 2009 ("Agreement"),[1] and filed contemporaneously herewith.

Federal Plaintiffs request preliminary approval of the proposed settlement (the "Settlement") of the derivative claims brought on behalf of Atmel Corporation ("Atmel" or the "Company") against Defendants.[2] The derivative claims arise out of the Company's stock option granting practices from 1994 to 2003. The terms of the Settlement are set forth in the Agreement, submitted herewith. The Settlement resolves the vast majority of the derivative claims pending in this Court as well as several other actions pending in California State Court and Delaware Court.

Federal Plaintiffs' motion is based on the attached Memorandum of Points and Authorities in support of Motion for Preliminary Approval of Derivative Settlement, the Agreement, and such additional evidence or argument as may be required by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. PRELIMINARY STATEMENT**

The Settlement is the result of extensive arm's-length negotiations between the Settling Parties with the substantial assistance of the Honorable Layn R. Phillips (Ret.), a highly respected mediator with extensive experience in the mediation of complex actions. As a result of the settlement of the Actions, Atmel shall receive a financial benefit of $9,650,000 in cash. *See* Agreement, ¶¶5.1-5.2. In addition, as a result of the pendency, prosecution and settlement of the Actions, Atmel has adopted or will adopt significant corporate governance reforms related to the

---

[1] All capitalized terms not herein defined shall have the same meanings as set forth in the Agreement.

[2] Pursuant to the Agreement, Defendant James Michael Ross is not a Settling Defendant. *See* Agreement, ¶¶1.16, 1.26.

Company's equity granting practices, which directly address Plaintiffs' allegations relating to Atmel's stock option granting practices and are designed to preclude the recurrence of the wrongdoing alleged in the Actions. *Id.* ¶5.3. The corporate governance reforms under the Settlement also provide for greater independence of Atmel's Board of Directors (the "Board") and other measures to increase the effectiveness of the Board. *Id.*

The corporate governance changes coupled with the significant financial benefits resulting from the Settlement of the Actions confer substantial benefits upon Atmel and its shareholders. In determining whether preliminary approval is warranted, the issue before the Court is whether the proposed Settlement is within a range of what might be found to be fair, reasonable, and adequate, such that notice of the proposed Settlement should be provided to Atmel shareholders and that a hearing be scheduled for final settlement approval. There is no question that the Settlement is a very favorable resolution for Atmel and its shareholders in a case of considerable complexity, and that it is eminently fair, reasonable, and adequate. Accordingly, Plaintiffs ask the Court to enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), (a) granting preliminary approval of the Settlement, (b) directing that notice be given to Atmel shareholders, and (c) scheduling a hearing at which the Court will consider final approval of the Settlement.

## II. INTRODUCTION AND BACKGROUND OF THE ACTIONS

### A. The Federal Action

In July and August 2006, Federal Plaintiffs James Juengling, Kenneth Kelley, and Anthony A. Noble filed shareholder derivative complaints on behalf of Atmel in Federal Court. These actions were captioned *Juengling v. Perlegos, et al.*, Case No. 06-cv-4592-JF (filed July 27, 2006); *Kelley v. Perlegos, et al.*, Case No. 06-cv-4680-RS (filed August 3, 2006); and *Noble v. Perlegos, et al.*, Case No. 06-cv-4973-MJJ (filed August 17, 2006). On October 4, 2006, these actions were consolidated under the caption *In re Atmel Corp. Derivative Litig.*, Master File No. CV 06-4592-JF. [Dkt. No. 23]. Federal Plaintiffs were appointed Lead Plaintiffs, and Barroway Topaz Kessler Meltzer & Check, LLP and Wolf Haldenstein Adler Freeman & Herz LLP were appointed Co-lead Plaintiffs' Counsel in the Federal Action.

Pursuant to the consolidation order, on November 3, 2006, Federal Plaintiffs filed their Verified Consolidated Shareholder Derivative Complaint (the "Consolidated Complaint") against Defendants Gust Perlegos, Tsung-Ching Wu ("Wu"), Kris Chellam ("Chellam"), Jack Peckham ("Peckham"), Donald Colvin ("Colvin"), Mike N. Sisois ("Sisois"), B. Jeffrey Katz ("Katz"), Francis Barton ("Barton"), Graham Turner ("Turner"), Bernard Pruniaux ("Pruniaux"), Steven Schumann ("Schumann"), George Perlegos, T. Peter Thomas ("Thomas"), Chaiho Kim ("Kim"), Pierre Fougere ("Fougere"), Norman T. Hall ("Hall"), David Sugishita ("Sugishita") and Steven A. Laub ("Laub"). [Dkt. No. 24]. On January 29, 2007, the aforementioned Defendants filed various motions to dismiss the Consolidated Complaint. [Dkt. Nos. 52-57].[3] Plaintiffs filed their opposition to the motions to dismiss on February 28, 2007. [Dkt. Nos. 63-65]. Oral argument was held on April 27, 2007. [Dkt. No. 78]. On July 16, 2007, the Federal Court granted Defendants' motions to dismiss the Consolidated Complaint for failure to state a claim and provided Federal Plaintiffs with leave to amend the Consolidated Complaint. [Dkt. No. 83].

On August 21, 2007, Federal Plaintiffs added Plaintiff Randel Smith as a Federal Plaintiff and filed the Verified Amended Consolidated Shareholder Derivative Complaint (the "Amended Complaint") against the previously named Defendants and added James Michael Ross as a Defendant. [Dkt. No. 86]. On September 28, 2007, Defendants filed separate motions to dismiss the Amended Complaint, and Atmel filed a motion to dismiss the Amended Complaint for failure to make a demand. [Dkt. Nos. 92-106]. Federal Plaintiffs opposed Defendants' motions on October 26, 2007. [Dkt. Nos. 112-115]. These motions to dismiss were fully briefed by the parties, and oral argument was heard before the Federal Court on February 29, 2008. [Dkt. No. 149].[4]

---

[3] Defendant Sisois filed his motion to dismiss on January 30, 2007. [Dkt. Nos. 58-60].

[4] On February 20, 2008, Federal Plaintiff Patrick McWeeny filed an identical complaint to the Amended Complaint in Federal Court, entitled *McWeeny v. Perlegos*, Case No. 08-1031 (the "McWeeny Action"). On March 3, 2008, the Court entered an order consolidating the McWeeny Action for all purposes as part of the Federal Action. [Dkt. No. 150]. On June 9, 2008, Atmel and certain individual defendants filed a motion to dismiss the McWeeny Action. On July 2, 2008, the Federal Plaintiffs Defendants' motion. [Dkt. Nos. 166-168]. The motion was taken off calendar by Defendants before any decision by the Federal Court.

On June 25, 2008, the Federal Court denied Atmel's motion to dismiss the Amended Complaint for failure to comply with Fed. R. Civ. P. 23.1. [Dkt. No. 161]. The Federal Court also denied in part Defendants Barton, Turner, Laub, Chellam, Peckham, George Perlegos, Gust Perlegos, Colvin, Katz, Thomas, Kim, Sugushita, Fougere, Hall, Pruniaux, Schumann, Sisois, and Wu's (collectively, the "Individual Defendants") motions to dismiss the Amended Complaint for failure to state a claim. *Id.*

On August 14, 2008, Defendant James Michael Ross answered the Amended Complaint. [Dkt. No. 171]. On January 20, 2009, Atmel and the Individual Defendants filed Answers to the Amended Complaint and Defendant James Michael Ross filed an Amended Answer. [Dkt. Nos. 189, 190, 193-196].

**B.     State Actions**

On July 26, 2006, plaintiff Mark J. Perlmutter filed his complaint in California State Court captioned *Perlmutter v. Perlegos, et al.*, Case No. 1-06-CV-068049. Shortly thereafter, plaintiff Govind Basnet ("Basnet") filed a substantially similar action in California State Court. Subsequently, the California State Court consolidated these cases under the caption *In re Atmel Corp. Derivative Litig.*, Lead Case No. 1-03-CV-814882. On July 2, 2007, the California Derivative Action was stayed pending the resolution of the Federal Action.

On October 9, 2007, after making a formal request under Cal. Corp. Code § 1601 to inspect the Company's books and records, plaintiff Marilyn A. Poulos filed the California Books and Records Demand, which is based on allegations substantially similar to those in the Federal Action and California Derivative Action. It was deemed related to the California Derivative Action.

On May 21, 2008, plaintiff Basnet filed a request to dismiss the California Derivative Action. On February 27, 2009, after making a litigation demand on the Company, plaintiff Basnet filed the Delaware Derivative Action.

After making a formal request under Section 220 of the Delaware General Corporation Law to inspect the Company's books and records, plaintiffs James and Jane Golden filed the Delaware Books and Records Demand on February 5, 2009.

### C.     Audit Committee Investigation and Findings

On July 25, 2006, Atmel announced that the Audit Committee had initiated an internal investigation regarding the timing of Atmel stock option grants, which covered stock options granted between March 19, 1991, and August 3, 2006. On October 30, 2006, Atmel issued a press release reporting the Audit Committee's preliminary conclusion and disclosing that "the actual measurement dates for certain stock options differed from the recorded measurement dates for such stock options." Then, on April 30, 2007, Atmel reported the findings of the Audit Committee that "93 of the 112 stock option grants during the period January 1, 1997 through August 3, 2006 included some options that were not issued on the date set forth in the company's stock option records." As a result, in June 2007, Atmel restated its financial statements for the periods between 1993 and 2005 by approximately $116 million.

### D.     Discovery in Federal Action

On January 13, 2009, the parties conducted a Fed. R. Civ. P. 26(f) conference, and a discovery plan was discussed. On February 13, 2009, the parties exchanged their initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1). On March 13, 2009, the Court modified and entered a Stipulated Protective Order. [Dkt. No. 199]. Thereafter, on March 16, 2009, September 22, 2009, October 22 and 27, 2009, November 5, 20 and 30, 2009, and December 3, 2009, Atmel produced documents and a privilege log responding to discovery requests propounded by the Federal Plaintiffs and Non-Settling Defendant James Michael Ross. To date, Atmel has produced over 190,000 pages in discovery which Plaintiffs have reviewed as part of an analysis of their claims. Plaintiffs also propounded discovery to the Individual Defendants but have extended the Individual Defendants' response to said discovery pending the Court's consideration of the proposed settlement of the Federal Action.

### E.     Settlement Discussions

Starting in September 2008, the parties began engaging in settlement discussions. On September 22, 2008, Atmel provided Federal Plaintiffs with non-public documents in anticipation of the October 24, 2008 mediation. On September 23, 2008 and on October 7, 2008, after

reviewing these documents, Federal Plaintiffs' Counsel sent letters to counsel for Atmel demanding certain monetary relief and corporate governance reforms.

Over the next few months, the parties continued to engage in extensive arm's-length settlement discussions where all of the issues were thoroughly discussed in a frank exchange of views on the merits of the claims and defenses thereto. Plaintiffs' Counsel conferred with counsel for Defendants on multiple occasions to discuss monetary relief and corporate governance remedies.

On October 24, 2008 and November 18, 2008, the Parties participated in two all-day, in-person mediations with the Honorable Layn R. Phillips (Ret.). After the mediations, the Parties continued to engage in discussions and negotiations regarding the terms of the Settlement, with the substantial assistance of mediator Phillips. On April 6, 2009, the Parties participated in a third all-day, in-person mediation and continued negotiations after the third mediation. Defendants produced a number of documents to Plaintiffs' Counsel, and the parties conferred on multiple occasions to discuss a proposed settlement.

However, in June 2009, the Parties reached an impasse. As such, the Parties continued to proceed with discovery. *See* § D, *supra*. In October through December 2009, the Settling Parties met and conferred in an effort to bridge their differences and come to a resolution of the Actions. They discussed and negotiated the material terms of a possible settlement. As a result of these lengthy, arm's-length settlement discussions, the Settling Parties have agreed to settle the Actions subject to the conditions set forth in the Agreement.

**III. THE SETTLEMENT TERMS**

After extensive negotiations among counsel for the Settling Parties, with the substantial assistance of mediator Phillips, the Settling Parties have agreed to a settlement that provides significant corporate governance measures that directly address the option backdating allegations raised in the Actions and are designed to ensure that such conduct does not happen again. In addition, the Settlement provides for a cash payment in the aggregate amount of $9.65 million to the Company. *See* Agreement, ¶¶5.1-5.2. The Settling Parties all agree that the financial benefits

and the corporate governance measures set forth below and in the Agreement confer substantial benefits on Atmel and its shareholders. *Id.* ¶5.2.

More specifically, the Board shall adopt resolutions and amend committee charters to ensure adoption of the following Corporate Governance Reforms within thirty (30) days after the Effective Date of the Settlement and shall maintain them for a period of no less than three (3) years after the Effective Date of the Settlement:

**Provisions Relating to Stock Options**

a. Pursuant to Atmel's Stock Option, RSU, and Performance Share Granting Policy ("Stock Option Policy") all stock options (including new hire and promotion grants) shall be priced as of the fifteenth day of the month on or after the approval date, or the next trading day if the market is not open on the fifteenth day of the month (for example, options with an approval date between March 16 and April 15 would have a pricing date of April 15).

b. With the exception of CEO-approved grants, discussed immediately below, (i) the board of directors, or the compensation committee of the board, shall approve all option grants and determine the grantees, amounts, dates, and prices of all stock options, and (ii) no additions or changes to the grantees, amounts, dates, or prices shall be made after a grant is approved without securing the prior approval of the board of directors or compensation committee of the board.

c. Atmel's CEO may award grants for new hires and promotions at the director level or below (excluding refresh grants) provided that these grants meet the following requirements: (a) they must be approved in advance by the Vice President of Human Resources or his or her delegate and the employee's manager; (b) they must be approved (before or after) by the Chief Legal Officer ("CLO"), or his or her delegate; (c) no more than 100,000 options may be awarded to a single individual in a single grant, and no more than 150,000 options may be awarded to any one individual in any twelve-month period; (d) grants must be consistent with the Stock Option Policy then in effect; and (e) copies of the CEO's written approvals must be provided to the compensation committee of the board of directors on at least an annual basis.

d. The compensation committee of the board of directors shall be comprised of independent directors who must meet NASDAQ's independence requirements, the non-employee

director definition of Rule 16b-3 of the Securities Exchange Act of 1934, and the outside director definition of section 162(m) of the Internal Revenue Code of 1986.

  e. The CLO or his or her delegate shall attend any and all meetings of the board of directors or its compensation committee at which options are granted and shall make reasonable efforts to prepare minutes of any such meeting within thirty days of the date of the meeting, absent extenuating circumstances.

  f. Any options granted by unanimous written consent shall (i) expressly state the identity of each option recipient and the number of options granted to each recipient; (ii) show the name and date of approval of each director; and (iii) state the method of transmission by which each director communicated his or her written consent.

  g. Awards granted as "performance based compensation" within the meaning of section 162(m) of the tax code shall be administered by a committee of two or more independent directors.

  h. Atmel's stock option plan provides that, with the exception of options granted pursuant to a merger or other corporate transaction, the exercise prices of all stock options shall be at least 100% of the closing price of the Company's stock on the date of grant.

  i. Atmel's Stock Option Policy shall comply with applicable legal requirements.

  j. Atmel shall account properly for all stock options granted under its Stock Option Policy and create appropriate documentation of the proper accounting for those options. Atmel will retain board committee minutes and unanimous written consents in which stock option grants are approved (including lists of the approved grants) for four years.

  k. Atmel shall regularly monitor the option process and its compliance with the Stock Option Policy using the following monitoring mechanisms: (1) Atmel shall hold regular meetings among its stock administrator, outside counsel, and a representative of the legal department, at which questions relating to options shall be addressed; (2) Atmel shall have a Stock Administration Oversight Committee comprised of members of its finance, legal, and HR teams, and outside counsel, which will hold regular meetings to review Atmel's stock administration policies and

procedures; and (3) Atmel's corporate controller or principal accounting officer shall periodically review Atmel's stock option grants.

l.   At least annually, the audit committee of the board of directors shall meet with Atmel's internal auditors and/or independent auditors to review and approve the Company's accounting for stock-based compensation, and to consider any concerns raised by such auditors regarding the Company's internal controls pertaining to stock-based compensation.

**Provisions Relating to Corporate Governance**

m.   Two-thirds (2/3) of Atmel's directors shall be independent directors. If a board member resigns or is removed from the board, the percentage of independent directors may fall below two-thirds until a replacement has been found or the size of the board has been reduced.

n.   The Corporate Governance and Nominating Committee shall certify, by resolution, that each of the independent directors is independent. Each independent director shall notify the Corporate Governance and Nominating Committee if his or her status as an independent director has changed.

o.   In the event Atmel does not have separate independent chairman and chief executive officer positions, it will appoint a lead independent director.

p.   The compensation and audit committees of Atmel's board of directors shall have standing authorization to obtain legal or other advisors of their choice and to incur reasonable expenses in connection with obtaining services from those advisors. Those advisors shall report directly to the committee that engaged them.

q.   In the event that the Company determines to restate any of its financial reports, the audit committee or a special committee comprised of independent directors may consider whether the restatement resulted from intentional misconduct on the part of a Company officer or director. If that committee determines that the restatement resulted from intentional misconduct by any Company officer or director, then the committee may also consider whether it would be in the Company's best interests to seek to recover that portion of any incentive payment made to such individual, pursuant to an incentive plan adopted by the board, that was expressly tied to financial

performance metrics that were restated (i.e., excluding salary, board retainer fees, and other financial payments not expressly determined by the financial results that were restated).

**Effectiveness of Provisions**

r. The corporate governance provisions set out in this agreement shall remain in effect for a minimum of three years from the date of this agreement, unless: (i) they come into conflict with any applicable state or federal statute, rule, regulation, listing standard, or case law, in which case the Company may modify the affected provisions in order to comply with the statute, rule, regulation, listing standard or case law; or (ii) the Company determines they should be modified, in the best interests of the Company, because of or in response to, among other things, extraordinary corporate transactions or potential transactions, changes to accounting rules or recommendations from the Company's internal or external auditors, and/or other business, governance, litigation, risk management, or liability mitigation needs. Any determination to modify the corporate governance provisions prior to the expiration of three years from the date of this agreement shall: (i) be made by a majority of the independent members of the Company's board of directors, and (ii) be promptly disclosed in the Company's next Form 10-Q or 10-K filing, a Form 8-K filing, a press release, or on the Company's external website.

**IV. THE PROCEDURE FOR PRELIMINARY APPROVAL OF A DERIVATIVE ACTION IN FEDERAL COURT IS WELL ESTABLISHED**

As stated in the *Manual for Complex Litigation*, Third, §23.14 at 171 (1995), "[f]irst, the court reviews the [proposed settlement] preliminarily to determine whether it is sufficient to warrant public notice and a hearing." The preliminary approval criteria are as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Id.* §30.41 at 237.

As discussed herein, the proposed Settlement meets the foregoing criteria for notice as it is eminently fair, reasonable, and adequate and should be preliminarily approved by the Court.

## V. THE STANDARDS FOR JUDICIAL APPROVAL OF DERIVATIVE SETTLEMENTS

### A. The Law Favors Settlement

There is a strong policy favoring compromises which resolve litigation, including those in shareholder derivative actions. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co., Inc.*, 797 F.2d 799, 802 (9th Cir. 1986); *Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983). Derivative actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome and the typical length of the litigation. *See Maher*, 714 F. 2d at 455 (settlements of derivative actions are particularly favored because such litigation is "'notoriously difficult and unpredictable'") (citation omitted). Settlements of derivative actions are "favored for the reasons that settlements generally are favored: disputes are resolved; the resources of litigants and courts are saved; and, in the case of a derivative action, management can return its attention and energy from the courtroom to the corporation itself." *Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986).

### B. The Role of the Court in Approval of a Derivative Settlement

The settlement of a corporate derivative action requires court approval. In this regard, the court must determine whether a settlement is fair and reasonable. *Maher*, 714 F.2d at 455 (settlement of shareholder derivative actions must be fair, adequate and reasonable and without fraud or collusion); *In re Warner Comm'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). The proposed Settlement enjoys a presumption that it is fair and reasonable because it is the product of extensive arm's-length negotiations conducted by capable counsel who are well-experienced in derivative actions with the substantial assistance of mediator Phillips. *See M. Berenson Co, Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822-823 (D. Mass. 1987); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

The district court must exercise "sound discretion" in approving a settlement. *Ellis*, 87 F.R.D. at 18; *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual

agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

*Id.* (emphasis in original). As explained herein, applying these criteria demonstrates that this Settlement warrants the Court's preliminary and final approval.

### VI. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND FINALLY APPROVED AFTER NOTICE TO ATMEL SHAREHOLDERS

Federal Plaintiffs submit that the Settlement is an excellent result for Atmel. The Settlement is the culmination of protracted arm's-length negotiations among the Settling Parties with the substantial assistance of mediator Phillips. The Settling Defendants acknowledge that the Plaintiffs were a material factor in obtaining substantial benefits for the Company in the form of the $9.65 million cash payment to Atmel and valuable corporate governance changes. *See* Agreement, ¶¶5.1-5.2. The corporate governance provisions directly address Plaintiffs' allegations and provide for, among other things, pre-set grant dates, greater Board independence, a compensation clawback provision, and stricter stock option granting practices and procedures, all of which will create a corporate environment where the events complained of are less likely to reoccur. As Judge Saundra Brown Armstrong recently found when granting preliminary approval in the *In re NVIDIA Corp.* derivative backdating settlement, "[a]s corporate debacles such as Enron, Tyco and WorldCom demonstrate, strong corporate governance is fundamental to the economic well-being and success of a corporation." *In re NVIDIA Corp. Derivative Litig.*, No. C 06-6110-SBA (JCS), slip op. at 4 (N.D. Cal. Dec. 22, 2008); *see also Cohn v. Nelson*, 375 F. Supp.

2d 844, 853 (E.D. Mo. 2005) ("Courts have recognized that corporate governance reforms such as those achieved here provide valuable benefits for public companies.") (citing cases).

Plaintiffs' Counsel have conducted a careful analysis of the law and a thorough examination of the facts relating to the allegations. Plaintiffs' Counsel have also carefully weighed the benefits of the Settlement against the substantial risks of continued litigation and have concluded that the benefits to be conferred on Atmel by the Settlement will, if approved by the Court, result in a very favorable resolution of the derivative claims and allow Atmel to prevent a recurrence of similar matters in the future. Accordingly, for all the foregoing reasons, the Court should preliminarily approve the Settlement.

## VII. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the parties are requesting the Court to establish dates by which notice of the Settlement will be distributed to Atmel shareholders, dates by which Atmel shareholders may comment on the Settlement, and a Settlement Hearing. As set forth in the Notice of Proposed Settlement, submitted herewith as Exhibit B to the Agreement, the parties propose the following:

| | |
|---|---|
| Notice published on Atmel's website | 10 calendar days after Court enters order preliminarily approving Settlement ("Notice Date") |
| Filing of Stipulation via a Form 8-K with the SEC | 10 calendar days after Court enters order preliminarily approving Settlement |
| Last day for Atmel shareholders to comment on the Settlement | 14 calendar days prior to the Settlement Hearing |

In addition, the parties propose that the Settlement Hearing be scheduled 60 calendar days after the Notice Date. This schedule is similar to those used in numerous derivative and class action settlements and provides due process to Atmel shareholders with respect to their rights concerning the Settlement.

## VIII. CONCLUSION

Based on the foregoing, Federal Plaintiffs and their counsel respectfully submit that the Settlement is fair, reasonable, and adequate and should be preliminarily approved.

Date: December 11, 2009     Respectfully Submitted,

BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP

/s/ Nichole Browning
NICHOLE BROWNING
580 California Street, Suite 1750
San Francisco, CA  94104
Telephone: 415/00-3000
Facsimile: 415/400-3001
-and-
ERIC L. ZAGAR
TARA KAO
280 King of Prussia Road
Radnor, PA 19087
Telephone:  610/667-7706
Facsimile:   610/667-7056

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
RACHELE R. RICKERT
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:   619/234-4599
-and-
LARRY KOLKER
270 Madison Avenue
New York, New York 10016
Telephone: 212-545-4600
Facsimile: 212-545-4653

*Co-Lead Counsel for Federal Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 11, 2009.

        /s/ Nichole Browning

NICHOLE BROWNING
BARROWAY TOPAZ KESSLER
 MELTZER & CHECK, LLP
580 California Street, Suite 1750
San Francisco, CA 94104
Telephone: (415) 400-3004
Facsimile: (415) 400-3001

## Mailing Information for a Case 5:06-cv-04592-JF

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lily Irene Becker**
  lbecker@orrick.com
- **Nichole T. Browning**
  nbrowning@btkmc.com
- **Todd L. Burlingame**
  burlingame@mofo.com
- **John L. Cooper**
  jcooper@fbm.com,brestivo@fbm.com,calendar@fbm.com
- **Lawrence Timothy Fisher**
  ltfisher@bramsonplutzik.com,moldenburg@bramsonplutzik.com
- **Francis M. Gregorek**
  gregorek@whafh.com
- **Kenneth P. Herzinger**
  kherzinger@orrick.com,bclarke@orrick.com
- **Tara Puhua Kao**
  tkao@sbtklaw.com,der_filings@sbtklaw.com
- **Brian Lawrence Levine**
  BLevine@mofo.com,vvandergrift@mofo.com
- **Marisa C. Livesay**
  livesay@whafh.com
- **Betsy Carol Manifold**
  manifold@whafh.com
- **Jessica Koren Nall**
  jnall@fbm.com,calendar@fbm.com,bheuss@fbm.com
- **James Lawrence Pagano**
  paganolaw@aol.com
- **Alan Roth Plutzik**
  aplutzik@bramsonplutzik.com
- **Andrew Michael Purdy**
  apurdy@orrick.com
- **Darryl Paul Rains**
  drains@mofo.com,dgillis@mofo.com
- **Rachele R. Rickert**
  rickert@whafh.com
- **Amy M. Ross**
  aross@orrick.com
- **Kathryn Anne Schofield**
  kschofield@bramsonplutzik.com,moldenburg@bramsonplutzik.com
- **Emanuel Shachmurove**
  mshachmurove@sbtklaw.com

- **Karen Julie Stambaugh**
  kstambaugh@orrick.com,gjohnson@orrick.com
- **Michael David Torpey**
  mtorpey@orrick.com
- **Eric L. Zagar**
  ezagar@btkmc.com,rwinchester@btkmc.com,tkao@btkmc.com,der_filings@btkmc.com,dalbert@btkmc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)