1   MICHAEL D. TORPEY (STATE BAR NO. 79424)
    mtorpey@orrick.com
2   KAREN J. STAMBAUGH (STATE BAR NO. 244918)
    kstambaugh@orrick.com
3   LILY I. BECKER (STATE BAR NO. 251145)
    lbecker@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
5   405 Howard Street
    San Francisco, CA  94105-2669
6   Telephone:     415-773-5700
    Facsimile:     415-773-5759
7
    Attorneys for Defendant
8   J. Michael Ross

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                        SAN JOSE DIVISION
12

13
    In re ATMEL CORPORATION          Case No. CV 06-4592-JF HRL
14  DERIVATIVE LITIGATION,
                                     **J. MICHAEL ROSS' OBJECTION TO**
15  ─────────────────────────────    **THE PROPOSED SETTLEMENT**

    This Document Relates To:        DERIVATIVE ACTION
16
            ALL ACTIONS.             DATE:       March 26, 2010
17                                   TIME:       10:00 a.m.
                                     DEPT:       3
18                                   JUDGE:      Hon. Jeremy Fogel

19
                                     **REDACTED VERSION**
20
                                     **UNREDACTED VERSION**
21                                   **SUBMITTED UNDER SEAL**

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................................... 1

II.    THE COURT SHOULD NOT APPROVE THE SETTLEMENT BECAUSE THE
       NOTICE WAS INADEQUATE AND MISLEADING.................................... 1

       A.    The Notice Did Not Disclose That The Settlement May Eliminate Atmel's
             Insurance Coverage ............................................................................ 2

       B.    The Notice Did Not Disclose Morrison's Conflict ................................ 3

       C.    The Notice Did Not Disclose The Release Of Atmel's Current Board
             Members............................................................................................ 3

III.   THE COURT SHOULD NOT APPROVE THE SETTLEMENT BECAUSE THE
       SETTLING PARTIES CANNOT SHOW THAT IT IS FAIR, ADEQUATE OR
       REASONABLE ......................................................................................... 5

       A.    Morrison's Conflict Has Irreparably Tainted The Settlement ............... 6

       B.    Plaintiffs' Attorneys' Fees Are Too High........................................... 8

             1.    The Attorneys' Fees are Too High in Proportion to the Cash Value
                   of the Settlement ...................................................................... 8

             2.    The Remedial Measures In This Case Add Little Value To The
                   Settlement.................................................................................. 9

IV.    THE SETTLEMENT IS DEFECTIVE BECAUSE IT DOES NOT CONTAIN A
       JUDGMENT REDUCTION CREDIT......................................................... 11

V.     IF IT DECIDES TO APPROVE THE SETTLEMENT, THE COURT MUST
       DETERMINE THE APPROPRIATE BAR ORDER ..................................... 12

       A.    The PSLRA's Liability Scheme Applies To The 10(b) Claim ............. 12

       B.    Federal Law Is The Appropriate Law For The Delaware Claims......... 13

       C.    If The Court Decides That State Law Should Apply, Delaware Law
             Governs ............................................................................................ 14

       D.    If The Court Decides That California Law Applies, It Must Hold A Full
             Fairness Hearing And Make Findings Regarding The Value Of The
             Settlement, The Amount of Damages, And Each Settling Defendants'
             Culpability........................................................................................ 16

             1.    The Court Is Required To Determine The Value Of The Settlement
                   Consideration .......................................................................... 18

             2.    The Court Must Determine Damages Now.................................. 18

             3.    Taking Plaintiffs' Allegations As True, The Settling Defendants
                   Caused Most If Not All Of The Alleged Damages ................... 20

VI.    CONCLUSION......................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abbott Ford, Inc. v. Superior Court,*
   43 Cal. 3d 858 (1987) ........................................................................................ 17, 18

*Alcal Roofing & Insulation v. Superior Court,*
   8 Cal. App. 4th 1121 (1992) ...................................................................................... 18

*Am. Motorcycle Ass'n v. Superior Court,*
   578 P.2d 899 (Cal. 1978) .......................................................................................... 12

*Am. Title Ins. Co. v. Lacelaw Corp.,*
   861 F.2d 224 (9th Cir. 1988) ..................................................................................... 19

*Arbuthnot v. Relocation Realty Serv. Corp.,*
   227 Cal. App. 3d 682 (1991) ..................................................................................... 18

*Bell Atl. Corp. v. Bolger,*
   2 F.3d 1304 (3rd Cir. 1993) ............................................................................ 1, 2, 5, 9

*Certainteed Corp. v. Celotex Corp.,*
   2005 WL 217032, at *3 (Del. Ch. Jan. 24, 2005) ..................................................... 12

*Chesapeake Utils. Corp. v. Chesapeake & Potomac Tel. Co. of Md.,*
   401 A.2d 101 (Del. Super. Ct. 1979) ........................................................................ 12

*Denney v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006)...................................................................................... 12

*Erreca's v. Superior Court,*
   19 Cal. App. 4th 1475 (1993)..................................................................................... 17

*Fluck v. Blevins,*
   969 F. Supp. 1231 (D. Or. 1997)......................................................................... 11, 14

*Forrest v. Baeza,* 58 Cal. App. 4th 65, 74-75 (Cal. Ct. App. 1997) ............................................ 6

*Franklin Mint Co. v. Superior Court,*
   130 Cal. App. 4th 1550 (Cal. Ct. App. 2005) ................................................... 17, 18

*Franklin v. Kaypro Corp.,*
   884 F.2d 1222 (9th Cir. 1989).......................................................................... 13, 14, 18

*Gong v. RFG Oil, Inc.,*
   166 Cal. App. 4th 209 (Cal. Ct. App. 2004) .............................................................. 6

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998)..................................................................................... 5

*In re Cendant Corp. Sec. Litig.,*
   2007 WL 2164241, at *4 (D.N.J. July 25, 2007)........................................................ 5

*In re Heritage Bond Litig.,*
   546 F.3d 667 (9th Cir. 2008)...................................................................................... 5

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
   194 F.R.D. 166 (E.D. Pa. 2000) ................................................................................ 1

*In re Jiffy Lube Sec. Litig.,*

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    927 F.2d 155 (4th Cir. 1991) ................................................. 11

4    *In re Oracle Sec. Litig.*,
     829 F. Supp. 1176 (N.D. Cal. 1993) .......................... 5, 6, 7, 8

5    *In re Pac. Enters. Sec. Litig.*,
     47 F.3d 373 (9th Cir. 1995) ......................................... passim

6    *In re Pittsburgh & Lake Erie R.R. Co. Sec. & Antitrust Litig.*,
7    543 F.2d 1058 (3d Cir. 1976) ............................................ 8

     *In re Veritas Software Corp. Sec. Litig.*,
8    496 F.3d 962 (9th Cir. 2007) ......................................... 2, 3

9    *In re WorldCom, Inc. ERISA Litig.*,
     339 F. Supp. 2d 561 (S.D.N.Y. 2004) ............................. 11

10   *In re Zoran Corp. Deriv. Litig.*,
     2008 WL 941897, at *2 (N.D. Cal. Apr. 7, 2008) .......... 5, 10

11   *Independent Representation for Corporate Defendants in Derivative Suits*,
12   74 Yale L.J. 524 (1965) ...................................................... 7

13   *Lagrone v. Am. Mortell Corp.*,
     2008 WL 4152677, at *5-6 (Del. Ch. Jan. 24, 2005) ......... 12

14   *Lewis v. Shaffer Stores Co.*,
     218 F. Supp. 238 (S.D.N.Y.1963) ...................................... 6

15   *Long Beach Mem. Med. Ctr. v. Superior Court*,
16   172 Cal. App. 4th 865 (Cal. Ct. App. 2009) .................... 20

     *Maher v. Zapata Corp.*,
17   714 F.2d 436 (5th Cir. 1983) ...................................... 2, 5, 7

18   *Mattco Forge, Inc. v. Arthur Young & Co.*,
     38 Cal. App. 4th 1337 (1995) ......................................... 20

19   *McDannold v. Star Bank, N.A.*,
     261 F.3d 478 (6th Cir. 2001) ........................................... 11

20   *Med. Ctr. of Del., Inc. v. Mullins*,
     637 A.2d 6 (Del. 1994) .................................................... 15

21   *Medina v. Argent Mortgage Co.*,
22   2007 WL 1848664, at *2 (N.D. Cal. June 27, 2007) ......... 14

     *Messing v. FDI, Inc.*,
23   439 F. Supp. 776 (D.N.J. 1977) ......................................... 6

24   *Miller v. Ellis*,
     103 Cal. App. 4th 373 (Cal. Ct. App. 2002) .................... 12

25   *Musheno v. Gensemer*,
     897 F. Supp. 833 (M.D. Pa.1995) ..................................... 6

26   *O'Melveny & Myers v. Fed. Deposit Ins. Corp.*,
27   512 U.S. 79 (1994) .......................................................... 13

     *Powers v. Eichen*,
28   229 F.3d 1249 (9th Cir. 2000) ........................................... 9

**TABLE OF AUTHORITIES**
(continued)

Page

*Slaven v. BP America, Inc.*,
    958 F. Supp. 1472 (C.D. Cal. 1997) ................................................................. 13

*Smith v. Arthur Andersen LLP*,
    421 F.3d 989 (9th Cir. 2005) .............................................................................. 5

*Smith v. Chapman*,
    436 F. Supp. 58 (W.D. Tex. 1977), *aff'd*, 614 F.2d 968 (5th Cir. 1980) ................................ 19

*Tech-Bilt v. Woodward-Clyde & Assocs.*,
    38 Cal. 3d 488 (1985) .......................................................................... 17, 18, 25

*Toyota Motor Sales U.S.A. v. Superior Court*,
    220 Cal. App. 3d 864 (Cal. Ct. App. 1990) .................................................. 16, 17

*Tucci v. Club Mediterranee, S.A.*,
    89 Cal. App. 4th 180 (Cal. Ct. App. 2001) .......................................................... 14

**STATUTES**

10 Del. C. § 6302(d) ............................................................................................ 15

17 C.F.R. § 240.12b-20 (2009) ............................................................................... 2

Cal Code Civ. Proc. § 877.6 .................................................................................. 17

Cal. Code Civ. Proc. § 875(a) ................................................................................ 12

Cal. Code Civ. Proc. § 877 .................................................................................... 13

Cal. Code Civ. Proc. § 877(a) ............................................................................... 18

Cal. Code Civ. Proc. § 877.6(d) ............................................................................ 17

Rest. 2d Contr. § 73 .............................................................................................. 10

**RULES**

Cal. Rule Prof. Resp. 3-310(C) (2009) .................................................................... 6

Fed. R. Civ. P. 11(b) ............................................................................................. 19

1    **I.        INTRODUCTION**

2          Non-settling defendant and Atmel Corporation ("Atmel" or "the Company") shareholder

3    J. Michael Ross respectfully objects to the proposed settlement and requests that the Court deny

4    final approval of the settlement.  The Court should deny final approval of the settlement for three

5    independent reasons.

6          *First*, the notice to shareholders of the proposed settlement published by Atmel is

7    inadequate and misleading because it fails to disclose the insurance consequences of the

8    settlement, fails to disclose Morrison & Foerster LLP's ("Morrison") conflict, and fails to

9    disclose the release of all claims against the current Atmel Board of Directors.

10         *Second*, the proposed settlement is not fair, adequate or reasonable because Morrison's

11   conflict taints the entire settlement process, and plaintiffs' attorneys' fees represent too high a

12   proportion of the total consideration.

13         *Third*, the Court must reject the settlement because the contribution bar order does not

14   provide a judgment reduction credit for the non-settling defendant, Mr. Ross.

15         In addition, if the Court decides to approve the settlement, the Court must determine what

16   law applies to the contribution bar and if California law applies, the Court must make

17   determinations of relative fault.

18   **II.       THE COURT SHOULD NOT APPROVE THE SETTLEMENT BECAUSE THE
              NOTICE WAS INADEQUATE AND MISLEADING**

19

20         Federal Rule of Civil Procedure 23.1(c) requires that "[n]otice of a proposed settlement

21   [of a derivative action] . . . be given to shareholders."  To satisfy due process, that notice "must be

22   sufficiently informative and give sufficient opportunity for response."  *Bell Atl. Corp. v. Bolger*, 2

23   F.3d 1304, 1317 (3rd Cir. 1993) (citation omitted); *see In re Ikon Office Solutions, Inc. Sec. Litig.*,

24   194 F.R.D. 166, 174 (E.D. Pa. 2000) (finding notice "must be reasonably calculated under all the

25   circumstances, to apprise interested parties of the pendency of the action and afford them an

26   opportunity to present their objections.") (citations and internal quotations omitted).  The notice

27   should be provided in plain language so that a layman can understand the settlement's

28   implications and cannot mislead the layman through omissions or deficiencies.  *See In re Veritas*

1  *Software Corp. Sec. Litig.*, 496 F.3d 962, 971-72 (9th Cir. 2007) (requiring disclosure of

2  assumptions underlying calculations made in notice of proposed settlement so as not to mislead

3  class members); *Bolger*, 2 F.3d at 1317 (finding notice was worded to make impact of settlement

4  "reasonably clear to the minimally sophisticated layman" (citation and internal quotation

5  omitted)); *Maher v. Zapata Corp.*, 714 F.2d 436, 451 n.27 (5th Cir. 1983) (noting that one

6  purpose behind the Rule 23.1 notice requirement is "to encourage those with divergent views to

7  come forth, thus helping the court to identify possible inadequacies in the settlement").

8      Moreover, when notice is made by a publicly traded company via disclosure on a Form 8-

9  K, it must comport with standards governing those SEC filings.  In particular, the notice cannot

10  be misleading or omit material information.  Under Rule 12b-20, a company filing an 8-K must

11  add, "[i]n addition to the information expressly required to be included in a statement, … such

12  further material information … as may be necessary to make the required statements, in light of

13  the circumstances under which they are made not misleading."  17 C.F.R. § 240.12b-20 (2009).

14      Combining these standards, the notice must (1) provide an opportunity for shareholders to

15  respond; (2) provide sufficient information regarding the settlement; and (3) include information

16  necessary so as not to make the proposed settlement misleading.  *See Bolger*, 2 F.3d at 1317; 17

17  C.F.R. § 240.12b-20.  The notice published in this action fails all three requirements.[1]

18      **A.**    **The Notice Did Not Disclose That The Settlement May Eliminate Atmel's Insurance Coverage**

19

20      Nowhere does the Notice, press release, or settlement disclose to shareholders that there is

21  a substantial risk that Atmel's insurance carriers will deny coverage for the continuation of this

22  action against Mr. Ross.[2] █████████████████████████████████████████

23  ████████████████████████████████████████████████████████

---

24  [1] As the Court noted at the preliminary approval hearing, "the settling parties in Atmel and the Plaintiff[s] run the risk, if there's a material fact that's not disclosed in the notice, that the matter

25  would have to be re noticed."  Tr. of Hearing on Prelim. Approval held on December 18, 2009, at 8:23 – 9:2.

26  [2] Notice of Proposed Settlement ("Notice"), Declaration of Lily I. Becker ("Becker Decl."), Ex. 1.

27  [3] Atmel holds four directors and officers liability insurance policies relevant to this action, issued by the following companies: Certain Underwriters at Lloyd's, London; Executive Risk Indemnity

28  Inc.; National Union Fire Insurance Co. of Pittsburgh, Pa.; and Arch Insurance Company.

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ███████████████████████████████  As a consequence, Atmel risks bearing the entire

6 cost of its litigation going forward if it assumes the claims against Mr. Ross.

7      As rational economic actors, shareholders are principally concerned with the return on

8 their investment.  Shareholders are most concerned about maximizing settlement value and

9 limiting the cost of ongoing litigation.  If the costs of continuing the litigation are concealed from

10 those shareholders, they cannot properly assess the value of the proposed partial settlement.  The

11 Notice is inadequate because it conceals that the Company, and not its insurers, could bear the

12 entire burden of that future litigation.

13      **B.      The Notice Did Not Disclose Morrison's Conflict**

14      The Notice also failed to explain the conflict of interest arising from Morrison's

15 concurrent representation of Atmel and 21 of the 24 settling defendants, including the entire

16 current Board and Atmel's current CEO.  The Notice did not explain to shareholders that in a

17 *derivative* action, the Company does not (or at least should not) stand on the same side of a

18 settlement negotiation with the individual defendants.  As discussed below in section III.A., this

19 conflict of interest taints the fairness of the settlement.  Because this conflict raises serious

20 questions as to whether the settlement adequately compensates Atmel for the alleged violations,

21 failure to explain that conflict is likely to "discourage [ ] other objectors from speaking up."

22 *Veritas*, 496 F.3d at 972 (reversing district court's finding of adequacy because notice failed to

23 apprise shareholders of assumptions underlying settlement value per share).  The Notice needed

24 to do more than simply list counsel by reference to the settlement agreement; it had to explain the

25 conflict and its impact on the settlement.

26      **C.      The Notice Did Not Disclose The Release Of Atmel's Current Board Members**

27      Finally, the Notice failed to explain that the settlement releases claims against Atmel's

28 entire current Board of Directors.  It indicates that the compromised claims are against "certain

present and former officers and directors of Atmel Corporation," but is ambiguous as to whether this applies to the entire current Board. The Company is releasing its claims against the entire current Board, because each is a named defendant in at least one of the lawsuits being dismissed as part of the proposed settlement:

| Released Defendant | Litigation | Claims |
|---|---|---|
| David Sugishita (Chairman of the Board) | *Perlmutter v. Perlegos* | Unjust enrichment, breach of fiduciary duty, violation of Cal. Corp. Code § 25403, abuse of control, gross mismanagement, waste |
| | *Basnet v. Laub* | Breach of fiduciary duty |
| Steven Laub (President and CEO) | *Perlmutter v. Perlegos* | Unjust enrichment, breach of fiduciary duty, violation of Cal. Corp. Code § 25403, abuse of control, gross mismanagement, waste |
| | *Basnet v. Laub* | Breach of fiduciary duty |
| T.C. Wu (Officer and Director) | *In re Atmel Deriv. Litig.* | Unjust enrichment, corporate waste |
| | *Perlmutter v. Perlegos* | Unjust enrichment, breach of fiduciary duty, violation of Cal. Corp. Code § 25402/25403, abuse of control, gross mismanagement, waste |
| | *Basnet v. Laub* | Breach of fiduciary duty |
| Charles Carinalli (Outside Director) | *Basnet v. Laub* | Breach of fiduciary duty |
| Papken Der Torossian (Outside Director) | *Basnet v. Laub* | Breach of fiduciary duty |
| Jack L. Saltich (Outside Director) | *Basnet v. Laub* | Breach of fiduciary duty |
| Dr. Edward Ross (Outside Director) | *Basnet v. Laub* | Breach of fiduciary duty |

Clarity on this point is especially important given that approval by Atmel's Board of Directors is a condition of the settlement. *See* Settlement Agreement, Doc. No. 254 ("Agreement") at ¶ 10.4. As with the failure to explain Morrison's conflict, disclosure of this issue could have led to additional objections by Atmel's shareholders.

1

2

**III.   THE COURT SHOULD NOT APPROVE THE SETTLEMENT BECAUSE THE SETTLING PARTIES CANNOT SHOW THAT IT IS FAIR, ADEQUATE OR REASONABLE**

3

4

5

6

7

8

9

10

11

12

13

The Court should deny final approval of the settlement because the settling parties cannot meet their burden to show the settlement is fair, adequate, reasonable, and free from fraud or collusion.[4]  *Zapata*, 714 F.2d at 454 (noting the proponents of a settlement bear the burden of showing that a proposed settlement is fair, adequate, reasonable, and in the best interest of the corporation and its shareholders); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (noting that where "settlement negotiations are biased, or skewed by a conflict of interest, we cannot presume that the attorneys have reached a fair settlement."); *see also In re Zoran Corp. Deriv. Litig.*, 2008 WL 941897, at *2 (N.D. Cal. Apr. 7, 2008) ("We must always remember that once both sides reach a settlement in a derivative or class action, they are always solidly in favor of their own proposal.  There is no advocate to critique the proposal on behalf of absent shareholders.").

14

15

16

17

18

19

20

21

22

Rule 23.1 requires court approval for the settlement of a derivative action, so that the court may determine "whether the settlement reasonably protects the interests of the corporation and its shareholders." *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1186 (N.D. Cal. 1993).  In deciding whether to approve a settlement, the Court has wide discretion. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigants, and their strategies, positions and proof.'") (citation omitted); *In re Heritage Bond Litig.*, 546 F.3d 667, 675 (9th Cir. 2008) (stating that it ordinarily reviews a district court's decision regarding settlements under abuse of discretion standard).

23

24

25

26

27

28

---

[4] As an Atmel shareholder Mr. Ross has standing to object to the settlement's adequacy. Moreover, the Ninth Circuit recognizes the right of a non-settling defendant to object to a partial settlement where the settlement creates a "formal legal prejudice" to the objector.  *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 998 (9th Cir. 2005) (recognizing non-settling defendant's standing to object to settlement that included bar order); *see also Bolger*, 2 F.3d at 1310 (noting that risks presented, including risk of high attorneys fees and low recovery to the company, "cautions against creating obstacles to challenging derivative action settlement agreements"); *In re Cendant Corp. Sec. Litig.*, 2007 WL 2164241, at *4 (D.N.J. July 25, 2007) ("[A] third party defendant has standing to challenge a settlement to which it is not a party where the settlement affects its legal rights.").

### A.    Morrison's Conflict Has Irreparably Tainted The Settlement

In shareholder derivative actions, the court's approval hearing plays an important role in preventing collusive or unfair settlements. *Oracle*, 829 F. Supp. at 1177, 1187-90 (denying approval of derivative settlement because Morrison & Foerster represented both the individual defendants and the corporation). In evaluating derivative settlements, courts generally rely on the representations of settling parties to evaluate the proposal. *Id.* "If … the settlement negotiations are biased, or skewed by a conflict of interest, [the court] cannot presume that the attorneys have reached a fair settlement." *Pac. Enters.*, 47 F.3d at 378. In *Oracle*, Judge Walker rejected a derivative settlement finding that "[b]ecause of the absence of a disinterested presentation on behalf of the corporation, it is impossible for the court to perform [its Rule 23.1] duty." 829 F. Supp. at 1186. The Court is faced with the same problem in this case. In fact, Morrison's conflict caused Judge Walker to reject the derivative settlement in *Oracle* even though the Oracle Board had established an independent committee of non-defendant directors to approve the settlement. *Id.* Here, no such special settlement committee was even formed, making the conflict even more problematic.

Concurrent representation of clients is prohibited in certain circumstances without the informed written consent of each client. Cal. Rule Prof. Resp. 3-310(C) (2009); *see also* Local Rule 11-4. In derivative actions, consent to waive the conflict of interest is not effective. *Oracle*, 829 F. Supp. at 1189 ("[A]n inanimate corporate entity, which is run by directors" cannot waive conflict of interest where directors are settling parties); *Forrest v. Baeza*, 58 Cal. App. 4th 65 (Cal. Ct. App. 1997) (discussing impracticability of waiver in derivative suits). Particularly where allegations of fraud or self-dealing have been alleged against individual defendants, it is imperative for the corporation to have independent counsel. *Messing v. FDI, Inc.*, 439 F. Supp. 776, 782 (D.N.J. 1977) (finding conflict of interest in dual representation of directors and corporation in derivative action and requiring independent counsel where directors were accused of fraud and the corporation "elected to take an active stance in the litigation").[5]

---

[5] *See also Musheno v. Gensemer*, 897 F. Supp. 833, 838 (M.D. Pa.1995); *Lewis v. Shaffer Stores Co.*, 218 F. Supp. 238, 239 (S.D.N.Y.1963); *Gong v. RFG Oil, Inc.*, 166 Cal. App. 4th 209, 214 (Cal. Ct. App. 2004).

1        Morrison represents Atmel, its Board of Directors, and all individual defendants named in

2   this action except Mr. Ross, George and Gust Perlegos, and Mikes Sisois.  Morrison's individual

3   defendant clients named in this action include current and former Board members, and current

4   and former executives, including several Chief Financial Officers ("CFOs").  Morrison's

5   contemporaneous representation and negotiation of the settlement on behalf of Atmel and nearly

6   all of the settling defendants represents several conflicts of interest.

7        First, Morrison's dual representation of Atmel and the individual settling defendants is

8   plainly prohibited since there are allegations of fraud and self-dealing asserted against these

9   individuals.  *See, e.g.,* Pls. Am. Compl. ¶¶ 379, 399 (Docket No. 86) ("Compl.").  The

10  impropriety of the conflicted representation is obvious when considering the parties'

11  fundamentally opposed settlement interests:  the individual settling defendants would logically

12  seek to minimize the amount they are required to contribute to a settlement; the Company has an

13  interest in increasing its recovery.  As the court noted in *Oracle*:

14           If the same counsel represents both the corporation and the director and
             officer defendants, the interests of the corporation are likely to receive
15           insufficient protection.  An increased recovery for the corporation is
             wholly incompatible with the goal of limiting the defendants' liability.
16           Defendants' counsel is thus placed in an untenable position, and more
             often than not he will succumb to the pressure to approve any settlement
17           between the shareholder and his individual clients.

18  829 F. Supp. at 1188 (quoting Note, *Independent Representation for Corporate Defendants in*

19  *Derivative Suits*, 74 Yale L.J. 524, 532 (1965)).  The fact that Morrison played both sides of the

20  settlement in seeking recovery for the Company while minimizing its individual clients' exposure

21  shows that the settlement does not protect the interest of the corporation, and could be the result

22  of collusion.  *See Pac. Enters.*, 47 F.3d at 378 ("[A] district court may not approve a proposed

23  settlement if it is the product of fraud or overreaching by, or collusion among, the negotiating

24  parties." (citation and punctuation omitted)); *Zapata*, 714 F.2d at 457 ("A district court must

25  reject a settlement agreement no matter how acceptable it must otherwise be, if it is not free from

26  collusion or fraud.").

27       Second, Morrison's representation of Atmel's current Board of Directors further taints the

28  settlement.  By its own terms, the settlement agreement requires Atmel's Board of Directors "in

1   the exercise of its business judgment," to approve the settlement agreement "as fair, reasonable,

2   and adequate, and in the best interests of Atmel and Current Atmel Shareholders," in order for the

3   settlement to be effective.  Agreement at ¶ 10.4.  The Board of Directors' review of the settlement

4   agreement cannot be a valid exercise of its business judgment without independent advice.

5   *Oracle*, 928 F. Supp at 1187, 1189-90 (considering a special committee of the board of directors

6   incapable of exercising its business judgment in approving the settlement as it did not have

7   independent counsel).  Furthermore, the Board of Directors has a vested interest in approving the

8   settlement because each and every member of Atmel's current Board of Directors is a party to

9   this settlement agreement.

10       Thus, the Court should deny approval of the settlement because it cannot assume that it

11   was the product of good faith settlement negotiations.  *See id.* at 1186; *Pac. Enters.*, 47 F.2d at

12   378 ("[I]f … the settlement negotiations are biased, or skewed by a conflict of interest, we cannot

13   presume the attorneys have reached a fair settlement.").

14       **B.**    **Plaintiffs' Attorneys' Fees Are Too High**

15       The disproportionate amount of attorneys' fees sought by plaintiffs' counsel is an

16   independent reason to deny the settlement as unfair and inadequate.  *See In re Pittsburgh & Lake*

17   *Erie R.R. Co. Sec. & Antitrust Litig.*, 543 F.2d 1058, 1068 (3d Cir. 1976) (noting the fairness of

18   the settlement "must in the first instance . . . be measured by the benefit or detriment to [the

19   corporation]").

20       **1.**    **The Attorneys' Fees are Too High in Proportion to the Cash Value of**
          **the Settlement**

21

22       After the $4.94 million in proposed attorneys' fees is subtracted from the total cash

23   consideration, the benefit to the Company is only $4.71 million, making the benefit to the

24   Company less than the benefit to plaintiffs' attorneys.  As one court explained,

25       [o]ne of the risks flowing from shareholders' difficulty in monitoring derivative
          litigation is that plaintiffs' counsel and the defendants will structure a settlement
26       such that plaintiffs' attorneys' fees are disproportionate to any relief obtained for
          the corporation.  Plaintiffs' attorneys and the defendants may settle in a manner
27       adverse to the interests of the plaintiffs by exchanging a low settlement for high
          fees.

28

*Bolger*, 2 F.3d at 1310.

The Ninth Circuit has established twenty-five percent (25%) of the settlement recovery as a "benchmark" for attorneys' fees awards. *Pac. Enters.*, 47 F.3d at 379 (affirming award of attorneys' fees in derivative action where fees constituted thirty-three percent of award but noting that twenty-five percent is the "benchmark"); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) (reversing and remanding fee award of thirty percent of the settlement for failure to adequately specify the basis for the departure from the benchmark). The attorneys' fees proposed here represent over fifty-one percent (51%) of the amount of the settlement. While Mr. Ross does not doubt that plaintiffs' attorneys have provided hours of service to their clients, a fee of over half of the cash value of the settlement is plainly unreasonable and the Court must reject the settlement.[6]

### 2. The Remedial Measures In This Case Add Little Value To The Settlement

The record is unclear as to the value of the remedial measures included in the Agreement. Many of the non-monetary provisions at issue in this case had already been implemented before the parties had even began mediating.

First, the amendments to Atmel's stock option procedures listed in the settlement agreement add little value to the settlement, ██████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████

---

[6] Under the terms of the Settlement Agreement, the appropriate action for the Court is to disapprove the proposed settlement in its entirety, not cut the attorneys' fees. *See* Agreement at ¶¶ 10.1, 10.6, 10.7. The settlement is not effective until the Court has approved the Final Federal Judgment and Atmel has paid Plaintiffs' attorneys $4.94 million.

1    For example, Section 5.3(a) of the settlement agreement provides that Atmel stock options

2    "shall be priced as of the fifteenth day of the month on or after the approval date . . ."  ███████

3    ████████████████████████████████████████████████████████████████████

4    ██████████████████████████████████████████ Furthermore,

5    several provisions merely restate the current terms of the Atmel stock plan.  Section 5.3(h)

6    accurately states:  "Atmel's stock plan provides that . . . the exercise prices of all stock options

7    shall be at least 100% of the closing price of the Company's stock on the date of the grant."  *See*

8    Becker Decl., Ex. 5 at A-7.

9    Similarly, Section 5.3(g) reiterates the 2005 stock plan's requirement that awards granted

10   as performance-based compensation should be administered by "a committee of two or more

11   independent directors."  *See id.* at A-5, Section 5(a)(ii); *see also In re Zoran*, 2008 WL 941897 at

12   *11 (dismissing various corporate governance reforms as "purely cosmetic").  Several provisions

13   are in fact illusory, as they simply require compliance with the law.  *See* Rest. 2d Contr. § 73

14   ("Performance of a legal duty owed to a promisor which is neither doubtful nor the subject of

15   honest dispute is not consideration … .");  Agreement ¶¶ 5.3(l) (compliance with "applicable legal

16   requirements"), 5.3(j) (compliance with proper accounting practices).

17   Because the Company had already implemented remedial measures regarding the

18   oversight and management of its stock option granting practices in connection with other

19   proceedings, the stock option provisions in the settlement agreement offer little additional

20   consideration to Atmel's shareholders.  *See Zoran*, 2008 WL 941897, at *11 (reminding counsel

21   of their duty of candor to the court and finding counsel had "let the Court down" where counsel

22   failed to disclose that five corporate governance reform provisions included as consideration for

23   settlement had been enacted before the parties began settlement discussions).

24   The corporate governance provisions in Section 5.3 of the settlement agreement likewise

25   add minimal value to the settlement.  Comparing the corporate governance provisions of the

26   settlement agreement with the Company's most recent Proxy statement reveals that the vast

27   majority of these measures were already in place; the Corporate Governance and Nominating

28   committees have already certified that they are comprised of independent directors, the Board has

1   a separate independent chairman and chief executive officer, and Board committees already have

2   the authority to obtain legal counsel and investigate internal misconduct.  *Compare* Agreement

3   ¶¶ 5.3(n)-(q) and Becker Decl., Ex. 5 at 22-24.  Furthermore, the Board has already determined

4   "as a matter of policy there should be a substantial majority of independent Directors on the

5   Board," which diminishes any remedial nature of settlement provision 5.3(m), which states a two-

6   thirds requirement for director independence.  Becker Decl., Ex. 6.

7          Accordingly, the Court should disregard the purported value of amendments to Atmel's

8   stock option provisions and corporate governance measures contained in Section 5.3.  They

9   reflect little more than the Company's preexisting policies and practices.  The only recovery to

10  the Company will be the $4.71 million that remains after plaintiffs' attorneys' fees have been

11  paid.

12  **IV.    THE SETTLEMENT IS DEFECTIVE BECAUSE IT DOES NOT CONTAIN A**
        **JUDGMENT REDUCTION CREDIT**

13

14         The Private Securities Litigation Reform Act of 1995 ("PSLRA") and federal law clearly

15  provide that a district court may only approve a contribution and indemnity bar if the settlement

16  order contains a judgment reduction credit that limits the non-settling defendant's liability in a

17  future verdict or judgment.  15 U.S.C. § 78u-4(f)(7); *Fluck v. Blevins*, 969 F. Supp. 1231, 1233

18  (D. Or. 1997) (noting that when fashioning a bar order, "[t]he principal concern is the extent and

19  manner in which the compensation paid by the settling defendants is credited against any liability

20  that ultimately may be assessed against the non-settling defendants"); *In re WorldCom, Inc.*

21  *ERISA Litig.*, 339 F. Supp. 2d 561, 568 (S.D.N.Y. 2004) ("[C]ourts may approve settlements that

22  bar contribution and indemnification claims between the settling defendants and non-settling

23  defendants *so long as* there is a provision that gives nonsettling defendants an appropriate right of

24  set-off from any judgment imposed on them") (emphasis added)).[7]  The purpose behind the

25  _____

26  [7] *See also McDannold v. Star Bank, N.A.*, 261 F.3d 478, 487 (6th Cir. 2001) (noting that a
    settlement with a contribution bar and *pro tanto* judgment reduction credit "would have triggered
    a hearing to determine whether the settlement and set-off were fair to the non-settling

27  defendants"); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 161 (4th Cir. 1991) (remanding for failure
    to designate a setoff method in connection with approval of settlement and contribution bar, as

28  non-settling defendant "is entitled to know what the law of the case is in advance of trial").

1  judgment reduction credit "is to *fully* compensate non-settling defendants for the loss of their

2  contribution claims."[8]  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 274 (2d Cir. 2006) (emphasis

3  added).

4  　　　The proposed settlement agreement filed here fails to include *any* judgment reduction

5  credit.  *See* Doc. No. 254-3 at ¶ 10.[9]  Therefore, the Court should reject the settlement for this

6  reason as well.

7  **V.　　IF IT DECIDES TO APPROVE THE SETTLEMENT, THE COURT MUST
　　　　DETERMINE THE APPROPRIATE BAR ORDER**

8

9  　　　If the Court approves the settlement, the Court must determine what law applies to the

10  contribution bar, and fashion the bar order according to the rules of that jurisdiction.

11  　　**A.　　The PSLRA's Liability Scheme Applies To The 10(b) Claim**

12  　　　The application of any contribution bar in this settlement is complicated by the fact that

13  the claims against Mr. Ross include both a federal claim under section 10(b) of the Securities

14  Exchange Act of 1934 and Delaware state law claims for breach of fiduciary duty (and/or aiding

15  and abetting a breach) and corporate waste.  The Court's determination of the proper judgment

16  reduction credit is straightforward with respect to plaintiffs' 1934 Act claim.  It is controlled by

17  _____

18  [8] Delaware law provides Mr. Ross with rights of contribution and equitable indemnity.  10 Del. C, § 6302(a) (statutory right of contribution); *Lagrone v. Am. Mortell Corp.*, 2008 WL 4152677, at *5-6 (Del. Ch. Jan. 24, 2005) (right to equitable indemnity); *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *3 (Del. Ch. Jan. 24, 2005) (citing *Chesapeake Utils. Corp. v. Chesapeake & Potomac Tel. Co. of Md.*, 401 A.2d 101, 102 (Del. Super. Ct. 1979)) (discussing procedural aspects to asserting equitable indemnity claim).  California law provides similar rights.  *See* Cal. Code Civ. Proc. § 875(a) (statutory right to contribution); *Am. Motorcycle Ass'n v. Superior Court*, 578 P.2d 899, 912 (Cal. 1978) (providing partial equitable indemnity among joint tortfeasors on the basis of comparative fault); *Miller v. Ellis*, 103 Cal. App. 4th 373, 379-80 (Cal. Ct. App. 2002) (collecting cases).

19

20

21

22

23  [9] The proposed Final Federal Judgment and Order of Dismissal ("Order") currently contains the following contribution bar language:

24  　　"As of the Effective Date, the Settling Defendants, the Non-Settling Defendant, and all other persons and entities shall be deemed to be, and by operation of this judgment shall be, permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting against any of the Settling Defendants any claim for contribution or indemnity that is related to, based upon, or arises out of the Settled Claims, regardless of whether such claim for contribution or indemnity is asserted as a claim, cross-claim, counterclaim, third-party claim, or in any other manner, in any court, arbitration, administrative agency, or forum.  All such claims are hereby extinguished, discharged, satisfied, and unenforceable."

25

26

27

28

1   the statute. Any liability under the 1934 Act is either not joint and several or subject to a

2   judgment reduction credit for the greater of the settling defendants' proportionate liability or the

3   amount paid in settlement. 15 U.S.C. § 78u-4(f)(2), (7). If he is found jointly and severally

4   liable, the jury will be charged with determining proportionate fault based on evidence presented

5   at trial, and Mr. Ross will not be liable for the portions of the judgment that can be attributed to

6   the settling defendants. *Id.*

7           However, if this Court decides to approve the settlement, it must decide between three

8   possible judgment reduction credit schemes regarding plaintiffs' Delaware state law claims.

9   Depending on which one the Court determines will govern at trial informs what the Court must

10  do now. The three possible contribution schemes the Court could apply here are: federal

11  common law, Delaware law, or California law. Each scheme operates differently and provides a

12  different judgment reduction credit. For the reasons set forth below, Mr. Ross believes that the

13  Court should apply federal common law to plaintiffs' Delaware state law claims if it decides to

14  approve the settlement.

15          **B.      Federal Law Is The Appropriate Law For The Delaware Claims**

16          Federal common law provides for a judgment reduction credit similar to that provided by

17  the PSLRA. Prior to the enactment of the PSLRA, the Ninth Circuit adopted a proportionate

18  liability approach to judgment reduction credits for federal securities claims. *See Franklin v.*

19  *Kaypro Corp.*, 884 F.2d 1222, 1231 (9th Cir. 1989).

20          Where federal and state law claims are pending, federal common law may apply to

21  determine contribution and the judgment reduction credit for both claims. *See Slaven v. BP*

22  *America, Inc.*, 958 F. Supp. 1472, 1480, 1483-84 (C.D. Cal. 1997) (finding federal law

23  proportionate share approach preempted California's *pro tanto* approach under Cal. Code Civ.

24  Proc. § 877 where federal and state maritime law claims were pending). Moreover, if the

25  application of state law creates a "significant conflict with an identifiable federal policy or

26  interest," federal law should apply. *Id.* at 1479 (quoting *O'Melveny & Myers v. Fed. Deposit Ins.*

27  *Corp.*, 512 U.S. 79, 88 (1994)).

28          Given the conflict between the Ninth Circuit's *Kaypro* proportionate liability standard and

California's *pro tanto* approach (discussed *infra*), federal law should apply.  *See Medina v. Argent Mortgage Co.*, 2007 WL 1848664, at *2 (N.D. Cal. June 27, 2007) (Judge Lloyd suggesting that where federal law conflicts, as under *Kaypro*, federal law on contribution would apply over California's § 877); *see also, Fluck*, 969 F. Supp. at 1237 (noting that in enacting the PSLRA, "Congress attempted to redress the weaknesses of the *pro tanto*[10] and proportionate liability[11] approaches by combining them.").

In addition, because the jury will already be charged with determining the proportionate liability of all settling and non-settling defendants under the PSLRA with respect to plaintiffs' 1934 Act claims, the interest of efficiency and judicial economy will be promoted by adopting the same approach for a judgment reduction credit relating to the federal and Delaware claims. Accordingly, Mr. Ross requests that the Court order that the credit should apply to all of plaintiffs' Delaware state law claims that proceed to trial.  Paragraph 10 of the Order should include the following italicized wording:  "All such claims are hereby extinguished, discharged, satisfied, and unenforceable; *provided, however, that in the event a verdict or judgment is entered against the Non-Settling Defendant for liability to any of the Parties or plaintiffs that have intervened in the Federal Action on any of the Settled Claims, the amount of the award for such claim or claims shall be reduced by the greater of the proportionate responsibility of the Settling Defendants or the amount paid in settlement*."  *See* Doc. No. 254-3 at ¶ 10.

## C.    If The Court Decides That State Law Should Apply, Delaware Law Governs

If the Court decides to apply state law to determine the appropriate judgment reduction credit, it would have to engage in a choice of law analysis in order to determine which state's law should apply:  Delaware or California.[12]  For the reasons set forth below, the Court should apply

---

[10] Under the *pro tanto* method, the amount paid in settlement by the settling defendants is deducted from the judgment, and the non-settling defendant is liable for the balance.  *Fluck*, 969 F. Supp. at 1233.

[11] Under the proportionate liability method, the judgment is reduced by the percentage of culpability of each defendant as determined by the fact finder.  *Fluck*, 969 F. Supp. at 1233.

[12] Under California's three-step, choice-of-law analysis, the court first "determines whether the foreign law differs from that of the forum."  *Tucci v. Club Mediterranee, S.A.*, 89 Cal. App. 4th 180, 189 (Cal. Ct. App. 2001).  Second, "[i]f there is a difference, the court examines each jurisdiction's interest in the application of its own law to determine whether a 'true conflict' exists."  *Id.*  Third, "[w]hen both jurisdictions have a legitimate interest in the application of its

1    Delaware law if it decides to apply state law to this issue.

2         As a threshold matter, the Court would be required to examine the states' competing

3    governmental interests because Delaware and California's approaches to judgment reduction

4    credit are wholly different schemes with materially different results.  Under Delaware law, Mr.

5    Ross is entitled to a set-off against future judgments against him equal to the greater of (1) the

6    settlement amount or (2) the settling defendants' *pro rata* share[13] of their fault.  10 Del. Code

7    Ann. § 6304(a)-(b); *Med. Ctr. of Del., Inc. v. Mullins*, 637 A.2d 6, 7 (Del. 1994).  If the Court

8    determines that Delaware law applies and that the settlement should be approved, the final order

9    should include a provision reducing Mr. Ross' liability appropriately but it would require no

10   further action by the Court.  By contrast, if the Court were to apply California law, Mr. Ross

11   would only be entitled to reduce any final judgment in this case by the actual settlement value,

12   which would require the Court to hold a full fairness hearing and make findings regarding the

13   settling defendants' culpability.  *See infra*, Section V.D.

14        As to the states' interests, plaintiffs and the settling parties cannot dispute that Delaware

15   has the greater interest because they have repeatedly agreed that Delaware corporate law applies

16   in this action.  *See* Agreement at ¶ 12.5 (choosing Delaware law for interpretation of the

17   Agreement); this Court's July 16, 2007 Order Deferring Motion to Dismiss for Failure to Make

18   Demand (Docket No. 83) at footnote 12 ("[T]he parties agree that Delaware law governs the

19   instant dispute.").  Moreover, Delaware has a strong governmental interest in having its law

20   applied to this matter because its contribution and judgment reduction credit scheme directly

21   implicates Delaware's policy of allowing corporations to enact provisions to protect their officers

22   and directors.  *See*, *e.g.*, Del. Gen. Corp. L. § 102(b)(7).

23        If the Court decides to approve the settlement, and that Delaware law applies to the state

24   law claims, then the following italicized language should be added to Paragraph 10 of the Order:

25   "All such claims are hereby extinguished, discharged, satisfied, and unenforceable; *provided,*

26   rule of decision, the court analyzes the 'comparative impairment' of the interested jurisdictions."
     *Id.* (citations omitted).

27   [13] The default *pro rata* setoff under Delaware law is for equal distribution of fault among joint

28   tortfeasors.  10 Del. C. § 6302(d).

1   *however, that in the event a verdict or judgment is entered against the Non-Settling Defendant for*

2   *liability to any of the Parties or plaintiffs that have intervened in the Federal Action on any of the*

3   *Settled Claims, the amount of the award for such claim or claims shall be reduced by (i) the*

4   *amount of the consideration given as part of and for the Agreement, or (ii) the Settling*

5   *Defendants' pro rata share of such award as determined under Delaware law, whichever is*

6   *greater.*" *See* Doc. No. 254-3 at ¶ 10.

7       **D.      If The Court Decides That California Law Applies, It Must Hold A Full
             Fairness Hearing And Make Findings Regarding The Value Of The**
8            **Settlement, The Amount of Damages, And Each Settling Defendants'
             Culpability**
9

10          If the Court decides to approve the settlement and decides to apply California law to the

11  contribution scheme, it must conduct a full fairness hearing and make findings regarding the

12  value of the settlement consideration, and the culpability of the settling defendants and their

13  proportionate liability.  *See* Cal. Code Civ. Proc. § 877.6(a)(1) (providing that any party to an

14  action involving two or more alleged joint tortfeasors "shall be entitled to a hearing on the issue

15  of the good faith of a settlement entered into by the plaintiff or other claimant and one or more

16  alleged tortfeasors").  Under California's approach, Mr. Ross' exposure to a judgment at trial is

17  reduced only by the actual amount of the settlement consideration, without regard to the settling

18  defendants' proportionate share of the liability.  Cal. Code Civ. Proc. § 877.  This raises the risk

19  of prejudice to Mr. Ross if the amount of the settlement consideration is less than the amount of

20  damage caused to plaintiffs by the settling defendants.  Because of this, California law requires

21  that a contribution bar may only stand where the settlement is made in "good faith."  Cal Code

22  Civ. Proc. § 877.6.

23          The Court's good faith settlement determination must include review and resolution of

24  factual issues,[14] including the settling defendant's culpability and proportionate liability.  *Toyota*

25  *Motor Sales U.S.A. v. Superior Court*, 220 Cal. App. 3d 864, 871 (Cal. Ct. App. 1990) ("[O]ne of

26  the most important [factors] … is the settling party's proportionate liability.").

27  _____
    [14] The court's findings are solely for the purpose of evaluating the settlement, and the issues "may
28  ultimately be contested and litigated at trial."  *Toyota Motor Sales U.S.A. v. Superior Court*, 220
    Cal. App. 3d 864, 878 n.9 (Cal. Ct. App. 1990) .

1    The California Supreme Court has set forth a multi-factor test for determining whether a

2    settlement is made in good faith.  *Tech-Bilt v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499

3    (1985).  Among other factors, the court must consider (1) "a rough approximation of plaintiffs'

4    total recovery and the settlor's proportionate liability"; (2) "the amount paid in settlement"; (3)

5    "the allocation of settlement proceeds among plaintiffs"; and (4) "a recognition that a settlor

6    should pay less in settlement than he would if he were found liable after a trial."  *Id.*  The court

7    may also consider additional factors, such as: (5) the financial conditions, including insurance

8    policy limits of settling defendants; and (6) "the existence of collusion, fraud, or tortious conduct

9    aimed to injure the interests of nonsettling defendants."  *Id.*  The court must apply these factors to

10   ensure that the "defendant's settlement figure [is] not . . . grossly disproportionate to what a

11   reasonable person, at the time of the settlement, would estimate the settling defendant's liability

12   to be."  *Id.*

13   Plaintiffs bear the burden under Section 877.6 to establish the good faith of the settlement,

14   and "must set forth the value of the consideration paid and an evidentiary basis for that valuation,

15   and must demonstrate that the valuation 'was reached in a sufficiently adversarial manner to

16   justify the presumption that a reasonable valuation was reached.'"  *Franklin Mint Co. v. Superior

17   Court*, 130 Cal. App. 4th 1550, 1558 (Cal. Ct. App. 2005) (quoting *Erreca's v. Superior Court*,

18   19 Cal. App. 4th 1475, 1496 (1993)); *see Abbott Ford, Inc. v. Superior Court*, 43 Cal. 3d 858,

19   879 (1987).[15]  In addition, if "there is no *substantial evidence* to support a critical assumption as

20   to the nature and extent of a settling defendant's liability, then a determination of good faith based

21   upon such assumption is an abuse of discretion."  *Toyota Motor*, 220 Cal. App. 3d at 871

22   (emphasis added).  Only after the court has determined that the settlement is made in good faith

23   can the non-settling defendant be barred from further claims against the settling parties.  Cal Code

24   Civ. Proc. § 877.6.

25

26   _____

27   [15] If a settling party makes this showing, the non-settling party can still show a lack of good faith
     by establishing that "the settlement is so far 'out of the ballpark' … as to be inconsistent with the
     equitable objectives of the statute."  *Tech-Bilt*, 38 Cal. 3d at 499-500; Cal. Code Civ. Proc.

28   § 877.6(d).

1.   **The Court Is Required To Determine The Value Of The Settlement Consideration**

If the Court decides to apply California law, it must hold a full fairness hearing and make a number of factual determinations including determining the value of the non-cash components of the settlement consideration.  Plaintiffs bear the burden of establishing the value of this consideration to the Company and its shareholders.

As California courts have held, "[i]n a situation where the cash amount of the settlement does not dictate the amount of the offset, the settling parties must include an allocation or a valuation in their agreement."  *Franklin Mint*, 130 Cal. App. 4th at 1557 (quoting *Alcal Roofing & Insulation v. Superior Court*, 8 Cal. App. 4th 1121, 1124-25 (1992)).  This occurs whenever there is noncash consideration given as part of the settlement.  *See Abbott Ford*, 43 Cal. 3d at 879 ("[T]he parties to such an agreement, since they are in the best position to place a monetary figure on its value, should have the burden of establishing the monetary value . . . ." ); *Arbuthnot v. Relocation Realty Serv. Corp.*, 227 Cal. App. 3d 682, 690 (1991) (reversing trial court for "mistakenly believ[ing] [that] … the nonsettling defendants [ ] carried the burden of establishing the value of the settlement agreement").  Courts reason that placing the burden on plaintiffs is more likely to produce a reasonable result.  *Franklin Mint*, 130 Cal. App. 4th at 1557.

Under ¶¶ 5.1 and 5.3 of the Agreement, the settlement consideration includes $9.65 million in cash from the settling defendants and noncash consideration in the form of corporate governance reforms.  The agreement states that these reforms "confer substantial benefits upon Atmel and Current Atmel Shareholders."  ¶ 5.3.  Yet nowhere does the settlement agreement establish the value of these claims.  *See supra* Section III.B.2.  Without knowing the value of these reforms, this court has no way of determining whether the settlement's total value reflects the settling defendants' proportionate liability.  Moreover, Mr. Ross has no way of valuing the amount of any set-off provided to him under Cal. Code Civ. Proc. § 877(a).

2.   **The Court Must Determine Damages Now**

In order to determine whether the settlement was made in good faith, the Court must also consider "a rough approximation of plaintiffs' total recovery."  *Tech-Bilt*, 38 Cal. 3d at 499.

Plaintiffs' amended complaint alleges that the Company has sustained "millions of dollars in damages":

> including, but not limited to, the additional compensation expenses and tax liabilities the Company will be required to incur, the loss of funds paid to the Company upon the exercise of stock options resulting from the difference between the fair market value of the stock option on the true date of grant and the price that was actually paid as a result of the backdated stock option grant, the costs associated with the Company's internal investigation, costs and expenses incurred in connection with the Company's restatement of historical financial results, and costs and expenses incurred in connection with the SEC investigation of the Company.

Compl. ¶ 383.[16]  First, plaintiffs allege that they intend to seek $116 million in damages at trial for the compensation expenses that Atmel had to recognize in connection with the restatement. *Id.* at ¶¶ 2, 383.  Second, they allege that they are entitled to damages "for the loss of funds paid to the Company upon the exercise of stock options resulting from the difference between the fair market value of the stock option on the true date of the grant and the price that was actually paid as a result of the backdated stock option grant." *Id.* at ¶ 383.  Third, they allege that they will seek damages at trial for "the costs associated with the Company's internal investigation, costs and expenses incurred in connection with the Company's restatement of historical financial results, and costs and expenses incurred in connection with the SEC investigation of the company." *Id.*  Counsel for Atmel has represented that the Company spent approximately $14.5 million for the stock option investigation.  Atmel's Opp. to Mr. Ross' Mot. to Compel, at 2:6-8 (Docket No. 247).  Assuming for purposes of the fairness evaluation that Atmel's representation is correct, plaintiffs' alleged damages calculation is well in excess of $100 million based on these three items alone.

---

[16] Mr. Ross disputes plaintiffs' allegations, but requests that the Court rely on plaintiffs' admissions in the Complaint if it decides to hold a full fairness hearing and determine the proportionate fault of the settling parties. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("A statement in a complaint, answer or pretrial order is a judicial admission, as is a failure in an answer to deny an allegation.") (citing *Smith v. Chapman*, 436 F. Supp. 58, 62 (W.D. Tex. 1977), *aff'd*, 614 F.2d 968 (5th Cir. 1980)); *see also* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading … [,] an attorney … certifies to the best of the person's knowledge, information, and belief … [that] the factual contentions [therein] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .").

### 3.    Taking Plaintiffs' Allegations As True, The Settling Defendants Caused Most If Not All Of The Alleged Damages

The settling parties' proportionate liability is one of the most important factors for the trial court to consider in determining the settlement was made in good faith. *Long Beach Mem. Med. Ctr. v. Superior Court*, 172 Cal. App. 4th 865, 873 (Cal. Ct. App. 2009); *Mattco Forge, Inc. v. Arthur Young & Co.*, 38 Cal. App. 4th 1337, 1350 (1995). The Complaint alleges that the Settling Defendants' fraud was the "direct and proximate" cause of "millions of dollars in damages" to Atmel. Compl. ¶ 383 ("As a direct and proximate result of defendants George Perlegos, Gust Perlegos, Chellam, Ross, Hall, Thomas, Fougere and Kim's fraud, the Company has sustained millions of dollars in damages. . . ."). Indeed, as set forth more fully below, the documents produced to date indicate that the settling defendants were substantially involved in the conduct alleged to be fraudulent by plaintiffs in their Amended Complaint. Therefore, taking plaintiffs' allegations as true, these individuals caused most, if not all, of plaintiffs' alleged damages.







OHS West:260859061.1



OHS West:260859061.1



OHS West:260859061.1

J. MICHAEL ROSS' OBJECTION TO THE
PROPOSED DERIVATIVE SETTLEMENT
CV-06-04592

To summarize the Court's task if it approves the settlement and decides that California law applies to the contribution bar, in order to assess the good faith of the settlement it must hold a full evidentiary hearing and determine (1) the total damages in this case, (2) the value of the settlement consideration, and (3) each settling defendant's proportionate fault.  *Tech-Bilt*, 38 Cal. 3d at 499.

**VI.      <u>CONCLUSION</u>**

For these reasons, Mr. Ross respectfully requests the Court deny plaintiffs' motion for final approval of the Partial Settlement.

*[Signature Page Follows]*

1

2     Dated: March 12, 2010                 MICHAEL D. TORPEY

                                          KAREN J. STAMBAUGH

3                                           LILY I. BECKER

                                          Orrick, Herrington & Sutcliffe LLP

4

5                                                /s/ Michael D. Torpey

                                              MICHAEL D. TORPEY

6                                          Attorneys for Defendant

                                           J. Michael Ross

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

J. MICHAEL ROSS' OBJECTION TO THE
PROPOSED DERIVATIVE SETTLEMENT
CV-06-04592