1

2                                                      **E-Filed 3/31/2010**

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12   IN RE ATMEL CORPORATION DERIVATIVE        Case Number C 06-4592 JF (HRL)
     LITIGATION
13                                             ORDER[1] (1) GRANTING
                                               PLAINTIFFS' MOTION FOR FINAL
14                                             APPROVAL OF SETTLEMENT AND
                                               (2) OVERRULING IN PART AND
15                                             SUSTAINING IN PART
                                               NON-SETTLING DEFENDANT'S
16                                             OBJECTIONS

17                                             [re: docket no. 307]

18

19

20        In the above-captioned consolidated shareholder derivative action, Plaintiffs Patrick

21   McWeeny ("McWeeny"), James Juengling ("Juengling"), Kenneth Kelley ("Kelley"), Anthony

22   Noble ("Noble"), and Randel Smith ("Smith") (collectively "Plaintiffs) move for final approval

23   of a proposed Settlement Agreement ("Agreement") pursuant to Fed. R. Civ. P. 23.1.  Nominal

24   Defendant Atmel Corporation ("Atmel") and twenty-four settling individual defendants

25

26

27   ─────────────────

28   [1] This disposition is not designated for publication and may not be cited.

1    ("Individual Settling Defendants") do not oppose the motion.[2]  The lone Non-Settling Defendant,

2    J. Michael Ross ("Ross"), objects to the Agreement and opposes the motion for final approval.

3    For the reasons discussed below, the motion for final approval will be granted, Ross's objections

4    will be overruled in part and sustained in part, and judgment will be entered accordingly.

5                                        **I.  Background**

6    **A.     Basis for the Derivative Litigation**

7             Plaintiffs' claims are based on alleged violations of fiduciary duties and other violations

8    of state and federal law related to stock option backdating, fraud, and insider trading, as well as

9    deception in concealing those practices.

10   **B.     Procedural History**

11            **1.      The Federal Action**

12            On July 25, 2006, Atmel announced that its audit committee had initiated an

13   independent investigation into the timing of its stock option grants.  The investigation covered

14   grants between March 19, 1991, and August 3, 2006.  In June 2007, Atmel restated its financial

15   statements from 1993 to 2005 by approximately $116 million.

16            On July 27, 2006, Plaintiff Juengling filed the first derivative suit in this Court.  Shortly

17   thereafter, three additional derivative actions were filed by Noble, Kelley, and McWeeny (with

18   Juengling, the "Federal Plaintiffs"). On October 4, 2006, these four actions were consolidated

19   under the caption *In re Atmel Corp. Derivative Litig.*, Master File No. CV 06-4592-JF.

20   Juengling, Kelley, and Noble were appointed lead plaintiffs.  On November 3, 2006, the Federal

21   Plaintiffs filed their consolidated complaint.

22            On July 16, 2007, the Court dismissed the consolidated complaint with leave to amend.

23   On August 21, 2007, the Federal Plaintiffs filed an amended complaint adding Smith as a

24   plaintiff and Ross as a defendant.  On June 25, 2008, the Court denied Atmel's motion to dismiss

25   and denied in part the Individual Defendants' motions to dismiss.  On August 14, 2008, Ross

26   _____

27            [2]Atmel filed a memorandum in support of the motion, and Individual Defendants George

28   and Gust Perlegos joined in that memorandum.

2

1  filed an answer.  On January 20, 2009, Atmel and the rest of the Individual Defendants filed an

2  answer, and Ross filed an amended answer.

3      **2.**    **The State Actions**

4      On July 26, 2006, Plaintiff Mark Perlmutter ("Perlmutter") filed a shareholder derivative

5  action in the Santa Clara Superior Court alleging substantive claims closely related to those

6  brought by the Federal Plaintiffs.  On August 18, 2006, Plaintiff Govind Basnet ("Basnet") filed

7  a similar action, and on September 29, 2006, Plaintiffs Lawrence William Dunst, George S.

8  Graham, Jr., Betty M. Larkin, and Victor Sands did the same.  These California actions were

9  consolidated as Case No. 1-06-CV-068049.  Perlmutter was appointed lead plaintiff in the state

10  case. On April 23, 2007, the California Plaintiffs filed a consolidated complaint.

11      On May 10, 2007, Plaintiffs Marilyn Poulos ("Poulous") and Lawrence Zucker made a

12  demand on Atmel's Board of Directors pursuant to California Corporations Code section 1601,

13  seeking to inspect documents related to stock option backdating.  On October 9, 2007, Poulos

14  brought a verified petition for writ of mandate in the superior court to compel inspection and

15  copying of Atmel's books, records, and documents (Case No. 1-07-CV-095929).  On June 23,

16  2008, James and Jane Golden made a demand on Atmel's Board of Directors for production of

17  certain books and records pursuant to Section 220 of the Delaware General Corporation Law.  On

18  February 5, 2009, the Goldens filed a complaint in the Delaware Court of Chancery to compel

19  inspection of Atmel's books and records.

20      On May 21, 2008, Basnet filed a request to dismiss his state derivative action without

21  prejudice.  On the same date, Basnet made a demand on Atmel's Board of Directors for

22  appointment of an independent committee to investigate issues related to the alleged back-dating

23  and insider trading scheme.  On February 27, 2009, Basnet filed a derivative action in Delaware

24  (Civil Action No. 4399-CC) alleging that Atmel's board members had violated their fiduciary

25  duties by failing to respond appropriately to his demand and by failing to take appropriate steps

26  to recover the damages the company suffered as a result of the backdating scheme.

27

28

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2)
OVERRULING IN PART AND SUSTAINING IN PART NON-SETTLING DEFENDANT'S OBJECTIONS
(JFLC3)

3.     **Moving Toward Settlement**

In September 2008, all of the Plaintiffs and both Atmel and the Settling Individual Defendants began to engage in settlement discussions. On October 24, 2008, and November 18, 2008, the parties participated in two all-day, in-person mediation sessions with the Honorable Layn R. Phillips (Ret.). Over the next several months, the parties continued to engage in extensive arm's-length settlement discussions. On April 6, 2009, the parties participated in a third all-day, in-person mediation with Judge Phillips. After the third mediation, the parties continued their negotiations with the assistance of Judge Phillips.

Notwithstanding these efforts, negotiations reached an impasse in June 2009, and the parties began to proceed with litigation and with discovery. However, in October and November 2009, the parties again met and conferred in an effort to bridge their differences and come to a resolution of the various actions. As a result of these lengthy settlement discussions, and with the substantial assistance of Judge Phillips as mediator, the Plaintiffs and the Settling Defendants have agreed to settle the actions. Judge Phillips is familiar with the principal terms of the Agreement and has recommended to the Settling parties that they settle the actions on these terms.

C.   **Terms of the Agreement**

**1) Cash Payments to Atmel**:  Section 5.1 of the Agreement provides that "[w]ithin ten days after entry of the Preliminary Order, the Settling Defendants shall pay or cause to be paid $9.65 million to Atmel" in exchange for the releases of Atmel's claims against the twenty-four Settling Defendants and other "Released Persons."

**2) Corporate Governance Reforms:** Section 5.3 of the Agreement provides for Atmel's adoption of corporate governance reforms in several areas with the aim of preventing the types of problems that prompted theses suits and necessitated the 2007 restatement. The Agreement also provides that the reforms are to remain in effect for at least three years unless they conflict with any law or rule or unless a majority of the independent directors approve modification.

**A. Stock Option Reforms**: The Agreement proposes changes to the

4

1  timing, approval and award procedures, and size of stock option grants, as

2  well as documentation of all option grants and internal monitoring.

3  **B.  Corporate Governance Reforms**: The Agreement adopts a number of

4  changes to increase the presence and power of independent directors.

5  **3) Final Judgment and Order of Dismissal of Actions**:  Section 7 of the Agreement

6  provides that the parties agree to apply to the Court for entry of final judgment in the Federal

7  Action with respect to the Settling Defendants and Released Persons.  With respect to the State

8  Actions, the Agreement provides that the State Plaintiffs will notify the respective state courts of

9  the Agreement within ten days of its execution and apply for stays of those actions pending final

10  judgment in the federal action.  Further, the State Plaintiffs are to seek dismissal with prejudice

11  of their state court actions within ten days after entry of a final federal judgment and to "use their

12  best efforts to secure the Final State Judgments."

13  **4) Releases**:  Section 8 of the Agreement provides that all of the settling parties are

14  deemed to have full, finally, and forever released the Settling Defendants and their successors,

15  heirs, etc. from all claims relating to the underlying conduct, including claims "that are not

16  known or suspected to exist as of the Effective Date."

17  **5) Attorneys' Fees, Costs, and Expenses:**  Section 9 of the Agreement provides that

18  Atmel will pay, subject to the Court's approval, attorneys' fees and expenses in the aggregate

19  amount of $4.94 million.

20  **D.   Preliminary Approval, Notice, and Objection**

21  On December 18, 2009, the Court issued an order preliminarily approving the Agreement

22  and providing for notice to Atmel's shareholders.  In response to a letter from Ross, the Court

23  issued an order on December 28, 2009, clarifying that the date of publication of notice was set

24  for January 15, 2010, and that discovery with respect to Ross would be discussed at the Case

25  Management Conference scheduled for January 8, 2010.  On January 21, 2010, the Court issued

26  an order revising the dates set forth in the December 18 order.  The deadline for publication of

27  notice was set for January 29, 2010; the deadline for shareholder objections was set for March

28

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2)
OVERRULING IN PART AND SUSTAINING IN PART NON-SETTLING DEFENDANT'S OBJECTIONS
(JFLC3)

1  12, 2010; and the deadline for submission of briefs regarding final approval was set for March

2  19, 2010.  The final approval hearing was set for March 26, 2010, at 9:00 a.m.

3      Ross filed objections to the settlement on March 12, 2010.  The Court did not receive any

4  other shareholder objections.  The Court heard oral argument from the Settling parties and Ross

5  on March 26, 2010.

6  **II.  Legal Standard**

7      In evaluating a settlement, a district court must determine whether the proposed

8  settlement is "fundamentally fair, reasonable, and adequate."  *See* Fed. R. Civ. P. 23(e); *Mego*

9  *Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Officers for Justice v. Civil Service*

10 *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

11         "Assessing a settlement proposal requires a district court to balance a number of
           factors, including: the strength of the plaintiffs' case; the risk, expense,
12         complexity, and likely duration of further litigation; the risk of maintaining a class
           action throughout the trial; the amount offered in settlement; the extent of
13         discovery completed and the stage of the proceedings; the experience and views of
           counsel; . . . and the reaction of the class members to the proposed settlement."
14

15 *Mego Financial*, 213 F.3d at 458 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th

16 Cir. 1998) (citations omitted)).  The district court also must satisfy itself that the proposed

17 settlement is not the product of collusion among the negotiating parties.  *Id.*

18 **III.  Discussion**

19 **A.      Ross's Standing to Object to the Agreement**

20     The Ninth Circuit has recognized an "exception to the general principle barring

21 objections by non-settling defendants to permit a non-settling defendant to object where it can

22 demonstrate that it will sustain some formal legal prejudice as a result of the settlement."  *Waller*

23 *v. Fin. Corp. Of Am.*, 828 F.2d 579, 583 (9th Cir. 1987) (citations omitted); *see also id.* ("a

24 non-settling defendant has standing to object to a partial settlement which purports to strip it of a

25 legal claim or cause of action, an action for indemnity or contribution for example").  Atmel

26 contends that while Ross's challenge to the judgment reduction provision of the Proposed Final

27 Judgment and Order of Dismissal may fall within this exception, his other challenges do not and

28

6

1    should not be considered.

2         Atmel relies upon *Darrow v. Southdown, Inc.*, 574 F.2d 1333 (5th Cir. 1978), *cert.*

3    *denied*, 439 U.S. 984 (1978) and *In re Pittsburgh & Lake Erie R.R. Co. Sec. & Antitrust Litig.*,

4    543 F.2d 1058 (3d Cir. 1976) for support.  In *Darrow*, the Fifth Circuit held that "on principles

5    akin to standing," two non-settling defendants could not object to the settlement.  *Darrow*, 574

6    F.2d at 1336.  The court held that the non-settling defendants could not object because they failed

7    to demonstrate that they were disinterested shareholders and therefore could not have "brought a

8    derivative action in the first instance" under Fed. R. Civ. P. 23.1.  *Id.* at 1336-38.

9         In *In re Pittsburgh & Lake Erie R.R.*, the Third Circuit similarly held that a party must

10   satisfy Rule 23.1 in order to have standing to object to a settlement.  *In re Pittsburgh & Lake Erie*

11   *R.R.*, 543 F.2d at 1067.  In that case, the court vacated the district court's order approving the

12   settlement and rejected the settling parties' argument that the non-settling trustee lacked standing

13   to object to the settlement.  *Id.* at 1060.

14        Atmel also notes that in *Zarowitz v. BankAmerica Corp.*, 866 F.2d 1164 (9th Cir. 1989)

15   (per curiam), the Ninth Circuit observed that "[i]n determining whether a party has standing to

16   object to a settlement of a derivation action, a number of courts have looked to the standard that

17   they employ to determine whether the same shareholder could act as a representative plaintiff in

18   the derivative action.  *See, e.g.*, [*Darrow* and *In re Pittsburgh & Lake Erie R.R.*]."  866 F.2d at

19   1165  The court recognized that if it were to apply the *Darrow* standard the non-settling

20   defendant would not have standing because, among other things:

21            His personal litigation strategy militates against any settlement. [The non-settling
             defendant's] interests converge with the interests of [the corporation's]
22            shareholders in a few respects, but they diverge from them significantly in others.
             [The non-settling defendant's] interest in increasing the value of his . . . stock
23            through a larger derivative suit recovery is dwarfed by his interest in pursuing his
             litigation with the [the corporation].
24

25   *Id.* at 1166.

26        However, the Ninth Circuit stopped short of adopting the rule applied by the Third and

27   Fifth Circuits, holding that

28
                                                    7

1
2
3
4

> [t]here is no need to decide exactly what showing a shareholder must make in order to have standing to object to a derivative settlement, however, because the district court in this case adequately protected the rights of the shareholders Powers purported to represent. The district court did hear his objections, and its response to them and to other aspects of the settlement were set forth in its findings of fact and conclusions of law.

5   *Id.* While the facts here are analogous to those in *Zarowitz*, the Ninth Circuit did not hold that

6   the non-settling defendant lacked standing to object to the settlement. Ross thus argues correctly

7   that the cases cited by Atmel do not "disqualif[y]" him from objecting to the settlement. (Ross

8   Obj. Reply 1.)

9        It is clear under *Waller* that Ross has standing to challenge the judgment reduction

10  provisions of the Agreement. As he is not barred from raising his other objections, the Court will

11  address those as well.

12  **B.     Ross's Categorical Challenges to the Agreement**

13       **1.     Insufficient Notice**

14       Ross first contends that notice of the settlement was inadequate. Rule 23.1 requires that

15  in derivative actions "[n]otice of a proposed settlement, voluntary dismissal, or compromise must

16  be given to shareholders or members in the manner that the court orders." The Court's order

17  preliminarily approving the Agreement contained the following provisions:

18          4. Not later than January 29, 2010, Atmel shall issue a press release
19  regarding the Agreement and shall post a link to the Notice of Proposed
    Settlement on its website.
20          5. Not later than January 29, 2010, Atmel shall cause a summary notice of
    proposed settlement to be published in Investors Business Daily. Atmel shall bear
21  the costs of this advertisement.
            6. The Court finds that dissemination of information regarding the
22  proposed settlement in the manner set out in this Order constitutes the best notice
    practicable under the circumstances and complies fully with Rule 23.1 of the
23  Federal Rules of Civil Procedure and the United States Constitution.

24  (Dkt. No. 279 at 2.)

25       Ross does not contend that Atmel failed to fulfill any of the requirements in Paragraphs 4

26  and 5 of the preliminary approval order. Instead, he argues that the notice was insufficient

27  because it did not disclose (1) that the settlement may eliminate Atmel's insurance coverage; (2)

28

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2)
OVERRULING IN PART AND SUSTAINING IN PART NON-SETTLING DEFENDANT'S OBJECTIONS
(JFLC3)

1  Morrison Foerster's purported conflict of interest arising from its concurrent representation of

2  Atmel and twenty-one of the Individual Settling Defendants; and (3) the release of Atmel's

3  current board members.

4          **a.**     **Possible Elimination of Atmel's Insurance Coverage**

5        Ross asserts that the notice is inadequate because Atmel failed to "disclose to

6  shareholders that there is a substantial risk that Atmel's insurance carriers will deny coverage for

7  the continuation of this action against" him. (Ross Obj. 2.) He relies on a letter from one of

8  Atmel's excess insurers informing the company that its policy will not cover the prosecution of

9  claims against Ross "in the event that those claims proceed at Atmel's direction." (Becker Decl.

10  Ex. 2 (Letter from Executive Risk Indemnity Inc. ("ERII") to Atmel Counsel Darryl P. Rains).)

11  Ross claims that the notice "is inadequate because it conceals that [Atmel], and not its insurers,

12  could bear the entire burden of [the] future litigation [against Ross]." (Ross Obj. 3.)

13        Both Plaintiffs and Atmel assert that the settlement poses no risk to Atmel's insurance

14  coverage. Atmel characterizes the letter relied upon by Ross as stating "a 'preliminary'

15  conclusion that its coverage would be affected '*if* Atmel . . . pursue[s] the derivative claims *by*

16  *some assignment or by assisting the derivative plaintiffs* . . . .'" (Atmel Memo. ISO Final

17  Approval Mot. 7-8 (citing Becker Decl. Ex. 2) (emphasis in original).) Plaintiffs argue that the

18  Agreement "does not provide for Atmel to 'assume' the claims against Ross, nor do Plaintiffs

19  intend to assign their claims against Ross to Atmel." (Pls.' Final Approval Mot. 17.)

20        Ross argues that, contrary to Atmel's assertion that "the insurer's letter does not reference

21  this settlement at all," (Atmel Memo. ISO Final Approval Mot. 7), the insurer's letter addresses

22  the settlement in the first sentence: "We write . . . regarding the contemplated partial settlement

23  of the above-captioned Derivative litigation , which ERII understands will not entail any release

24  of Atmel's claims against former General Counsel, Mike Ross." (Becker Decl. Ex. 2.)

25  According to Ross, the letter expresses the view that coverage could be denied even if the

26  Plaintiffs do not assign their claims to Atmel if Atmel "assist[s] the derivative plaintiffs to

27  continue their litigation efforts on [Atmel's] behalf against Mr. Ross." (*Id.*) Ross asserts that

28

9

1    "[b]ecause Plaintiffs and Atmel are unwilling to state on the record that Plaintiffs will have sole

2    authority over the case through judgment or settlement with Mr. Ross, Mr. Ross needs discovery

3    into the settlement negotiations" because "[i]f Atmel intends to control the litigation, either

4    directly or behind the scenes, ERII may deny coverage."  (Ross Obj. Reply 4 (footnote omitted).)

5    Ross claims that such a denial would have two effects:  "First, [Atmel] will have to indemnify

6    fees that are not reimbursed by insurance if the coverage is lost.  Second, the recovery of the

7    damages described by Plaintiffs would be jeopardized."  (*Id.* at 3 (footnote omitted).)  Ross

8    claims that Atmel's failure to apprise shareholders of this risk renders notice of the Agreement

9    inadequate.

10          While the letter in question does describe a difference of opinion between ERII and

11   Atmel over the excess insurance coverage, Ross points to no record evidence even suggesting

12   that Atmel has chosen or intends to choose a course of action that will jeopardize its insurance

13   coverage with respect to Plaintiffs' claims against Ross.  The Court concludes that notice of a

14   potential loss of insurance coverage based on hypothetical future actions of Atmel was not

15   required to satisfy Rule 23.1.

16                    **b.    Morrison Foerster's Alleged Conflict of Interest**

17          Ross contends that the notice was insufficient because it "failed to explain the conflict of

18   interest arising from Morrison's concurrent representation of Atmel and 21 of the 24 settling

19   defendants, including the entire Board and Atmel's current CEO."  (Ross Obj. 3.)  In support of

20   his argument, Ross relies upon *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962 (9th Cir.

21   2007), in which the court held that the notice at issue was inadequate under the Private Securities

22   Litigation Reform Act ("PSLRA") because "[n]ot only did it fail to disclose that the per share

23   recovery calculations were based on an assumption that only a fraction of class members would

24   file claims, the notice was misleading."  *Veritas*, 496 F.3d at 972.  The court was concerned that

25   the inadequate notice "may have discouraged other objectors from speaking up."  *Id.*

26          Plaintiffs contend that *Veritas* is inapposite and "has nothing to do with a purported

27   conflict that Ross contends should have been disclosed."  (Pls.' Final Approval Mot. 17.)  Atmel

28

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2)
OVERRULING IN PART AND SUSTAINING IN PART NON-SETTLING DEFENDANT'S OBJECTIONS
(JFLC3)

1  denies that counsel has a conflict of interest, and it also argues that "the settlement agreement,

2  which was attached to Atmel's Form 8-K, plainly identifies all the defendants and identifies

3  Morrison & Foerster as counsel for Atmel and most of the individual defendants. [citation

4  omitted] Any shareholder who might have cared about counsel's joint representation had full

5  access to the relevant information." (Atmel Memo. ISO Final Approval Mot. 8.)  Atmel

6  contends that this is sufficient and that Rule 23.1 does not require that facts relating to issues

7  such as joint representation be included in the summary notice.

8        Ross appears to concede that Atmel is correct on this point.  To the extent that Ross

9  maintains that Morrison Foerster's purported conflict tainted the Agreement itself, the Court

10  addresses that concern below.

11            **c.        Disclosure of the Release of Atmel's Current Board Members**

12        Ross contends that the notice "failed to explain that the settlement releases claims against

13  Atmel's entire current Board of Directors" and that disclosure of this fact "could have led to

14  additional objections by Atmel's shareholders." (Ross Obj. 3-4.)  Plaintiffs and Atmel argue that

15  the Agreement itself, which was made available through Plaintiffs' counsel and through

16  publication as an attachment to the Form 8-K, "expressly names all of Atmel's current directors

17  as settling parties who are receiving releases as part of the proposed settlement." (Atmel Memo.

18  ISO Final Approval Mot. 9 (citing Agreement at ¶1.26).)  Atmel contends that there is no

19  authority for the proposition that the summary notice must include detailed information such as

20  the names of the individuals released.  Ross appears to concede this point in his reply brief.

21            **d.        Conclusion**

22        The Court concludes that the notice provided by Atmel was sufficient under Rule 23.1

23  and the United States Constitution, as required in the preliminary approval order.

24        **2.        The Absence of a Judgement Reduction Credit**

25        Paragraph 10 of the Proposed Final Federal Judgment and Order of Dismissal ("Proposed

26  Order") submitted with Plaintiffs' motion contains the following language with respect to claims

27  relating to those settled as part of the Agreement:

28

11

As of the Effective Date, the Settling Defendants, the Non-Settling Defendant, and all other persons and entities shall be deemed to be, and by operation of this judgment shall be, permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting against any of the Settling Defendants any claim for contribution or indemnity that is related to, based upon, or arises out of the Settled Claims, regardless of whether such claim for contribution or indemnity is asserted as a claim, cross-claim, counterclaim, third-party claim, or in any other manner, in any court, arbitration, administrative agency, or forum.  All such claims are hereby extinguished, discharged, satisfied, and unenforceable.

(Dkt, No. 295-1 at 3.)

Ross argues that the Court should not approve the Agreement because the Proposed Order does not contain a judgment reduction credit.  He maintains that "[t]he [PLSRA] and federal law clearly provide that a district court may only approve a contribution and indemnity bar if the settlement order contains a judgment reduction credit that limits the non-settling defendant's liability in a future verdict or judgment."  (Ross Obj. 11 (citing 15 U.S.C. § 78u-4(f)(7); *McDannold v. Star Bank, N.A.*, 261 F.3d 478, 487 (6th Cir. 2001); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 161 (4th Cir. 1991); *In re WorldCom, Inc. ERISA Litig.*, 339 F. Supp. 2d 561, 568 (S.D.N.Y. 2004); *Fluck v. Bevins*, 969 F. Supp. 1231, 1233 (D. Or. 1997)).)

Plaintiffs argue that the "bar order" contained in Paragraph 10 is "a valid and fully-enforceable clause barring future claims for contribution or indemnity relating to the settled claims."  (Pls.' Final Approval Mot. 20.)  Plaintiffs point to the Ninth Circuit's recent recognition that it "ha[s] already acknowledged the authority of a district court under federal common law to issue bar orders barring future claims for contribution and indemnity as part of its approval of a proposed settlement in a class action securities fraud case, once it has found that the settlement satisfies the requirements of rule 23."  *In re Heritage Bond Litig.*, 546 F.3d 667, 676 (9th Cir. 2008).  They argue that "under *In re Heritage Bond Litig.*, a bar order that precludes only a non-settling defendants' rights to 'contribution and indemnity' is per se enforceable and desirable because it encourages settlement."  (Pls.' Final Approval Mot. 20 (citing *In re Heritage Bond Litig.*, 546 F.3d at 677).)  Plaintiffs contend that the issue of the appropriate judgment credit due to Ross should judgment be entered against him "is one that is only relevant, and thus should be decided, ***at trial***, not at this stage of settlement approval."  (*Id.* (emphasis in original).)

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2) OVERRULING IN PART AND SUSTAINING IN PART NON-SETTLING DEFENDANT'S OBJECTIONS (JFLC3)

Atmel concedes that Ross is entitled to a judgment reduction credit as a matter of law, but argues that it is not necessary that the credit be included expressly in the final order.  According to Atmel, the PSLRA "mandates only that a bar order 'bar all future claims for contribution arising out of the action'" and "does not require any particular savings clause in order to preserve a non-settling defendant's right to a judgment reduction."  (Atmel Memo. ISO Final Approval Mot. 6 (citing 15 U.S.C. § 78u-4(7)(a)).)  Atmel points out that two of the cases cited by Ross–*In re WorldCom, Inc. ERISA Litig.* and *McDannold v. Star Bank, N.A.*–are actions brought under the Employee Retirement Income Security Act ("ERISA") and do not relate to the PLSRA at all. In the third cited case–*In re Jiffy Lube Sec. Litig.*–the Fourth Circuit in a pre-PSLRA securities case vacated the district court's entry of judgment where "the court's failure to designate a setoff method expose[d] [the non-settling defendant] to the risk of receiving inadequate credit for the contribution bar imposed on it." *Jiffy Lube*, 927 F.2d at 161.  The court in *Fluck v. Blevins*, a case that arose after the adoption of the PSLRA, did not interpret the statute to require the resolution of judgment reduction credit issues before approval of a settlement.  Rather, the court in that case cited *Jiffy Lube* for the proposition that "[o]rdinarily, it is best to decide such questions [regarding judgment reduction credit] before approving the settlement and entering the bar order." *Fluck*, 969 F. Supp. at 1238 (citing *Jiffy Lube*, 927 F.2d at 161).

Atmel also directs the Court's attention to *In re Phenylpropanolamine (PPA) Prods. Liability Litig.*, 227 F.R.D. 553 (W.D. Wash. 2004).  In that case, the district court approved a partial settlement and entered a final order that contained the following language: "the approval for this Settlement and this bar order shall not be construed as precluding a nonsettling defendant from enforcing any judgment reduction, credit or setoff right otherwise available to them under applicable state law." *In re PPA Prods. Liability Litig.*, 227 F.R.D. at 568.  Atmel represents that it would not object to the inclusion of this or similar language in the final order in this case.

In his reply, Ross argues that while Atmel is correct with respect to the claims against him under federal law, "there could be a dispute as to the reduction that applies to the state law fiduciary duty claims" and that "[s]pecifying the judgment reduction method as to the state law

claims is the only way to ensure that Mr. Ross is compensated for the loss of his contribution and indemnity claims." (Ross Obj. Reply 7-8.) He contends that neither the Plaintiffs' suggestion that he wait until trial to determine the credit nor Atmel's proposal that the setoff will be determined by "applicable state law" is sufficiently specific to enable him to assess his risks going forward. Instead, he urges that if the Court otherwise approves the settlement, the Court should adopt the redlined Proposed Final Federal Judgment and Order of Dismissal that he has submitted, which "provide[s] for a judgment reduction credit consistent with the PSLRA as to the federal claims and federal common law as to the state claims." (*Id.* at 8 (citing 15 U.S.C. § 78u-4(f)(7)(B); *Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989)).)

While the Court agrees with Ross that the final order should acknowledge the preservation of his right to a judgment reduction, it also concludes that Ross's proposed language is unnecessary. Instead, it will add the following to Paragraph 10 of the Proposed Order: "The approval for this Settlement and this bar order shall not be construed as precluding the Non-Settling Defendant from enforcing any judgment reduction, credit or setoff right otherwise available to him under PSLRA or other applicable law."

## C.  Findings with Respect to the Agreement

### 1.  Ross's Objections

Ross makes two principal arguments with respect to the fairness, adequacy, and reasonableness of the Agreement. First, he contends that the Agreement is tainted by Morrison and Foerster's purported conflict. Second, he argues that Plaintiffs' attorneys' fees are excessive.

#### a.  Purported Conflict of Interest

Ross argues that Morrison Foerster's "contemporaneous representation and negotiation of the settlement on behalf of Atmel and nearly all of the settling defendants represents" two distinct conflicts of interest. (Ross Obj. 7.) First, he contends that the representation is "plainly prohibited since there are allegations of fraud and self-dealing asserted against these individuals." (*Id.* (citing Pls.' Am. Compl. ¶¶ 379, 399).) He asserts that "[t]he fact that Morrison played both sides of the settlement in seeking recovery for the Company while minimizing its individual

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2)
OVERRULING IN PART AND SUSTAINING IN PART NON-SETTLING DEFENDANT'S OBJECTIONS
(JFLC3)

1   clients' exposure shows that the settlement does not protect the interest of the corporation, and

2   could be the result of collusion." (*Id.* (citations omitted).)

3          Second, Ross maintains that "Morrison's representation of Atmel's current Board of

4   Directors further taints the settlement." (*Id.*)  He contends that it is not possible for the Board of

5   Directors' review of the settlement agreement to be a valid exercise of its business judgment, as

6   required under the Agreement, without "independent advice." (*Id.* at 8.)  Ross analogizes the

7   instant case to *In re Oracle Sec. Litig.*, 829 F. Supp. 1176 (N.D. Cal. 1993).  In that case, Judge

8   Walker denied the plaintiffs' motion for approval of a derivative settlement after finding that the

9   settlement "reek[ed] of collusion between derivative plaintiffs' counsel and the individual

10  defendants, at the expense of the corporation" where the corporation's special settlement

11  committee was represented by the corporation's in-house counsel and therefore "lacked

12  independent counsel."  829 F. Supp. at 1189.

13         Plaintiffs argue that Ross fails to explain "what impact the purported conflict had" and

14  point to Judge Phillips' attestation that all parties acted in good faith.  (Pls.' Mot. 18 (citing

15  Phillips Decl. at ¶¶ 4-5).)  Plaintiffs also contend that Ross's argument is untimely, "as he has

16  known about this purported 'conflict' since the inception of the case over three and half [sic]

17  years ago" and that his failure to explain the long delay "expos[es] his objection as a tactic, not a

18  legitimate objection to the Settlement."  (*Id.*)

19         Atmel's response to Ross's argument is threefold.  First, it contends that the Agreement

20  was approved by disinterested directors and analyzes in great detail both the law and the facts as

21  they relate to the Board's exercise of business judgment.  Second, it argues that the Board of

22  Directors was not required by law to hire "independent counsel."  It points out that Atmel did not

23  appoint a special litigation committee because its Board of Directors was "comprised almost

24  entirely of disinterested directors," and contends that the cases relied upon by Judge Walker in

25  *Oracle*, "all of which involved special committees," thus are inapposite.  (Atmel Memo. 14.)

26  The company also argues that, "[u]nlike in *Oracle*, Atmel's board has relied on Morrison &

27  Foerster, not just its in-house counsel," and "[o]utside counsel, of course is not 'beholden' to

28

1   management in the same way as in-house counsel, and its advice was not 'worthless' as Judge

2   Walker found in Oracle." (*Id.*)  Finally, Atmel argues that Ross has pointed to no evidence of

3   "collusion" similar to the evidence that troubled Judge Walker in *Oracle*.  It suggests instead that

4   the record in this case "points to a hotly negotiated settlement that took 16 months, and three

5   days of mediation with Judge Phillips, to complete." (*Id.*)

6        Atmel also argues that there simply is no conflict of interest.  It points to the conclusion

7   of the audit committee, which was assisted by an independent law firm, that "[t]he evidence did

8   not give rise to concern about the integrity" of the individuals represented by Morrison. (*Id.* at 15

9   (citing Levine Decl. Ex. A at 43).)  The company contends that it was entitled to rely upon the

10  audit committees's conclusions.  It also joints with Plaintiffs in pointing out that Morrison

11  Foerster "has jointly represented Atmel and most of the individual defendants since July 2006,

12  and Mr. Ross never objected until [March 12, 2010]."  Atmel cites the Ninth Circuit's ruling in

13  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) affirming a district court's approval of

14  a settlement over objections based on conflicts of interest where "[a] timely objection could have

15  been properly evaluated before extensive settlement negotiations were concluded."  47 F.3d at

16  378.

17       In his reply brief, Ross dismisses Atmel's argument regarding the independence of

18  directors, asserting that "[i]t is not the directors' independence at issue here, but Morrison's."

19  (Ross Reply 5.)  He contends that Atmel "misses the point" with respect to his reliance on *Oracle*

20  because "Judge Walker determined that dual representation of individual defendants and the

21  corporation is 'impermissible, particularly at the settlement stage,' and found the fact that the

22  company's inside counsel purported to represent the corporation 'd[id] not ameliorate this

23  conflict.'" (Ross Reply 6 (citing *Oracle*, 829 F. Supp at 1188.)  Ross argues that Atmel's reliance

24  on the audit committee's report "similarly misses the point" because the report was issued by

25  three directors who are settling defendants and therefore conflicted and because "Morrision has a

26  duty to [Individual Defendants] Wu, Colvin, Hall, and Thomos, and the other individual

27  defendants to convince the current Board to accept the deal, and a concurrent duty to

28

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2)
OVERRULING IN PART AND SUSTAINING IN PART NON-SETTLING DEFENDANT'S OBJECTIONS
(JFLC3)

1   independently advise the Board." (*Id.*)  Ross requests that the Court allow discovery into the

2   settlement negotiations to determine why Atmel "didn't . . . just retain new counsel to review the

3   settlement." (*Id.*)

4          At the end of the day, Ross has not directed the Court's attention to any actual evidence

5   supporting an inference that the Agreement here "reeks of collusion."  Indeed, Ross's counsel

6   admitted at oral argument that he can point to no such facts.  Taken as a whole, the facts support

7   the conclusion that the Agreement was hard fought and fairly negotiated by the settling parties

8   and confers significant benefits on Atmel.  Any actual or perceived conflict of interest had no

9   perceptible impact on the outcome.

10                    **b.    Plaintiffs' Attorneys' Fees**

11         Ross contends that the settlement is unfair and inadequate because the requested

12  attorneys' fees of $4.94 million are disproportionately high relative to the net cash benefit to

13  Atmel.  Ross points to the Ninth Circuit's benchmark of twenty-five percent of the recovery in

14  common fund cases, *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379, and argues that "a fee over half

15  of the cash value of the settlement is plainly unreasonable" and warrants rejection of the

16  settlement.   (Ross Obj. 9 (footnote omitted).)

17         Ross also asserts that the remedial measures and corporate governance reforms included

18  in the Agreement add little value to the settlement.  First, Ross claims that Atmel had already

19  implemented many of the remedial measures in the Agreement before the first mediation session

20  with Judge Phillips occurred in October 2008.  Second, Ross argues that

21              [c]omparing the corporate governance provisions of the settlement agreement with
            the Company's most recent Proxy statement reveals that the vast majority of these
22          measures were already in place; the Corporate Governance and Nominating
            committees have already certified that they are comprised of independent
23          directors, the Board has a separate independent chairman and chief executive
            officer, and Board committees already have the authority to obtain legal counsel
24          and investigate internal misconduct.

25  (Ross Obj. 10-11.)  Ross contends that "the Court should disregard the value of amendments to

26  Atmel's stock option provisions and corporate governance measures contained in Section 5.3 [of

27  the Agreement]." (*Id.* at 11.)

28

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2)
OVERRULING IN PART AND SUSTAINING IN PART NON-SETTLING DEFENDANT'S OBJECTIONS
(JFLC3)

1    Plaintiffs argue that the requested fee and expense award in the Agreement is

2    fair and reasonable in light of (a) the substantial benefits the Settlement provides
     to Atmel; (b) the time, effort and expense undertaken by Plaintiffs' counsel on a
3    purely contingent basis; (c) the fact that the amount was agreed upon as a result of
     vigorous arm's-length negotiations; and (d) the fee awards in other derivative
4    actions, including stock options backdating cases.

5     (Pls.' Mot. 21.)

6    Plaintiffs acknowledge the twenty-five percent benchmark, but they point out that the

7    Ninth Circuit also has held that district courts "may adjust the benchmark when special

8    circumstances indicate a higher or lower percentage would be appropriate." *In re Pac. Enters.*

9    *Sec. Litig.*, 47 F.3d at 379.  Plaintiffs argue that although the fee award represents 51% of the

10   cash portion of the Agreement,

11   Plaintiffs' Counsel have an additional, independent basis for an award of attorneys
     [sic] fees arising from the corporate governance reforms adopted as a result of the
12   Settlement, the preservation of claims against Ross, and the preservation of
     insurance coverage in connection with the continued prosecution of those claims,
13   which all confer upon Atmel substantial economic and non-economic benefits.

14   (Pls.' Mot. 22.)  Plaintiffs claim that the amount is fair and reasonable "[i]n light of the

15   complexity of the case and the amount of time, effort, and expense undertaken by Plaintiffs'

16   counsel." (*Id.*)

17   Plaintiffs also contend that the amount of attorneys' fees and expenses is fair and

18   reasonable under the "lodestar" method.  They represent that counsel for the Federal Plaintiffs

19   have collectively devoted more than 5,200 hours of time on Atmel's behalf for a
     lodestar of $2.3 million, and expended $131,000 in out-of-pocket expenses. . . .
20   Even without considering the State Plaintiffs' attorney lodestar, the negotiated
     fees and expenses of $4.94 million minus expenses of approximately $131,000
21   would result in a 'multiplier' of approximately 2.0, which is eminently reasonable
     based on the contingent nature of Plaintiffs' Counsel's representation and the
22   results obtained.  Moreover . . . the agreed-to amount of attorneys' fees and
     expenses will compensate all Plaintiffs' Counsel in all the Actions, inclduing all
23   the State Actions.

24   (*Id.* at 23 (citing Joint Decl. ¶ 91).)

25   Finally, Plaintiffs argue that the requested amount "is based on extensive post-settlement

26   arm's-length negotiations between experienced and highly skilled lawyers for Atmel, the Settling

27   Defendants, and Plaintiffs." (*Id.*)  They assert that "Atmel and its Board members vigorously

28

18

negotiated on behalf of the Company to reach a fee they regarded as reasonable." (*Id.* at 24.)
They provide a list of attorneys' fees and expenses awards in similar cases and contend that the
requested amount in this case is consistent with those awards.  Plaintiffs emphasize that in some
of the comparable cases, "there was no cash component in the settlement and the fees exceeded
$4.94 million." (*Id.*)

Plaintiffs argue that the corporate governance reforms in the Agreement add substantial
value to the settlement.  They assert that "current Atmel Board members were parties to the
process and agree that Plaintiffs' prosecution of the Actions and negotiations were 'material
factors' in Atmel's decision to implement the corporate reform measures in the Settlement,
including those that have already been implemented." (*Id.* at 18 (footnote omitted).)  Plaintiffs
cite several Delaware state cases in which courts have recognized that in similar situations
"corporate governance reforms are properly attributed to the litigation whether or not they are put
in place prior to the consummation of the settlement." (*Id.*)  With respect to the timing of the
reforms, Plaintiffs contend that the reforms at issue were all adopted after the federal derivative
actions were filed and cite to representations by Atmel in the record that the filing of the actions
and later settlement negotiations were material factors in the implementation of the measures.

Plaintiffs also rely upon the declaration of corporate governance expert Jeffrey N.
Gordon, who "opines that the value of [the corporate reforms] is 'significant' because they
prevent a 'recurrence of the particular governance failures that led to the need for the
restatement' and 'improve corporate governance in a way that will promote long term
shareholder value.'" (*Id.* at 20 (citing Gordon Decl. ¶ 14).)

In his reply brief, Ross does not renew his arguments with respect to the reasonableness
of the fee other than to contend that Plaintiffs' failure to quantify the value of the remedial
measures is "fatal; without any valuation of the remedial measures the Court cannot act." (Ross
Reply 7.)  Without citation to authority, Ross requests permission to depose Gordon as to the
actual value of the corporate governance reforms.

At oral argument, Plaintiffs contended that although they did not quantify the monetary

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2)
OVERRULING IN PART AND SUSTAINING IN PART NON-SETTLING DEFENDANT'S OBJECTIONS
(JFLC3)

1    value of the impact of the corporate reforms, the Court should consider that the company spent

2    over $8 million in issuing its June 2007 restatement, that this amount in large part represented

3    attorneys' fees and other professional services, and that the adopted reforms were designed

4    specifically to prevent the practices that led to the restatement.

5         Having considered all of the relevant circumstances, the Court concludes that the agreed-

6    upon amount of attorneys' fees and costs, while substantial, is reasonable in light of the overall

7    benefit of the settlement to Atmel and its shareholders.

8         **2.      Other Findings**

9         "The principal factor to be considered in determining the fairness of a settlement

10   concluding a shareholders' derivative action is the extent of the benefit to be derived from the

11   proposed settlement by the corporation, the real party in interest." *Shlensky v. Dorsey*, 574 F.2d

12   131, 147 (3d Cir. 1978).  The Agreement provides for a cash payment of $9.65 million to Atmel

13   and a payment of $4.94 million in attorneys' fees and costs.  Because Atmel is responsible for

14   paying the attorneys' fees, the net payment to Atmel is $4.71 million.  This net payment is nearly

15   fifteen percent of the Plaintiffs' estimate of total recoverable damages.

16        Atmel's net cash recovery exceeds the average recovery in shareholder derivative

17   litigation.  *See* Laura E. Simmons & Ellen M. Ryan, *Securities Class Action Settlements, 2006

18   Review and Analysis* 6 (Cornerstone Research 2007) (settlements as a percentage of "estimated

19   damages" averaged 2.4% in 2006); Stephanie Plancich, Brian Saxton & Svetlana Starykh, *Recent

20   Trends in Shareholder Class Action: Filings Return to 2005 Levels as Subprime Cases Take Off;

21   Average Settlements Hit New High* 14 (NERA Economic Consulting 2007) (median ratio of

22   settlements to investor losses in 2007 was 2.4%).  Moreover, the Agreement requires that Atmel

23   adopt multiple corporate governance reforms. (*See* Agreement at ¶ 5.3.)  These reforms are

24   designed to prevent future improperly backdated options as well as other acts of corporate

25   misbehavior.  While Plaintiffs have not provided the Court with a dollar value estimate of the

26   impact of these reforms, at the very least, potential buyers of Atmel stock likely will view such

27   reforms as an additional reason to purchase the stock.  The Agreement also resolves both the

28

20

1    Federal and State Actions against all of the Individual Settling Defendants.

2         "[T]he risk, expense, complexity, and likely duration of further litigation" are additional

3    factors that should be considered in determining the fairness of a proposed settlement. *Officers*

4    *for Justice*, 688 F.2d at 625.  In the instant case, Plaintiffs' success was by no means assured.  As

5    the Ninth Circuit has recognized, "[T]he odds of winning [a] derivative lawsuit [are] extremely

6    small." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378.  In this case, the Court's June 25, 2008

7    order struck several of Plaintiff's federal claims and dismissed others on statute of limitation

8    grounds.  The Court concludes that the benefits to Atmel are reasonable in light of the risks

9    present in the instant case and in derivative litigation generally.  *See id.* at 378 ("derivative

10   lawsuits are rarely successful.").  The parties also have expended a substantial amount of time on

11   the case.  As of February 28, 2010, Federal Plaintiffs' counsel alone had expended over 5,400

12   hours on this matter.  If the instant action were to proceed, it is likely that all of the parties,

13   including Atmel, would incur significant additional expenses.

14        The parties also have presented evidence that the negotiations were conducted at arms'

15   length.  Judge Phillips, a former district judge in Oklahoma City, served as a mediator throughout

16   the litigation and has submitted a declaration stating that "the settlement was negotiated by the

17   parties at arms' length, carefully and in good faith."  (Phillips Decl. ¶4.)  Judge Phillips'

18   participation weighs considerably against any inference of a collusive settlement.  *See In re AOL*

19   *Time Warner S'holder Deriv. Litig.*, No. 02 Civ. 6302 (SWK), 2006 WL 2572114, at *3

20   (S.D.N.Y. Sept. 6, 2006) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)

21   (citation omitted)) ("a court-appointed mediator's involvement in . . . settlement negotiations

22   helps to ensure that the proceedings were free of collusion and undue pressure").  In addition, the

23   involvement of multiple counsel from different firms suggests a lack of collusion.  *See Gay v.*

24   *Waiters' & Dairy Lunchmen's Union Local No. 30*, 86 F.R.D. 500, 503 n.7 (N.D. Cal. 1980).

25   Finally, the parties have presented evidence that the proposed award of attorneys' fees was

26   negotiated separately from the initial $9.65 million payment.  The parties first agreed on a gross

27   settlement of $9.65 million and the implementation of the new corporate governance rules, and

28

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2)
OVERRULING IN PART AND SUSTAINING IN PART NON-SETTLING DEFENDANT'S OBJECTIONS
(JFLC3)

1    only then did they allocate the attorneys' fees.  A court should refrain from substituting its own

2    value for a properly bargained–for agreement.  *See id.*

3           A final factor to consider in evaluating a proposed derivative settlement is shareholder

4    opposition.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Here, the only

5    objection received was filed by Ross, the lone Non-Settling Defendant.  As addressed in further

6    detail above, the Court concludes that Ross's objections do not provide a basis for rejection of

7    the Agreement and its net benefit to Atmel.

8                                              **ORDER**

9           Good cause therefor appearing, the settlement and the proposed order jointly submitted

10   by the parties (Dkt. No. 295-1) will be approved as modified by this order.

11

12   IT IS SO ORDERED.

13

14   DATED: March 31, 2010

15                                        _____

16                                        JEREMY FOGEL
                                          United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 06-4592 JF (HRL)
ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2)
OVERRULING IN PART AND SUSTAINING IN PART NON-SETTLING DEFENDANT'S OBJECTIONS
(JFLC3)