**BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP**
NICHOLE BROWNING (251937)
nbrowning@btkmc.com
580 California Street, Suite 1750
San Francisco, CA 94104
Telephone: 415/400-3000
Facsimile: 415/400-3001
-and-
ERIC L. ZAGAR (250519)
ezagar@btkmc.com
TARA P. KAO
tkao@btkmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610/667-7706
Facsimile: 610/667-7056

*Co- Lead Counsel for Plaintiffs*

[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re ATMEL CORPORATION DERIVATIVE LITIGATION <br><br> This Document Relates To: <br> All Actions | Master File No. 06-4592 JF (HRL) <br><br> **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT WITH DEFENDANT ROSS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> DATE: August 13, 2010 <br> TIME: 9:00 a.m. <br> DEPT: 3, 5th Floor <br> JUDGE: Hon. Jeremy Fogel |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. RELEVANT FACTS ........................................................................................................ 2

    A. Audit Committee Investigation and Findings ..................................................... 2

        1. Atmel's Evaluation of the Conduct of Defendant Ross ............................ 3

        2. Atmel's Voluntary Restatement ................................................................ 4

    B. First Settlement .................................................................................................... 4

    C. Litigation Against Defendant Ross ..................................................................... 5

    D. Settlement Negotiations with Defendant Ross .................................................... 5

    E. Settlement Terms ................................................................................................. 6

III. THE SETTLEMENT IS AN EXCELLENT RESULT FOR ATMEL AND SHOULD BE APPROVED ............................................................................................ 7

    A. The Law Favors Settlement ................................................................................. 7

    B. The Settlement Is Fair, Reasonable and Adequate .............................................. 8

        1. Counsel Aggressively Negotiated the Settlement at Arm's-Length ......... 9

        2. The Litigation Presented Risks in Establishing Liability and Damages ... 9

        3. The Settlement Was Negotiated by Parties with a Thorough Understanding of the Strengths and Weaknesses of the Case ................ 10

        4. The Complexity, Expense, and Duration of Continued Litigation ......... 11

        5. The Informed Judgment of the Parties That the Settlement Is Fair and Reasonable Supports Approval ............................................... 12

        6. The Reaction of Atmel's Current Shareholders Supports Approval of the Settlement ................................................................... 12

IV. THE NEGOTIATED AMOUNT FOR ATTORNEYS' EXPENSES SHOULD BE APPROVED ........................................................................................... 13

V. CONCLUSION ............................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ............................................................................................ 10

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................................................. 7, 11

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ......................................... 8

*In re Apple Computer*,
  No. 06-4128 JF(HRL), Order Granting Final Approval of Settlement
  (N.D. Cal. Nov. 5, 2008) ........................................................................................................... 10

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ......................................................................................................... 7

*In re Mego Fin. Corp. Secs. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................................... 10

*In re NVIDIA Corp. Derivative Litig.*,
  No. C-06-06110-SBA (JCS), 2009 U.S. Dist. LEXIS 24973
  (N.D. Cal. Mar. 18, 2009) ......................................................................................... 7, 9, 10, 13

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ...................................................................................................... 10

*In re Rambus Inc. Derivative Litig.*,
  No. 06-3513, Final Approval of Settlement (N.D. Cal. Jan. 20, 2009) ............................. 12,13

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ............................................................................................ passim

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ........................................................................................................ 8

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on August 13, 2010, at 9:00 a.m., before the Honorable Jeremy Fogel, Plaintiffs Patrick McWeeny ("McWeeny"), James Juengling ("Juengling"), Kenneth Kelley ("Kelley"), Anthony A. Noble ("Noble") and Randel Smith ("Smith") (collectively, "Plaintiffs" or "Federal Plaintiffs") will move the Court for an order granting final approval of the Settlement Agreement dated June 6, 2010 (the "Agreement")[1] between Plaintiffs, remaining defendant James Michael Ross ("Ross"), and Nominal Defendant Atmel Corporation ("Atmel" or the "Company"). The settlement (the "Settlement" or the "Ross Settlement") resolves the claims against defendant Ross that were remaining after the Court's March 31, 2010 order finally approving the partial settlement with the other defendants ("First Settlement").

This motion is made pursuant to Federal Rule of Civil Procedure 23.1 and is based upon the accompanying Memorandum of Points and Authorities, Joint Declaration of Lawrence P. Kolker and Eric L. Zagar in Support of Motion for Final Approval of Settlement ("Joint Decl."), the Agreement, and such additional evidence or argument as may be required by the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Plaintiffs respectfully submit this memorandum in support of final approval of the proposed settlement with defendant Ross as set forth in the Agreement. The Settlement comes after final approval by this Court of the First Settlement with the other defendants and is the result of continued and subsequent negotiations with defendant Ross. Pursuant to the Settlement, Atmel's insurers, on behalf of defendant Ross, shall make to Atmel payments that, after reimbursement of Atmel's fees and disbursements, will result in a net benefit to Atmel of approximately $1.7 million. Furthermore, Ross agrees to dismiss the Delaware Action against Atmel.

The terms of the Settlement confer a substantial benefit upon Atmel and constitute an excellent final resolution of this complex shareholder derivative action, and therefore the Settlement is deserving of this Court's approval. Plaintiffs' Counsel have also agreed not to seek

---

[1] All capitalized terms not herein defined shall have the same meanings as set forth in the Agreement.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT WITH DEFENDANT          -1-
ROSS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
MASTER FILE NO. 06-4592 JF (HRL)

an award of any attorneys' fees in connection with this Agreement. Instead, Atmel agrees to pay to Federal Plaintiffs' Counsel, subject to court approval, $25,000 to reimburse Federal Plaintiffs' Counsel for expenses incurred in the Action since the First Settlement was approved on March 31, 2010. With no award of attorneys' fees sought by Plaintiffs' Counsel as part of the Ross Settlement, the requested award of attorneys' expenses of $25,000 is fair and reasonable, especially considering that litigation expenses after the First Settlement exceed this amount.

Atmel's shareholders appear to agree that the Settlement is in the best interests of the Company. On June 18, 2010, the Court preliminarily approved the Settlement and ordered that Notice be provided to Atmel shareholders as outlined in the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Order"). Notice of the Settlement was published in *Investor's Business Daily* and filed on a Form 8-K with the U.S. Securities and Exchange Commission ("SEC") on July 1, 2010. Joint Decl., Exhibit ("Ex.") C. Pursuant to the Preliminary Order and Notice, all objections to the Settlement were due on July 30, 2010. As of the date of this filing, there have been no objections to any part of the Settlement.

The Settlement, negotiated at arm's-length and in good faith by the Settling Parties, deserves approval by this Court, as it is undoubtedly fair, reasonable and adequate. Accordingly, Plaintiffs respectfully submit that the Court should grant final approval of the Settlement as fair, reasonable, adequate and in the best interest of Atmel and its shareholders.

## II. RELEVANT FACTS

### A. Audit Committee Investigation and Findings

On July 25, 2006, Atmel's Board announced that the Audit Committee had commenced an investigation into the timing of past stock option grants since January 1, 1997. On October 30, 2006, Atmel issued a press release announcing the preliminary results of the Audit Committee voluntary stock option review. Dkt. No. 296, Ex. A. The Audit Committee concluded that under Accounting Principles Board Opinion No. 25, Accounting for Stock Issued to Employees, "the actual measurement dates for certain stock options differed from the recorded measurement dates for such stock options." *Id.*

On April 30, 2007, the Company issued a press release reporting the findings of the Audit Committee investigation of its historical stock option practices, stating that "93 of the 112 stock option grants during the period January 1, 1997 through August 3, 2006 included some options that were not issued on the date set forth in the company's stock option records" and "were not accounted for correctly in the Company's previously issued financial statements." Dkt. No. 296, Ex. B. The Audit Committee also concluded that all of the improper actions were taken "without required approvals" and "internal controls relating to stock option granting process were inadequate." *Id.*

### 1. Atmel's Evaluation of the Conduct of Defendant Ross

In the April 30, 2007 press release, the Company publicly evaluated the conduct of defendant Ross in the backdating scheme at Atmel as follows:

> Evaluation of the Conduct of Management and the Board of Directors:
>
> The Audit Committee considered the involvement of former and current members of management and the Board of Directors in the stock option grant process and concluded that:
>
> * * *
>
> -- Mike Ross
>
> Mike Ross was the Company's General Counsel from 1989 until August 2006. Based on evidence from the stock option investigation, the Audit Committee concluded that Mr. Ross handled communications with the Board of Directors regarding stock options and, during certain periods, supervised Atmel's stock administration department.
>
> The Audit Committee also concluded that Mr. Ross was aware of, and participated in the backdating of stock options. The evidence included documents that showed that Mr. Ross directed numerous changes to stock option lists many months after the lists were approved by the Board of Directors, without the Board's knowledge or approval. Stock administration employees stated, and records showed, that Mr. Ross directed stock administration employees to issue backdated stock option grants to employees and directed or permitted other actions to be taken contrary to the terms of Atmel's stock option plans. The evidence from the investigation showed that Mr. Ross circumvented the Company's stock option plan requirements and granting procedures. The evidence indicated that Mr. Ross knew that the stock option grants must be approved by the Board and that the price for stock options should be set as of the date on which the Board approved the grant.
>
> There was evidence that, at least by 2002, Mr. Ross was informed about accounting consequences of backdating stock options.

\* \* \*

> There also was evidence that Mr. Ross personally benefited from the receipt of backdated stock options that were not approved by the Board of Directors, and that he backdated his exercises of his own stock options to dates on which the Company's stock price was at a period low, thereby potentially reducing his tax liability.
>
> Mr. Ross did not cooperate in the investigation.
>
> Because of his involvement in the intentional backdating of stock options and his other conduct, the Audit Committee believed the evidence indicated that Mike Ross lacked management integrity with respect to the stock option process.

Dkt. No. 296, Ex. B.

### 2. Atmel's Voluntary Restatement

On June 8, 2007, the Company filed its fiscal 2006 financial statements, stating that "[u]pon completion of that investigation, the Company recorded additional aggregate non-cash stock-based compensation expenses for the period from 1993 through 2005, excluding payroll and related income tax adjustments, of approximately $116 million." Dkt. No. 296, Ex. C. The restatement had the effect of reducing historical net income and increasing the accumulated deficit but did not affect the Company's cash-flow, as further detailed in Atmel's Quarterly Report (Form 10-Q) filed on June 8, 2007. Dkt. No. 296, Ex. I.

### B. First Settlement

On December 9, 2009, Federal Plaintiffs and Defendants George Perlegos, Gust Perlegos, Francis Barton, Kris Chellam, Donald Colvin, Pierre Fougere, Norman T. Hall, B. Jeffrey Katz, Chaiho Kim, Jack Peckham, Bernard Pruniaux, Steven Schumann, T. Peter Thomas, Graham Turner, Tsung-Ching Wu and Nominal Defendant Atmel executed a settlement agreement under the First Settlement. Dkt. No. 254. The First Settlement also included plaintiffs in related state actions and did not include defendant Ross. Dkt. No. 254 at ¶ 1.16. The First Settlement provided, among other things, for a cash payment of $9.65 million to Atmel in addition to significant changes in Atmel corporate governance practices. *See* Dkt. No. 254 at ¶¶ 5.1-5.3. On March 31, 2010, the Court finally approved the First Settlement. Dkt. No. 322. Pursuant to the First Settlement, the

state actions were dismissed with prejudice, and only the Federal Action proceeded against defendant Ross.

### C. Litigation Against Defendant Ross

At the January 8, 2010 Case Management Conference, the Court lifted a temporary discovery stay. Hr'g Tr. at 7:22-25, 8:1-3, January 8, 2010. On December 30, 2009, Plaintiffs filed a motion for protective order relating to defendant Ross's Notice of Depositions. Dkt. No. 271. On February 3, 2010, Magistrate Judge Lloyd granted defendant Ross leave to take twenty-two (22) depositions. Dkt. No. 285 at 2:21.

From March to May 2010, defendant Ross noticed multiple depositions. Joint Decl. at ¶14. On April 8, 2010 and on May 11, 2010, Plaintiffs cross-noticed the deposition of Chaiho Kim and Tsung-Ching Wu, respectively. Joint Decl. at ¶15. The following depositions were held: (i) a Rule 30(b)(6) deposition of Atmel Corporation, with David McCaman sitting as corporate designee, on February 18, 2010; (ii) T. Peter Thomas, on April 2, 2010; and (iii) Chaiho Kim, on April 16, 2010. Joint Decl. at ¶16.

On May 11, 2010, defendant Ross filed the following motions: (i) Motion to Compel (1) Production of Documents from Atmel Corporation; (2) Deposition of Steven Laub; and (3) Production of Documents from Chaiho Kim; (ii) Motion to Compel Production of Documents From Bergeson, LLP; and (iii) Motion to Compel Production of Documents From Wilson Sonsini Goodrich & Rosati PC. Defendant Ross concurrently filed an Administrative Motion Pursuant to Civil Local Rule 79-5(D) and General Order 62 to file the Motions Under Seal. Dkt. No. 354. These motions were scheduled to be heard on June 29, 2010 before Magistrate Judge Lloyd. Based on the pending settlement, defendant Ross withdrew his motions. Dkt. No. 358.

### D. Settlement Negotiations with Defendant Ross

From March 31, 2010 to June 7, 2010, while pretrial discovery (including depositions) was on-going, settlement negotiations continued between counsel for Plaintiffs, Ross and Atmel. Joint Decl. at ¶27. This process included multiple telephone calls and exchanges between counsel for all parties and Atmel's insurers on an almost weekly basis throughout this time period. By the end of

May of 2010, the parties engaged in settlement discussions on an almost daily basis. The parties were only able to reach an agreement after a weekend session on June 5 and 6, 2010, which consisted of numerous calls and exchanges of electronic mail and finally resulted in a settlement that was agreed to by all Parties and Atmel's insurers. Joint Decl. at ¶27.

Throughout the negotiation process, defendant Ross vigorously contested each and every claim in the Action and consistently maintained that he acted in accordance with governing laws and that he had no involvement in the alleged wrongdoing. Defendant Ross believed that he had compiled testimony and documentary evidence from which he was prepared to demonstrate that he had no involvement in the alleged wrongdoing. Defendant Ross also argued that there was no finding whatsoever, by any court or agency, of any wrongdoing of any kind on his part. Plaintiffs, however, based on the Company's investigation and the documentary evidence gathered in the course of the action, believed that the claims they have asserted against defendant Ross have merit. Joint Decl. at ¶28.

However, the Parties and Atmel's insurers all recognized and acknowledged the expense and length of continued proceedings necessary to prosecute this Action through trial and through appeals and took into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this one, as well as the difficulties and delays inherent in such litigation. Plaintiffs' Counsel are also mindful of the inherent problems of proof and possible defenses to the claims asserted here, or that may be asserted. Based on this evaluation, Plaintiffs and Plaintiffs' Counsel determined that a net cash benefit to Atmel of $1.7 million to resolve the remaining claims against defendant Ross was in the best interests of Atmel, and Current Atmel Shareholders and confers substantial benefits upon Atmel and Current Atmel Shareholders. Joint Decl. at ¶29.

### E. Settlement Terms

Pursuant to the Ross Settlement, Atmel's insurers, on behalf of defendant Ross, shall make to Atmel payments that, after reimbursement of Atmel's fees and disbursements, will result in a net benefit to Atmel of approximately $1.7 million. Furthermore, defendant Ross agrees to dismiss the Delaware Action against Atmel. Plaintiffs' Counsel have also agreed not to seek an award of any

attorneys' fees in connection with the Ross Agreement. Instead, Atmel agrees to pay to Plaintiffs' Counsel in this Action, subject to Court approval, $25,000 to reimburse Plaintiffs' Counsel for expenses incurred in this Action since the First Settlement was approved on March 31, 2010.

This also eliminates the indemnification and advancement obligations to defendant Ross that the Company would have incurred if these claims had continued to trial and possible appeal. Indeed, if the claims against defendant Ross proceeded to trial, all of Atmel's directors' and officers' liability insurance coverage likely would have been exhausted by defense costs, leaving Atmel responsible for advancing additional defense and indemnification costs and leaving Plaintiffs to attempt to recover millions of dollars in damages from an individual of limited means. The settlement, by contrast, preserves insurance coverage and stops Atmel's funding burden.

The significant consideration – $1.7 million in cash and the dismissal of all claims and the Delaware Action – easily supports final approval of the Settlement.

## III. THE SETTLEMENT IS AN EXCELLENT RESULT FOR ATMEL AND SHOULD BE APPROVED

### A. The Law Favors Settlement

There is a strong policy favoring compromises that resolve litigation, "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *In re NVIDIA Corp. Derivative Litig.*, Master File No. C-06-06110-SBA (JCS), 2009 U.S. Dist. LEXIS 24973, at **6-7 (N.D. Cal. Mar. 18, 2009) ("There is an overriding public interest in settling and quieting litigation.") (internal quotations and citations omitted). The "[s]ettlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (internal quotations and citations omitted); *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at **6-7.

The United States Court of Appeal for the Ninth Circuit has provided factors that may be considered in evaluating the fairness of a class or derivative action settlement:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of

further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). The Ninth Circuit, however, has cautioned that:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (emphasis added).

The district court must exercise "sound discretion" in approving a settlement. *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

### B. The Settlement Is Fair, Reasonable and Adequate

As a result of protracted, arm's-length settlement negotiations among counsel, the Settling Parties have agreed to a resolution of the Action, which is an extremely favorable result for Atmel and its stockholders. The Settlement confers significant benefits upon the Company and its stockholders in the form of a monetary contribution on behalf of defendant Ross and fully resolves the issues regarding the alleged misconduct at Atmel. While Plaintiffs maintain confidence in the strength of their claims asserted against Ross, they understand that real and substantial risks are present in any derivative litigation, and that these substantial risks could ultimately cause a material reduction in the benefits provided by the Settlement if the Action were to proceed to trial. This is

particularly true because of Ross's limited ability to pay any judgment against him. Therefore, the Settlement more than fairly, reasonably, and adequately resolves Plaintiffs' claims against defendant Ross. The Settlement provides greater benefits to Atmel than any alternative course of action and, as such, clearly should receive this Court's approval.

### 1. Counsel Aggressively Negotiated the Settlement at Arm's-Length

As detailed above, the terms of the Settlement were negotiated by the Parties at arm's-length and reached only after extensive, protracted settlement discussions among counsel for Plaintiffs, defendant Ross, and Atmel. Consistent with the parties' hard-fought and aggressive litigation of this Action, Plaintiffs' Counsel spent many hours investigating and analyzing the alleged wrongdoing, litigating the derivative claims, and reviewing discovery at the same time they pursued settlement discussions. Once settlement negotiations commenced with all Parties in December of 2009, it took the Parties well over five months to finally reach a Settlement with Ross and to document and present the final terms of the Settlement to the Court for approval.

### 2. The Litigation Presented Risks in Establishing Liability and Damages

In assessing the fairness, reasonableness and adequacy of the Settlement, the Court should balance the benefits of the Settlement against the continuing risks of litigation. *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *9; *Officers for Justice*, 688 F.2d at 625. Although Plaintiffs believe that the claims asserted in the Action were meritorious, liability was by no means a foregone conclusion. Even though Plaintiffs had survived two rounds of motions to dismiss, it was similarly uncertain whether Plaintiffs could prevail at trial, overcome Ross's asserted affirmative defenses, and what amount of damages could be proven at trial. While Plaintiffs firmly believe in the merits of the Action, there was no guarantee a trier of fact would find defendant Ross liable and award damages in an amount substantially more than $1.7 million. The Settlement, by contrast, provides for a certain recovery against defendant Ross.

There were serious risks in overcoming potential defenses and in establishing liability and damages. Indeed, in affirming the district court's approval of a settlement of a derivative action, the Ninth Circuit noted that "the odds of winning [a] derivative lawsuit [are] extremely small"

because "derivative lawsuits are rarely successful." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *16 ("outcome of [derivative litigation is] by no means a foregone conclusion."); *In re Apple Computer*, No. 06-4128 JF(HRL), Order Granting Final Approval of Settlement at 6:4-5 (N.D. Cal. Nov. 5, 2008), Joint Decl., Ex. A (success in derivative litigation is "by no means assured."). Thus, as opposed to the risk of no recovery at all for the Company, the Settlement guarantees a substantial cash recovery for the Company and an immediate and substantial reduction in litigation costs and indemnification obligations for Atmel, all of which, individually and collectively, provide substantial benefits to the Company.

### 3. The Settlement Was Negotiated by Parties with a Thorough Understanding of the Strengths and Weaknesses of the Case

The stage of the proceedings and the amount of discovery completed is another factor that courts consider in determining the fairness, reasonableness and adequacy of a settlement. *Officers for Justice*, 688 F.2d at 625; *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979). Here, the Settlement is based on substantial discovery (both formal and informal) that occurred before and after the First Settlement, but before multiple summary judgment motions and trial preparation that would cause the parties to incur further litigation fees and expenses and divert attention from the day-to-day business operations of Atmel. At this stage in the proceedings, both the knowledge of Plaintiffs' Counsel and the proceedings themselves have reached a stage where an intelligent evaluation of the Action and the propriety of Settlement was made.

Here, Plaintiffs' Counsel's extensive investigation, the arm's-length settlement discussions as well as counsel's past experience in litigating similar actions, provided Plaintiffs and their counsel with not only a clear picture of the strengths and weaknesses of the Action, but also of the sufficiency of the legal and factual defenses raised by defendant Ross if litigation were to continue. Thus, the Parties reached a Settlement at a point when they had an adequate understanding of the legal and factual issues surrounding the Action. *See In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

### 4. The Complexity, Expense, and Duration of Continued Litigation

Another factor militating in favor of the Settlement is the tremendous complexity, expense and likely duration of continued litigation. *See Officers for Justice*, 688 F.2d at 625; *Cohn*, 375 F. Supp. 2d at 859. Shareholder derivative actions are notoriously complicated actions that involve convoluted legal and factual issues that can be litigated to a conclusion on the merits only at great expense over an extended period of time.

If not for this Settlement, the Action would have continued to be fiercely contested by defendant Ross. The alleged wrongdoing took place beginning in 1994. Discovering all of the relevant documents and witnesses would have proved difficult. Continued litigation would also be protracted, disruptive of the Company's day to day operations, complex, and of substantial duration. Most importantly, continued litigation would be overwhelmingly costly to Atmel. Defendant Ross's litigation fees likely would have exhausted Atmel's available directors' and officers' liability insurance coverage, leaving Atmel to foot the bill for years to come. Were the Settling Parties to continue litigating, formal document discovery among multiple parties would need to be completed, multiple depositions would have been taken, multiple experts would need to be designated and expert discovery conducted, the Settling Parties would be expected to file multiple motions for summary judgment that would have to be briefed and argued, and a trial could occupy the parties' attorneys and the Court for weeks. Moreover, any judgment favorable to Plaintiffs would likely be the subject of post-trial motions and appeal by multiple parties, which would prolong the case for years with the ultimate outcome uncertain. The Settlement, by contrast, provides immediate and substantial benefits to Atmel and its shareholders and avoids years of delay, added expense and uncertainty. Thus, as compared to the prospect of continued protracted, complicated, expensive and uncertain litigation, the Settlement is eminently fair, adequate, and reasonable and should be approved.

Most importantly, any victory at trial may have been futile because it likely would result in a judgment that would be uncollectible in light of Ross's limited personal assets. Hence, to avoid causing the Company to incur the substantial costs of litigating Plaintiffs' claims against Ross,

including advancement of Ross's defense costs, only to win an uncollectible judgment, Plaintiffs wisely chose to enter into the Settlement and lock in an immediate and substantial recovery for the Company.

### 5. The Informed Judgment of the Parties That the Settlement Is Fair and Reasonable Supports Approval

Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of those affected by the Settlement. *See Officers for Justice*, 688 F.2d at 625. The Ross Settlement is the product of extensive arm's-length negotiations between adversaries with significant experience in shareholder derivative actions and securities class actions. The Settling Parties have independently considered the terms of the Ross Settlement and believe that they are desirable and in the best interest of Atmel and its shareholders. Here, Plaintiffs' Counsel not only have extensive experience in the area of shareholder representative litigation but have been at the forefront of investigating stock option abuses and are involved in the prosecution of numerous actions on behalf of shareholders alleging stock option abuses in courts nationwide. As a result of their unparalleled experience in these types of cases, Plaintiffs' Counsel have a unique insight into the legal and factual issues presented. Plaintiffs' Counsel used that expertise and experience to effectively and efficiently prosecute the Action and reach a highly favorable result for Atmel and its shareholders. Significantly, the Atmel Board has approved the Ross Settlement in all respects as being in the best interest of the Company. Joint Decl. at ¶4.

### 6. The Reaction of Atmel's Current Shareholders Supports Approval of the Settlement

As this Court and courts across the country have opined, "[t]he reaction of the class to the proffered settlement is perhaps the most significant factor to be weighed in considering its adequacy." *See, e.g., In re Rambus Inc. Derivative Litig.*, Case No. 06-3513, Order Granting Final Approval of Derivative Litigation Settlement at 5 (N.D. Cal. Jan. 20, 2009), Joint Decl., Ex. B (citation omitted). Pursuant to the Preliminary Order, the Notice was distributed to all shareholders by a press release issued by Atmel and published on its website on June 28, 2010, and the Notice was also published on June 28, 2010 in *Investor's Business Daily*. Joint Decl., Ex. C. The Notice

advised the Company's shareholders of the pendency of this Action and the terms of the Ross Settlement, including the $25,000.00 in expenses to be paid to Plaintiffs' Counsel. The Notice also advised shareholders that objections to any of the terms of the Settlement had to be filed with the Court and served on counsel no later than July 30, 2010. That date has now passed, and the Parties are not aware of any objections to the Settlement. Plaintiffs respectfully submit that, particularly in this age of increased shareholder activism, the fact that there is not a single objection to any aspect of the Settlement is a strong indication of its fairness and adequacy. *See NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *9; *Rambus*, Order Granting Final Approval of Derivative Litigation Settlement at 4-5, Joint Decl., Ex. B.

## IV. THE NEGOTIATED AMOUNT FOR ATTORNEYS' EXPENSES SHOULD BE APPROVED

Plaintiffs' Counsel have agreed not to seek an award of any attorneys' fees in connection with the Agreement. Instead, Atmel agrees to pay to Plaintiffs' Counsel, subject to Court approval, $25,000 to reimburse them for expenses incurred in the Action since the First Settlement was approved on March 31, 2010. Since the First Settlement, Plaintiffs' Counsel in this Action have collectively devoted well over 400 hours of time on Atmel's behalf, prosecuting their claims and engaging in settlement negotiations. Plaintiffs' Counsel in this Action have also incurred well over $25,000 in costs and expenses, which include deposition costs, computer research, office and travel expenses. All of these expenses were necessary and were incurred in reaching the successful resolution of this matter. With no award of attorneys' fees sought by Plaintiffs' Counsel as part of the Ross Settlement and based on the amount of work performed and expenses incurred, the requested award of attorneys' expenses of $25,000 is fair and reasonable and should be approved.

## V. CONCLUSION

The Settlement achieved is an excellent result in light of the risks and delays inherent in the litigation and the complexity and expense if the case proceeded to trial. Accordingly, Plaintiffs respectfully submit that the Settlement is fair, reasonable and adequate, and should be approved by the Court.

| | |
|---|---|
| | Respectfully submitted, |
| DATED: August 3, 2010 | **BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP**<br>ERIC L. ZAGAR<br>TARA P. KAO |
| | /s/Eric L. Zagar<br>ERIC L. ZAGAR |
| | 280 King of Prussia Road<br>Radnor, PA 19087<br>Telephone: 610/667-7706<br>Facsimile: 610/667-7056 |
| | - and- |
| | NICHOLE BROWNING<br>580 California Street, Suite 1750<br>San Francisco, CA 94104<br>Telephone: 415/400-3000<br>Facsimile: 415/400-3001 |
| DATED: August 3, 2010 | **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**<br>FRANCIS M. GREGOREK<br>BETSY C. MANIFOLD |
| | /s/ Betsy Manifold<br>BETSY C. MANIFOLD |
| | 750 B Street, Suite 2770<br>San Diego, CA 92101<br>Telephone: 619/239-4599<br>Facsimile: 619/234-4599 |
| | - and - |
| | LAWRENCE P. KOLKER<br>270 Madison Avenue<br>New York, NY 10016<br>Telephone: 212/545-4600<br>Facsimile: 212/545-4653 |
| | *Co-Lead Counsel for Plaintiffs* |